**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 (Subchapter V) |
| | ) |
| SHARITY MINISTRIES, INC.,[1] | ) Case No. 21-11001 (JTD) |
| | ) **Proposed Hearing Date:  August 5, 2021 at 1:00** |
| Debtor. | ) **p.m. (ET)** |
| | ) **Proposed Objection/Response Deadline: July** |
| | ) **29, 2021.  Extended to July 30, 2021 by** |
| | ) **Agreement with Rosa Sierra, Trial Attorney,** |
| | ) **US Trustee's Office** |

**JOINDER TO THE UNITED STATES TRUSTEE'S MOTION TO**
**REMOVE THE DEBTOR IN POSSESSION PURSUANT TO 11 U.S.C.**
**§ 1185, OR ALTERNATIVELY, MOTION TO AUTHORIZE THE**
**SUBCHAPTER V TRUSTEE TO INVESTIGATE THE DEBTOR'S**
**FINANCIAL AFFAIRS PURSUANT TO 11 U.S.C. § 1183**

COMES NOW the State of California, the New Hampshire Department of Insurance, the New York State Department of Financial Services, the State of Texas, the State of Washington, and the State of Wisconsin (the "States") and file this *Joinder to the United States Trustee's Motion to Remove the Debtor in Possession Pursuant to 11 U.S.C. § 1185, or Alternatively, Motion to Authorize the Subchapter V Trustee to Investigate the Debtor's Financial Affairs Pursuant to 11 U.S.C. § 1183*, and states as follows:

## I.    OVERVIEW

The States support the removal of the Debtor-in-Possession and the appointment of a Trustee because the Debtor has, from the formation of the nonprofit, grossly mismanaged its business.  Due to the history of mismanagement and self-dealing by the Debtor, cause exists to appoint a Trustee in this case. The evidence on this matter will show as follows: While employed

---

[1] The last four digits of the Debtor's federal tax identification number is 0344. The Debtor's mailing address is 821 Atlanta Street, Suite 124, Roswell, GA 30075.

by Aliera,[2] a for-profit enterprise, Mr. William H. "Rip" Thead formed the non-profit Debtor. As the Debtor's Chairman Thead entered into a management agreement with Aliera. Under the Management Agreement, for certain plans, 84% of the Members' monthly contributions were paid to Aliera, leaving only 16% for the members' healthcare costs, and this allocation was not disclosed to the Members. In 2019, Aliera Healthshare, Inc. divided itself into new subsidiaries to be managed by The Aliera Companies, and, under the eye of the Debtor's new president, Mr. Joe Guarino, Thead entered into new agreements with the Aliera subsidiaries. The new agreements did not improve the Debtor's monetary position—to the contrary, these contracts are the Debtor's stated reasons for entering this bankruptcy. The self-dealing has continued during the bankruptcy. The Debtor does not label its members as creditors—the members' monthly contributions are, instead, labeled "gifts."  By mischaracterizing the members' contributions, the Debtor is concealing the true amount of its debt and is improperly utilizing a Subchapter V.

## II.    <u>JOINDER</u>

1.       The States join the *United States Trustee's Motion to Remove the Debtor in Possession Pursuant to 11 U.S.C. § 1185, or Alternatively, Motion to Authorize the Subchapter V Trustee to Investigate the Debtor's Financial Affairs Pursuant to 11 U.S.C. § 1183*("Motion") in its entirety, and further support the Motion as follows:

**A.     Due to the Debtor's Gross Mismanagement and Self-Dealing, the Debtor-in-Possession Should be Removed & a Trustee Appointed.**

      ***i.***      <u>**Self-Dealing & Gross Mismanagement have Persisted Since the Debtor's Formation**</u>**.**

---

[2] "Aliera" used herein refers to Aliera Healthshare, Inc. which divided into multiple subsidiaries in 2019, and the subsidiaries are managed by The Aliera Companies.

2.     The purported purpose of this bankruptcy filing was to enable the Debtor, Sharity Ministries, Inc. (f/k/a Trinity Healthshare, Inc. and hereinafter ("Sharity," "Debtor," or "Nonprofit"), to reject the multiple management agreements with The Aliera Companies, Inc. and to enter into new agreements with less expensive vendors. Dkt. 5 at paras. 17-20 (*Declaration of Neil F. Luria in Support of Chapter 11 Petition and First Day Motions*).

3.     The onerous agreements between the Debtor and Aliera reflect the deliberate decision of the Debtor's management to bilk the Debtor's Members out of their contributions rather than funding payments for healthcare that the Members believed they were buying.

### a.     Self-Dealing During the Formation of the Debtor.

4.     The formation of the Debtor arose from the self-dealing of a (recent) former Chairman, Thead. At the time Thead filed the Debtor's 501(c)(3) application with the IRS, Thead was a salesman for and paid by Aliera, a for-profit corporation selling healthcare coverage. Thead did not disclose this relationship to the IRS, as was required.[3] Exhibit A (501(c)(3) paperwork filed with the IRS).

5.     While still a paid employee with Aliera, Thead signed, on behalf of the *Debtor*, the original management agreement with Aliera. Exhibit B (Original Management Agreement).

6.     Under this agreement, the Nonprofit-Debtor essentially acted as Aliera's Healthcare Sharing Ministry ("HCSM") and was a means through which Aliera sold its healthcare services. *Id*.

7.     Through this management agreement, Aliera controlled all aspects of the Debtor's business, including all of the accounts, books, records, and marketing; leaving very little—if any—

---

[3] In the Debtor's Reply to the US Trustee's Motion, it admits that Aliera established it; however, as seen in Exhibit A, this fact was not disclosed to the IRS in form 1023.

power, duties, or control to the Debtor-Nonprofit.[4]  *Id*. Indeed, during this bankruptcy, the Debtor has represented that it lacks information as to its own finances and operations. Dkt. No. 13 at para. 14 (*Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Reject Certain Executory Contracts Nunc Pro Tunc to the Petition Date or Later Specified Rejection Date; and (II) Granting Certain Related Relief to Reject*) and Dkt. No. 76 (*Notice of Service of Subpoena*).

8.      Under the agreement signed by Thead, the Debtor agreed that Aliera would take approximately 84% (or sometimes more) of the monthly contributions made by the Debtors' Members—leaving only approximately 16% (or less) of the Members' contributions for actual healthcare expenses.[5]  Exhibit B.

9.      This business arrangement was not monetarily sustainable, and, as recognized in 2018 by auditors, the Debtor's expenses were in excess of its revenues, and there was serious doubt about the Debtor continuing in business unless or until this management agreement was renegotiated. Exhibit C (December 31, 2018 audited financial report).

### b.      A Missed Opportunity for Reform.

10.     On or about 2019, after the State of Texas sued Aliera and the Debtor, Aliera split into subsidiaries that were managed by The Aliera Companies. Around this same time, the Debtor placed Mr. Joe Guarino, III as President and installed new board members. Dkt. No. 84 at para. 11 (*Debtor's Response in Opposition to the United States Trustee's Motion to Remove the Debtor in Possession Pursuant to 11 U.S.C. § 1185, or Alternatively, Motion to Authorize the Subchapter V Trustee to Investigate the Debtor's Financial Affairs Pursuant to 11 U.S.C. § 1183*).

---

[4] Despite the lack of control, Thead, as Chairman and Director of the Nonprofit, paid himself $125,000 annually, which later increased to $135,000 per year.
[5] The percentage of monies paid to Aliera was dependent upon the plan choices made.

11.    Due to the creation of the Aliera subsidiaries, new contracts with the Debtor were necessary. Thead in his position as Chairman, and Guarino as the new President, failed to negotiate better terms for the Debtor.

12.    In fact, Thead signed new contracts with Aliera's subsidiaries that became effective on January 1, 2020. The terms were not more favorable for the Debtor, and based upon the Debtor's own admissions, these new contracts are what caused this bankruptcy.

### c.    <u>Restructuring, Bankruptcy, & Liquidation.</u>

13.    During April of 2021, the Debtor hired SOLIC as restructuring advisers to work with Thead and Guarino to provide business advice for the Nonprofit. Dkt. No. 15 (*Debtor's Application for Entry of an Order Approving Agreement with SOLIC Capital Advisors, LLC to Provide the Services of (I) Neil F. Luria as Chief Restructuring Officer, (II) Certain Other Interim Officers, and (III) Certain Support Personnel, Nunc Pro Tunc to the Petition Date*).

14.    In order to reject these onerous Aliera agreements and reorganize the Nonprofit, on July 8, 2021, the Debtor filed this case. Thead, Guarino, and SOLIC remained at the helm, notwithstanding their history of self-dealing and other misconduct. Dkt. No. 1 (*Debtor's Chapter 11 Voluntary Petition*).

15.    Since the filing of this bankruptcy on July 8, 2021, the Debtor has claimed that Aliera is preventing the Debtor from gaining access to estate property in Aliera's possession such as the Debtor's books, records, share requests submitted, share requests denied, and other corporate information. Dkt No. 13 & Dkt. No. 76.

16.    Despite this fact, the Debtor has failed to effectively use the bankruptcy process to quickly gain access to this information and make efforts toward its restructuring. The Debtor filed no

emergency motions to compel turnover of estate property and has not taken any other expedited actions to compel Aliera to release this necessary information.[6]

17.    Instead, hidden within the *Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Reject Certain Executory Contracts Nunc Pro Tunc to the Petition Date or Later Specified Rejection Date; and (II) Granting Certain Related Relief*, at paragraph 14, the Debtor "sought turnover and cooperation" from USA Benefits & Administrators, LLC, a subsidiary of Aliera, a motion that has still not been heard. Dkt. No. 13 at para. 14. Thereafter, on July 21, 2021, on the record, the Debtor announced its intent to fold in its operations and liquidate. Finally, on July 22, 2021, fourteen days after the bankruptcy filing, the Debtor served a subpoena upon the Aliera Companies seeking the production of documents. Dkt. No. 76.

18.    Thead's resignation earlier this week is of no moment. The remaining management: Guarino, a contract Comptroller, one staff employee, and the SOLIC restructuring advisers have also demonstrated their inability to manage the Debtor. Given that the Debtor, from near inception, fully delegated all administration of its programs and memberships to Aliera, and, until just recently, Aliera has held sole and total control, none of the Debtor's remaining management have any more relevant experience with Sharity's operations than that which the Subchapter V Trustee could quickly gain if this Court were to remove the Debtor in Possession and appoint her as Trustee of the Estate.

---

[6] On April 20, 2021, a very similar bankruptcy was filed and on April 21st, the Debtor immediately filed the *Debtor's Emergency Motion to Compel (I) Turnover of All Books, Records, Systems and Processes Related to the Debtor and Its Operations in the Possession and Control of Liberty Power Corp, LLC, (II) Access to Corporate Premises and (III) for Related Relief* (Dkt. no. 11). The Court set this Emergency Motion for hearing the next day and ordered turnover (Order entered on April 23, 2021 at Dkt. no. 29). *In re Liberty Power Holdings, LLC*, Case No. 21-13797-PDR, Southern District of Florida Bankruptcy Court, Fort Lauderdale Division. www.flsb.uscourts.gov

### d.    <u>What is Left to Liquidate</u>?

19.     The Debtor has admitted that its source of income is the Members' monthly contributions. Dkt. No. 14 at para. 1.5 (*Small Business Debtor's Plan of* Reorganization). As such, the assets identified by the Debtor to be distributed consist of monies paid by Members as contributions to Members' health costs.

20.     The Debtor also has potential causes of action that could be brought against Aliera, Thead, and others for, among other things, fraudulent transfers and preferences. As no emergency motion for turnover of property has been filed, it is highly unlikely that the Debtor-in-Possession will thoroughly investigate such causes of action.

21.     Further, one of the Debtor's law firms, Baker and Hostetler, LLP is currently representing the Debtor in the Texas State Court Action and has been representing Thead in the same action (*although another firm has entered an appearance to take over Thead's representation, as of yet, no order has been entered approving that request*). Exhibit D (Affidavit). Given that this joint representation may present a conflict of interest, it suggests that the Debtor did not plan to pursue potential causes of action against Thead.

22.     Because of the Debtor's self-dealing and mismanagement, the States seek that the Debtor-in-Possession be removed, and that a Trustee be appointed to investigate the Debtor, investigate and prosecute any valid causes of action, and liquidate the remainder of this Estate.

### B.    <u>Deciding Whether Members are Creditors of the Estate Should not be a Unilateral Decision made by the Debtor-in-Possession.</u>

23.     The Debtor asserts that its Members are not creditors of the Estate; however, that final decision should not be the Debtor's to make.

24.     The bankruptcy code defines a "claim" in very broad terms:

(5) The term "claim" means—

(A) right to payment, *whether or not* such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent*, matured, unmatured, *disputed*, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (emphasis added).

25.     Because of the Debtors' misleading business practices, Members may have claims to assert. As seen in the many complaints and/or cease and desist orders issued by the States, the consumers that signed up as Members of the Debtor were misled into believing they were purchasing health insurance from the Debtor.[7]

26.     Members were told that the entirety of their monthly payments would be held in a segregated "Sharefile," also called "Sharebox" and would then be used to pay for certain medical expenses approved by the Members. This was not true. Exhibit E (Trinity Healthshare Marketing Material).

27.     Unbeknownst to the Members, and as required under the contract signed by Thead, approximately 84% or more of the Members' monthly contributions were funneled directly into the pocket of the for-profit Aliera, leaving only approximately 16% or less for the Members' medical expenses. Exhibit B.

---

[7] Cease and Desist Orders, Consent Orders, or Settled Actions (some with non-admissions clauses) have been entered against Aliera and/or Sharity in the following States: California, Colorado, Connecticut, Iowa, Maryland, New Mexico, New Jersey, Pennsylvania, Washington, Washington D.C., and Wisconsin.
The following States have ongoing actions: Kansas, Massachusetts, New Mexico, New York, and Texas. The State of New Hampshire has issued cease and desist orders and has an open administrative proceeding against Aliera and Trinity.

28.     The Members were not informed of this redirection of their funds. After many claims for medical expenses were denied, Members across the States filed complaints, and the States have also brought actions against the Debtors and others.

29.     Upon the filing of this bankruptcy, the Debtor abruptly discontinued service to the Members in the State of Texas. Exhibit F (July 12, 2021 Letter to TX Members Terminating Coverage). But, as of July 19, 2021, Members in the State of Texas are still being charged by the Debtor. Exhibit G (July 20, 2021 TX Consumer Complaint).

30.     Similarly, in early July 2021, Members in the State of California received an email from Sharity that cancelled their Memberships, and these California consumers were still charged by the Debtor for their July payments. Exhibit H (July 12, 2021 Email to CA Members Terminating Coverage).

31.     It is beyond the pale to unilaterally assert that Members are not creditors of this Estate. This is an open question and, because of the Debtor's misleading business practices and conduct, should not be left to the Debtor-in-Possession to decide.

32.     Because of the bankruptcy code's broad definition of "claim," Members could argue standing as creditors of this Estate in many ways, whether it be for outstanding medical bills that were wrongfully denied coverage, for contributions wrongfully taken after the service was discontinued, for contributions that were paid but never retained in the share box, or for wrongful conversion of their contribution funds.

33.     Members deserve the process that they are due: the ability to assert a claim and argue its validity. The unilateral decision by the Debtor-in-Possession to announce that Members are not creditors, cuts off the Members' due process rights and only benefits the Debtor.

34.     Again, the States urge this Court to remove the Debtor-in-Possession and appoint a Trustee to manage the claims and liquidation process in a legally fair manner for all.

**C.      Alternatively, the Subchapter V Trustee's Powers Should be Expanded under 11 U.S.C. § 1106.**

35.     If this Court decides not to appoint a Trustee to take over this bankruptcy, the States alternatively request that the Subchapter V Trustee's powers be extended under 11 U.S.C. § 1106.

36.     Pursuant to Bankruptcy Code section 1183(b)(2), this Court may order that the Subchapter V Trustee "perform the duties specified in paragraph (3), (4), and (7) of section 1106(a) of [Title 11], if the court, for cause and on request of a party in interest, the trustee, or the United States Trustee, so orders." 11 U.S.C. § 1183(b)(2). "Cause" is not defined in section 1183(b)(2) of the Code, and there appear to be no published decisions defining cause under this section.

37.     Section 1106(a)(3) of the Code provides that a trustee shall "except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the Debtor, the operations of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or the formulation of the plan." 11 U.S.C. § 1106(a)(3). Once such an investigation is completed, the trustee shall file a statement "including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate." 11 U.S.C. § 1106(a)(4).

38.     In the instant case, the Subchapter V Trustee could investigate, among other things, the potential causes of action against Aliera, Thead, and others; the potential conflict of interest in the representation by Baker Hostelter; the self-dealing of Thead; and, importantly, the misclassification of the Members as donors rather than creditors of the Estate.

### III.    <u>PRAYER</u>

Wherefore premise considered, the States request that the United States Trustee's Motion be granted in its entirety and that the Court remove the Debtor as debtor-in-possession and direct the appointment of a Trustee to takeover this case. Alternatively, if this Court does not order the removal of the Debtor as debtor-in-possession, then the States request that this Court expand the duties of the Subchapter V Trustee to include investigatory duties under section 1106 of the bankruptcy code. Further, the States request any other relief for which they have shown themselves entitled.

Respectfully submitted,

| | |
|---|---|
| Dated: July 30, 2021<br>          Austin, Texas | KEN PAXTON<br>Attorney General of Texas<br><br>BRENT WEBSTER<br>First Assistant Attorney General<br><br>GRANT DORFMAN<br>Deputy First Assistant Attorney General<br><br>SHAWN E. COWLES<br>Deputy Attorney General for Civil Litigation<br><br>RACHEL R. OBALDO<br>Assistant Attorney General<br>Chief, Bankruptcy & Collections Division<br><br>*/s/ Abigail R. Ryan*<br>ABIGAIL R. RYAN<br>Texas State Bar No. 24035956<br>Office of the Attorney General of Texas<br>Bankruptcy & Collections Division<br>P. O. Box 12548 MC008<br>Austin, Texas 78711-2548<br>Telephone: (512) 463-2173<br>Facsimile: (512) 936-1409<br>abigail.ryan@oag.texas.gov<br>ATTORNEYS FOR THE STATE OF TEXAS |

| | |
|---|---|
| Dated: June 30, 2021<br>        New York, New York | NEW YORK STATE DEPARTMENT OF<br>FINANCIAL SERVICES<br>*/s/ Alison L. Passer*<br>Alison L. Passer<br>Senior Assistant Deputy Superintendent<br>Consumer Protection and Financial Enforcement<br>Division<br>1 State Street<br>New York, New York 10004<br>(212) 837-7302<br>Alison.Passer@dfs.ny.gov |
| Dated June 30, 2021 | THE NEW HAMPSHIRE DEPARTMENT OF<br>INSURANCE<br><br>By its attorney,<br><br>JOHN M. FORMELLA,<br>ATTORNEY GENERAL<br><br>*/s/ Anthony J. Galdieri*<br>Anthony J. Galdieri<br>Senior Assistant Attorney General<br>New Hampshire Department of Justice<br>Office of the Attorney General<br>33 Capitol Street<br>Concord, NH 03301<br>(603) 271-1214<br>anthony.j.galdieri@doj.nh.gov |
| Dated: June 30, 2021 | THE STATE OF WISCONSIN<br><br>JOSHUA L. KAUL<br>Attorney General of Wisconsin<br><br>*s/Shannon A. Conlin*<br>SHANNON A. CONLIN<br>Assistant Attorney General<br>State Bar #1089101<br>Attorneys for State of Wisconsin<br>Wisconsin Department of Justice<br>Post Office Box 7857<br>Madison, Wisconsin 53707-7857<br>(608) 266-1677<br>(608) 266-2250 (Fax)<br>conlinsa@doj.state.wi.us |
| Dated:  June 30, 2021 | THE STATE OF WASHINGTON<br><br>Robert W. Ferguson |

|  | Attorney General of Washington<br>1125 Washington Street SE<br>PO Box 40100<br>Olympia, WA 98504-0100 |
|---|---|
| Dated: June 30, 2021 | ROB BONTA<br>Attorney General of California<br>RENU R. GEORGE<br>Senior Assistant Attorney General<br>KATHLEEN BOERGERS<br>Supervising Deputy Attorney General<br>ANNA MOLANDER<br>STEPHANIE YU<br>ARI DYBNIS<br>Deputy Attorneys General<br><br>*/s/ Ari Dybnis*<br>Office of the Attorney General<br>300 South Spring Street, Suite 1702<br>Los Angeles, CA 90013<br>Telephone: (213) 269-6664<br>Facsimile: (916) 731-3652<br>ari.dybnis@doj.ca.gov<br><br>ATTORNEYS FOR THE STATE OF CALIFORNIA |

*(Remainder of Page Intentionally Left Blank - Certificate of Service Follows)*

## **CERTIFICATE OF SERVICE**

I certify that on July 30, 2021, a true and correct copy of the foregoing has been served via

the Court's Electronic Filing System on all parties requesting notice in this proceeding, and on the

following parties by electronic mail:

| | |
|---|---|
| **Proposed Debtor's Counsel**: <br> LANDIS RATH & COBB LLP <br> Adam G. Landis <br> landis@lrclaw.com <br> Matthew B. McGuire <br> mcguire@lrclaw.com <br> Nicolas E. Jenner <br> jenner@lrclaw.com <br><br> BAKER & HOSTETLER LLP <br> Jorian L. Rose <br> jrose@bakerlaw.com <br> Jason I. Blanchard <br> jblanchard@bakerlaw.com <br> Elyssa S. Kates <br> ekates@bakerlaw.com <br> Andrew V. Layden <br> alayden@bakerlaw.com | **Subchapter V Trustee** <br> GELLERT SCALI BUSENKELL & BROWN, LLC <br> (Re: Subchapter V Trustee) <br> Holly Smith Miller, Esq. <br> HSMILLER@GSBBLAW.COM <br><br><br> **Office of the Unites States Trustee** <br> Rosa Sierra, Trial Attorney <br> J. Caleb Boggs Federal Building <br> 844 King Street, Room 2207 <br> Lockbox 35 <br> Wilmington, DE 19801 <br> rosa.sierra@usdoj.gov |
| ALABAMA DEPARTMENT OF INSURANCE <br> PO BOX 303351 <br> MONTGOMERY, AL 36130-3351 <br> INSDEPT@INSURANCE.ALABAMA.GOV | ARIZONA DEPARTMENT OF INSURANCE <br> WENDY GREENWOOD <br> 100 NORTH 15TH AVE, SUITE 102 <br> PHOENIX, AZ 85007-2624 <br> WGREENWOOD@AZINSURANCE.GOV |
| DAVID C. WEISS <br> C/O ELLEN SLIGHTS, ESQUIRE <br> US ATTORNEY'S OFFICE DISTRICT OF DE1007 <br> N. ORANGE STREET, SUITE 700 <br> WILMINGTON, DE 19801 <br><br> ELLEN.SLIGHTS@USDOJ.GOV | DELAWARE SECRETARY OF STATE <br> CORPORATIONS FRANCHISE TAX <br> PO BOX 898 <br> DOVER, DE 19903 <br><br><br> DOSDOC_FTAX@STATE.DE.US |
| DELAWARE ATTORNEY GENERAL DELAWARE <br> DEPARTMENT OF JUSTICECARVEL STATE <br> BUILDING <br> 820 N. FRENCH ST. WILMINGTON, DE 19801 <br><br> ATTORNEY.GENERAL@STATE.DE.US | DIVISION OF MARKET REGULATION &MAIL <br> CHA, INSURANCE EXAMINER ENFORCEMENT <br> PO BOX 7873 <br> MADISON, WI 53707-7873 <br><br> MAI.CHA@WISCONSIN.GOV |

| | |
|---|---|
| GEORGIA OFFICE OF INSURNCE & SAFETY FIRE COMMISSIONER<br>2 MLK JR. DR, W TOWER, STE 702<br>ATLANTA, GA 30334-0000<br><br>PH :(404) 656-2070<br><br>ADMINPROC@OCI.GA.GOV | ILLINOIS DEPARTMENT OF INSURANCE<br>320 W. WASHINGTON STREET<br>SPRINGFIELD, IL 62767-0000<br><br>PH :217-782-4515<br><br>DOI.INFODESK@ILLINOIS.GOV |
| KANSAS INSURANCE DEPARTMENT 1300 SW ARROWHEAD RD.<br>TOPEKA, KS 66604-0000<br>KID.COMMISSIONER@KS.GOV | KANSAS OFFICE OF THE ATTY GENERAL LYNETTE GOOD<br>120 W. 10TH AVE., 2ND FL TOPEKA, KS 66612-1597<br>LYNETTE.GOOD@AG.KS.GOV |
| KENTUCKY DEPARTMENT OF INSURANCE<br>500 MERO STREET<br>2 SE 11<br>FRANKFORT, KY 40601-0000<br>PH :502-564-3630<br>FAX:502-564-1650<br>DOI.ISHELPDESK@KY.GOV | LIFE & HEALTH MARKET REGULATION<br>JAMES KOCHA, SR. MANAGEMENT ANALYST<br>FL OFFICE OF INSURANCE REGULATION<br>200 E. GAINES STREET<br>TALLAHASSE, FL 32399<br>JAMES.KOCHA@FLOIR.COM |
| MICHIGAN DEPT OF INSURANCE AND FINANCIAL SERVICES<br>PO BOX 30220<br>LANSING, MI 48909-7720<br>DIFSINFO@MICHIGAN.GOV | MINNESOTA DEPARTMENT OF COMMERCE<br>85 7TH PLACE EAST<br>SUITE 280<br>SAINT PAUL, MN 55101-0000<br>PH :651-539-1600<br>CONSUMER.PROTECTION@STATE.MN.US |
| MISSOURI DEPARTMENT OF INSURANCE, ROBERT TILLMAN<br>FIN. INSTITUTIONS & PROF. REGST.<br>PO BOX 690<br>JEFFERSON CITY, MO 65102-0690<br>ROB.TILLMAN@INSURANCE.MO.GOV | NEBRASKA DEPARTMENT OF INSURANCE<br>PO BOX 82089<br>LINCOLN, NE 68501-2089<br>PH :402-471-2201<br>DOI.WEBMASTER@NEBRASKA.GOV |
| NEVADA DIVISION OF INSURANCE<br>1818 E. COLLEGE PKWY<br>SUITE 103<br>CARSON CITY, NV 89706-0000<br>PH :(775) 687-0700<br>FAX:702-486-4007<br>CSCC@DOI.NV.GOV | OFFICE OF LICENSING AND MARKET REG.<br>DUSTIN SIMON, INSURANCE INVSTGTR<br>MI DEPT OF INSURANCE & FIN. SERVS<br>PO BOX 30220<br>LANSING, MI 48909-7720<br>SIMOND8@MICHIGAN.GOV |
| RHODE ISLAND DEPT OF BUSINESS REGULATION, INSURANCE DIVISION 1511 PONTIAC AVENUE<br>CRANSTON, RI 02920-0000<br>DBR.INSURANCE@DBR.RI.GOV | SOLIC CAPITAL ADVISORS, LLC<br>N. LURIA, R. NOWITZ, K. TAVAKOLI 425 W. NEW ENGLAND AVENUE SUITE 300<br>WINTER PARK, FL 32789<br>PH :847.583.1618<br>NLURIA@SOLICCAPITAL.COM |

| | |
|---|---|
| SOLIC CAPITAL ADVISORS, LLC<br>N. LURIA, R. NOWITZ, K. TAVAKOLI<br>425 W. NEW ENGLAND AVENUE SUITE 300<br>WINTER PARK, FL 32789<br>PH :847.583.1618<br>RNOWITZ@SOLICCAPITAL.COM | SOLIC CAPITAL ADVISORS, LLC<br>N. LURIA, R. NOWITZ, K. TAVAKOLI<br>425 W. NEW ENGLAND AVENUE, SUITE 300<br>WINTER PARK, FL 32789<br>PH :847.583.1618<br>KTAVAKOLI@SOLICCAPITAL.COM |
| SOUTH CAROLINA DEPT OF INSURANCE 1201<br>MAIN STREET<br>SUITE 1000<br>COLUMBIA, SC 29201-0000<br>INFO@DOI.SC.GOV | SR. DEPUTY COMMISSIONER KATHY SHORTT<br>NORTH CAROLINA DEPT OF INSURANCE 1201<br>MAIL SERVICE CENTER<br>RALEIGH, NC 27699-1201<br>KATHY.SHORTT@NCDOI.GOV |
| STATE OF UTAH INSURANCE DEPT<br>CARRIE BACKUS, MRKT CONDUCT EXAMINER<br>STATE OFFICE BUILDING<br>SUITE 3110<br>SALT LAKE CITY, UT 84114-6901<br>CBACKUS@UTAH.GOV | TENNESSEE DEPARTMENT OF COMMERCE &<br>INSURANCE<br>500 JAMES ROBERTSON PKWY NASHVILLE,<br>TN 37243-0565<br>ASK.TDCI@TN.GOV |
| U.S. ATTORNEY`S OFFICE DAVID C. WEISS<br>HERCULES BUILDING<br>1313 N MARKET STREET WILMINGTON, DE<br>19801<br>DAVID.WEISS@USDOJ.GOV | WEST VIRGINIA OFFICES OF THE INS<br>COMMISSIONER<br>PO BOX 50540<br>CHARLESTON, WV 25305-0540<br>OICLEGAL@WV.GOV |
| WISCONSIN OFFICE OF THE COMM`R OF<br>INSURANCE<br>PO BOX 7873<br>MADISON, WI 53707-7873<br>OCICOMPLAINTS@WISCONSIN.GOV | BURR & FORMAN LLP<br>(RE: COUNSEL TO ALIERA COMPANIES)<br>J. CORY FALGOWSKI, ESQUIRE 1201 N.<br>MARKET STREET SUITE 1407<br>WILMINGTON, DE 19801<br>PH :302-830-2312 FAX:<br>JFALGOWSKI@BURR.COM |
| BURR & FORMAN LLP<br>(RE: COUNSEL TO ALIERA COMPANIES)<br>MARC P. SOLOMON, ESQUIRE<br>420 NORTH 20TH STREET<br>SUITE 3400<br>BIRMINGHAM, AL 35203<br>MSOLOMON@BURR.COM | ADVEVO, LLC<br>990 HAMMOND DRIVE<br>SUITE 700<br>ATLANTA, GA 30328-0000<br>MARTHA.PARKER@ALIERACOMPANIES.COM |
| ENSURIAN AGENCY, LLC<br>990 HAMMOND DRIVE<br>SUITE 700<br>ATLANTA, GA 30328-0000<br>MARTHA.PARKER@ALIERACOMPANIES.COM | GIBBONS, P.C.<br>ONE GATEWAY CENTER<br>NEWARK, NJ 07102-5310<br>JMARTIN@GIBBONSLAW.COM |

| | |
|---|---|
| RON HINKLE<br>LEGISLATIVE CONSULTANT<br>PO BOX 11664<br>AUSTIN, TX 78711<br>RON@RHINKLE.COM | TACTIC EDGE SOLUTIONS, LLC<br>990 HAMMOND DRIVE<br>SUITE 700<br>ATLANTA, GA 30328-0000<br>MARTHA.PARKER@ALIERACOMPANIES.COM |
| USA BENEFITS & ADMINISTRATORS, LLC 990<br>HAMMOND DRIVE<br>SUITE 700<br>ATLANTA, GA 30328-0000<br>MARTHA.PARKER@ALIERACOMPANIES.COM | Karen Cordry, Bankruptcy Counsel<br>National Association of Attorneys General<br>kcordry@naag.org |