# EXHIBIT A

**BURR • • • FORMAN** LLP

*results matter*

Jennifer Mercier Moseley
jmoseley@burr.com
Direct Dial: (404) 685-4322
Direct Fax: (205) 244-5689

171 Seventeenth Street, NW
SUITE 1100
Atlanta, GA 30363

*Office* (404) 815-3000
*Fax* (404) 817-3244
*Toll-free* (877) FOR-BURR

BURR.COM

July 3, 2018

<u>VIA CERTIFIED MAIL (9314869904300048234607)</u>
<u>RETURN RECEIPT REQUESTED</u>

Internal Revenue Service
Attn: EO Determination Letters
Stop 31
Post Office Box 12192
Covington, Kentucky 41012-0192

Re:    **Trinity Healthshare, Inc.**
       ████████████████

Ladies and Gentlemen:

Enclosed is an Application for Recognition of Exemption under Section 501(c)(3) of the Internal Revenue Code for Trinity Healthshare, Inc. The user fee for this application, in the form of a check made payable to the United States Treasury in the amount of $600, is enclosed in the attached envelope. Pursuant to the Form 1023 Checklist, the following documents are enclosed:

      1.     Form 1023 Checklist;

      2.     Form 8718, User Fee for Exempt Organization Determination Letter Request;

      3.     Form 2848, Power of Attorney and Declaration of Representative;

      4.     Form 1023, Application for Recognition of Exemption;

            a.     Additional information;

            b.     Conflict of Interest Policy;

      5.     Certificate of Incorporation;

      6.     Bylaws;

      7.     Conflict of Interest Policy; and

      8.     EIN Confirmation.

Pursuant to Form 2848, please direct any questions or inquiries regarding the aforementioned documents to my attention by phone (404-685-4322), fax (205-244-5689) or email (jmoseley@burr.com).

Thank you for your assistance in this matter.

31930471 v1    A L A B A M A  •  F L O R I D A  •  G E O R G I A  •  M I S S I S S I P P I  •  T E N N E S S E E

Internal Revenue Service
July 3, 2018
Page 2

Sincerely,

*[signature]*

Jennifer Mercier Moseley

CLH/pjk
Enclosures
cc:    Chelsea Beard (via Email cbeard@alierahealthcare.com)
       C. Logan Hinkle (via Email lhinkle@burr.com)

31930471.v1

BU
Vendo

Invo
0702

**BURR ∴ FORMAN** LLP

171 Seventeenth Street, NW, Suite 1100
Atlanta, Georgia 30363

Trinity Healthshare, Inc.
██████████



THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK.          HOLD AT AN ANGLE TO VIEW, DO NOT CASH IF NOT PRESENT.

**BURR & FORMAN LLP**
420 N 20th Street
Suite 3400
Birmingham, AL 35203

WELLS FARGO - Atlanta Sub Operating          Check No.  ████████

Date:          07/02/2018
Void After 180 days

Pay ***Six hundred and 00/100***                    $*******600.00***

Pay
To The
Order Of      United States Treasury

HAMBURGER DECL. - EXHIBIT 11 (Page 3 of 52)

# 1

# Form 1023 Checklist

# Form 1023 Checklist

## (Revised December 2017)

### Application for Recognition of Exemption under Section 501(c)(3) of the Internal Revenue Code

Note: Retain a copy of the completed Form 1023 in your permanent records. Refer to the General Instructions regarding Public Inspection of approved applications.

**Check each box to finish your application (Form 1023). Send this completed Checklist with your filled-in application. If you have not answered all the items below, your application may be returned to you as incomplete.**

- ☑ Assemble the application and materials in this order.
  - Form 1023 Checklist
  - Form 2848, *Power of Attorney and Declaration of Representative* (if filing)
  - Form 8821, *Tax Information Authorization* (if filing)
  - Expedite request (if requesting)
  - Application (Form 1023 and Schedules A through H, as required)
  - Articles of organization
  - Amendments to articles of organization in chronological order
  - Bylaws or other rules of operation and amendments
  - Documentation of nondiscriminatory policy for schools, as required by Schedule B
  - Form 5768, Election/Revocation of Election by an Eligible Section 501(c)(3) Organization To Make Expenditures To Influence Legislation (if filing)
  - All other attachments, including explanations, financial data, and printed materials or publications. Label each page with name and EIN.

- ☑ User fee payment placed in envelope on top of checklist. DO NOT STAPLE or otherwise attach your check or money order to your application. Instead, just place it in the envelope.

- ☑ Employer Identification Number (EIN)

- ☑ Completed Parts I through XI of the application, including any requested information and any required Schedules A through H.
  - You must provide specific details about your past, present, and planned activities.
  - Generalizations or failure to answer questions in the Form 1023 application will prevent us from recognizing you as tax exempt.
  - Describe your purposes and proposed activities in specific easily understood terms.
  - Financial information should correspond with proposed activities.

- ☑ Schedules. Submit only those schedules that apply to you and check either "Yes" or "No" below.

| | | | | |
|---|---|---|---|---|
| Schedule A | Yes ___ | No ✓ | Schedule E | Yes ___ | No ✓ |
| Schedule B | Yes ___ | No ✓ | Schedule F | Yes ___ | No ✓ |
| Schedule C | Yes ___ | No ✓ | Schedule G | Yes ___ | No ✓ |
| Schedule D | Yes ___ | No ✓ | Schedule H | Yes ___ | No ✓ |

HAMBURGER DECL. - EXHIBIT 11 (Page 5 of 52)

☑ An exact copy of your complete articles of organization (creating document). Absence of the proper purpose and dissolution clauses is the number one reason for delays in the issuance of determination letters.
 • Location of Purpose Clause from Part III, line 1 (Page, Article and Paragraph Number) <u>Page 2, third section</u>
 • Location of Dissolution Clause from Part III, line 2b or 2c (Page, Article and Paragraph Number) or by operation of state law <u>Page 2, sixth section</u>

☑ Signature of an officer, director, trustee, or other official who is authorized to sign the application.
 • Signature at Part XI of Form 1023.

☑ Your name on the application must be the same as your legal name as it appears in your articles of organization.

Send completed Form 1023, user fee payment, and all other required information, to:

Internal Revenue Service
Attention: EO Determination Letters
Stop 31
P.O. Box 12192
Covington, KY 41012-0192

If you are using express mail or a delivery service, send Form 1023, user fee payment, and attachments to:

Internal Revenue Service
Attention: EO Determination Letters
Stop 31
201 West Rivercenter Boulevard
Covington, KY 41011

2

# Form 8718

Case 2:19-cv-01281-BJR   Document 22-6   Filed 11/01/19   Page 56 of 77

| Form **8718** | | |
|---|---|---|
| (Rev. March 2018)<br>Department of the Treasury<br>Internal Revenue Service | **User Fee for Exempt Organization<br>Determination Letter Request**<br>▶ Attach this form to determination letter application.<br>(Form 8718 is NOT a determination letter application.)<br>▶ Go to *www.irs.gov/Form8718* for the latest information. | **OMB No. 1545-1798**<br>For<br>IRS Control number _____<br>Use Amount paid _____<br>Only User fee screener |

| Name of organization | Employer Identification Number |
|---|---|
| Trinity Healthshare, Inc. | ▓▓▓▓▓ |

**Caution:** Do not attach Form 8718 to an application for a pension plan determination letter. Use Form 8717 instead.

| 1 | **Type of request** | | **Fee** |
|---|---|---|---|

**a** ☑ Application for recognition of exemption under section 501 or under section 521 from organizations (other than pension, profit-sharing, and stock bonus plans described in section 401). Enter the applicable fee amount  . . . . . . . . . . . . . . . . ▶ $ _____ 600

**b** ☐ Group exemption letters  . . . . . . . . . . . . . . . . . . . ▶ $ _____

Section references are to the Internal Revenue Code, unless otherwise noted.

**Instructions**

The law requires payment of a user fee with each application for a determination letter. For more information, see Rev. Proc. 2018-5, 2018-1 I.R.B. 233, or latest annual update, available on IRS.gov.

Check only one box on line 1 for the type of application you are submitting. Then, enter the appropriate user fee amount in the space provided.

**Caution:** The application will not be processed without payment of the proper user fee.

Attach to Form 8718 a check or money order payable to the "United States Treasury" for the full amount of the user fee. If you do not include the full amount, your application will be returned. Attach Form 8718 to your determination letter application.

Generally, the user fee will be refunded only if the Internal Revenue Service declines to issue a determination.

**Where To File**

Send the determination letter application and Form 8718 to:

Internal Revenue Service
P.O. Box 12192
Covington, KY 41012-0192

**Who Should File**

Organizations applying for federal income tax exemption, other than filers of Form 1023, Application for Recognition of Exemption Under Section 501(c)(3), or Form 1023-EZ (filed only electronically), should file Form 8718.

**Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. If you want your organization to be recognized as tax-exempt by the IRS, you are required to give us this information. We need it to determine whether the organization meets the legal requirements for tax-exempt status.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any internal revenue law. The rules governing the confidentiality of Form 8718 are covered in section 6104.

The time needed to complete and file this form will vary depending on individual circumstances. The estimated average time is 5 minutes. If you have suggestions for making this form simpler, we would be happy to hear from you. You can send us comments from *IRS.gov/FormComments*. Or you can send your comments to the Internal Revenue Service, Tax Forms and Publications, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224. Do not send the form to this address. Instead, see *Where To File*, above.

Cat. No. 64728Z

Form **8718** (Rev. 3-2018)



3

# Form 2848

HAMBURGER DECL. - EXHIBIT 11 (Page 9 of 52)

| Form **2848** | **Power of Attorney** | OMB No. 1545-0150 |
|---|---|---|

Form **2848**
(Rev. January 2018)
Department of the Treasury
Internal Revenue Service

**Power of Attorney
and Declaration of Representative**

► Go to *www.irs.gov/Form2848* for instructions and the latest information.

OMB No. 1545-0150

**For IRS Use Only**
Received by:
Name _____
Telephone _____
Function _____
Date ___/___/___

**Part I**   **Power of Attorney**

**Caution:** A separate Form 2848 must be completed for each taxpayer. Form 2848 will not be honored for any purpose other than representation before the IRS.

**1   Taxpayer information.** Taxpayer must sign and date this form on page 2, line 7.

Taxpayer name and address

Trinity Healthshare, Inc.
860 Johnson Ferry Rd, STE 140-106
Atlanta, GA 30342

Taxpayer identification number(s)
████████

Daytime telephone number
404-401-1748

Plan number (if applicable)

hereby appoints the following representative(s) as attorney(s)-in-fact:

**2   Representative(s)** must sign and date this form on page 2, Part II.

Name and address

Jennifer Moseley
171 17th Street NW, Suite 1100
Atlanta, GA 30363

Check if to be sent copies of notices and communications ☑

CAF No. _____ None
PTIN _____
Telephone No. _____ 404-685-4322
Fax No. _____ 205-244-5689
Check if new: Address ☐  Telephone No. ☐  Fax No. ☐

Name and address

Logan Hinkle
171 17th Street NW, Suite 1100
Atlanta, GA 30363

Check if to be sent copies of notices and communications ☑

CAF No. _____ 0100-25939R
PTIN _____
Telephone No. _____ 205-458-5154
Fax No. _____ 205-244-5659
Check if new: Address ☐  Telephone No. ☐  Fax No. ☐

Name and address

(Note: IRS sends notices and communications to only two representatives.)

CAF No. _____
PTIN _____
Telephone No. _____
Fax No. _____
Check if new: Address ☐  Telephone No. ☐  Fax No. ☐

Name and address

(Note: IRS sends notices and communications to only two representatives.)

CAF No. _____
PTIN _____
Telephone No. _____
Fax No. _____
Check if new: Address ☐  Telephone No. ☐  Fax No. ☐

to represent the taxpayer before the Internal Revenue Service and perform the following acts:

**3   Acts authorized** (you are required to complete this line 3). With the exception of the acts described in line 5b, I authorize my representative(s) to receive and inspect my confidential tax information and to perform acts that I can perform with respect to the tax matters described below. For example, my representative(s) shall have the authority to sign any agreements, consents, or similar documents (see instructions for line 5a for authorizing a representative to sign a return).

| Description of Matter (Income, Employment, Payroll, Excise, Estate, Gift, Whistleblower, Practitioner Discipline, PLR, FOIA, Civil Penalty, Sec. 5000A Shared Responsibility Payment, Sec. 4980H Shared Responsibility Payment, etc.) (see instructions) | Tax Form Number (1040, 941, 720, etc.) (if applicable) | Year(s) or Period(s) (if applicable) (see instructions) |
|---|---|---|
| <u>Application for Recognition of Exemption</u> | 1023 | NA |
| | | |
| | | |

**4   Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for Line 4. Specific Use Not Recorded on CAF . . . . . . . . . . . ► ☑

**5a   Additional acts authorized.** In addition to the acts listed on line 3 above, I authorize my representative(s) to perform the following acts (see instructions for line 5a for more information): ☐ Access my IRS records via an Intermediate Service Provider;
☐ Authorize disclosure to third parties;  ☐ Substitute or add representative(s);  ☐ Sign a return; _____

☐ Other acts authorized: _____

For Privacy Act and Paperwork Reduction Act Notice, see the instructions.   Cat. No. 11980J   Form **2848** (Rev. 1-2018)

HAMBURGER DECL. - EXHIBIT 11 (Page 10 of 52)

Form 2848 (Rev. 1-2018)                                                                                                          Page **2**

**b** **Specific acts not authorized.** My representative(s) is (are) not authorized to endorse or otherwise negotiate any check (including directing or accepting payment by any means, electronic or otherwise, into an account owned or controlled by the representative(s) or any firm or other entity with whom the representative(s) is (are) associated) issued by the government in respect of a federal tax liability.
List any other specific deletions to the acts otherwise authorized in this power of attorney (see instructions for line 5b): _____

**6** **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same matters and years or periods covered by this document. If you **do not** want to revoke a prior power of attorney, check here ▶ ☐
**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**7** **Signature of taxpayer.** If a tax matter concerns a year in which a joint return was filed, each spouse must file a separate power of attorney even if they are appointing the same representative(s). If signed by a corporate officer, partner, guardian, tax matters partner, partnership representative, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the legal authority to execute this form on behalf of the taxpayer.

▶ **IF NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THIS POWER OF ATTORNEY TO THE TAXPAYER.**

| | | |
|---|---|---|
| *(signature)* | 6-28-18 | *CHAIRMAN* |
| Signature | Date | Title (if applicable) |

| | |
|---|---|
| Print Name | Print name of taxpayer from line 1 if other than individual |

| Part II | Declaration of Representative |
|---|---|

Under penalties of perjury, by my signature below I declare that:
• I am not currently suspended or disbarred from practice, or ineligible for practice, before the Internal Revenue Service;
• I am subject to regulations contained in Circular 230 (31 CFR, Subtitle A, Part 10), as amended, governing practice before the Internal Revenue Service;
• I am authorized to represent the taxpayer identified in Part I for the matter(s) specified there; and
• I am one of the following:

**a** Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.
**b** Certified Public Accountant—a holder of an active license to practice as a certified public accountant in the jurisdiction shown below.
**c** Enrolled Agent—enrolled as an agent by the Internal Revenue Service per the requirements of Circular 230.
**d** Officer—a bona fide officer of the taxpayer organization.
**e** Full-Time Employee—a full-time employee of the taxpayer.
**f** Family Member—a member of the taxpayer's immediate family (spouse, parent, child, grandparent, grandchild, step-parent, step-child, brother, or sister).
**g** Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Internal Revenue Service is limited by section 10.3(d) of Circular 230).
**h** Unenrolled Return Preparer—Authority to practice before the IRS is limited. An unenrolled return preparer may represent, provided the preparer (1) prepared and signed the return or claim for refund (or prepared if there is no signature space on the form); (2) was eligible to sign the return or claim for refund; (3) has a valid PTIN; and (4) possesses the required Annual Filing Season Program Record of Completion(s). *See Special Rules and Requirements for Unenrolled Return Preparers in the instructions for additional information.*
**k** Qualifying Student—receives permission to represent taxpayers before the IRS by virtue of his/her status as a law, business, or accounting student working in an LITC or STCP. See instructions for Part II for additional information and requirements.
**r** Enrolled Retirement Plan Agent—enrolled as a retirement plan agent under the requirements of Circular 230 (the authority to practice before the Internal Revenue Service is limited by section 10.3(e)).

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THE POWER OF ATTORNEY. REPRESENTATIVES MUST SIGN IN THE ORDER LISTED IN PART I, LINE 2.**

**Note:** For designations d-f, enter your title, position, or relationship to the taxpayer in the "Licensing jurisdiction" column.

| Designation— Insert above letter (a-r). | Licensing jurisdiction (State) or other licensing authority (if applicable). | Bar, license, certification, registration, or enrollment number (if applicable). | Signature | Date |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Form **2848** (Rev. 1-2018)

HAMBURGER DECL. - EXHIBIT 11 (Page 11 of 52)

Form 2848 (Rev. 1-2018)                                                                                              Page **2**

**b** Specific acts not authorized. My representative(s) is (are) not authorized to endorse or otherwise negotiate any check (including directing or accepting payment by any means, electronic or otherwise, into an account owned or controlled by the representative(s) or any firm or other entity with whom the representative(s) is (are) associated) issued by the government in respect of a federal tax liability.
List any other specific deletions to the acts otherwise authorized in this power of attorney (see instructions for line 5b): _____

**6** Retention/revocation of prior power(s) of attorney. The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here  ▶ ☐
**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**7** Signature of taxpayer. If a tax matter concerns a year in which a joint return was filed, each spouse must file a separate power of attorney even if they are appointing the same representative(s). If signed by a corporate officer, partner, guardian, tax matters partner, partnership representative, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the legal authority to execute this form on behalf of the taxpayer.
▶ **IF NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THIS POWER OF ATTORNEY TO THE TAXPAYER.**

| | | |
|---|---|---|
| _William H. Thead III_ (signature) | 6-28-18 | CHAIRMAN |
| Signature | Date | Title (if applicable) |
| William H. Thead III | Trinity Healthshare, Inc. | |
| Print Name | Print name of taxpayer from line 1 if other than individual | |

**Part II    Declaration of Representative**

Under penalties of perjury, by my signature below I declare that:
• I am not currently suspended or disbarred from practice, or ineligible for practice, before the Internal Revenue Service;
▶ I am subject to regulations contained in Circular 230 (31 CFR, Subtitle A, Part 10), as amended, governing practice before the Internal Revenue Service;
• I am authorized to represent the taxpayer identified in Part I for the matter(s) specified there; and
• I am one of the following:

**a** Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.
**b** Certified Public Accountant—a holder of an active license to practice as a certified public accountant in the jurisdiction shown below.
**c** Enrolled Agent—enrolled as an agent by the Internal Revenue Service per the requirements of Circular 230.
**d** Officer—a bona fide officer of the taxpayer organization.
**e** Full-Time Employee—a full-time employee of the taxpayer.
**f** Family Member—a member of the taxpayer's immediate family (spouse, parent, child, grandparent, grandchild, step-parent, step-child, brother, or sister).
**g** Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Internal Revenue Service is limited by section 10.3(d) of Circular 230).
**h** Unenrolled Return Preparer—Authority to practice before the IRS is limited. An unenrolled return preparer may represent, provided the preparer (1) prepared and signed the return or claim for refund (or prepared if there is no signature space on the form); (2) was eligible to sign the return or claim for refund; (3) has a valid PTIN; and (4) possesses the required Annual Filing Season Program Record of Completion(s). *See Special Rules and Requirements for Unenrolled Return Preparers in the instructions for additional information.*
**k** Qualifying Student—receives permission to represent taxpayers before the IRS by virtue of his/her status as a law, business, or accounting student working in an LITC or STCP. See instructions for Part II for additional information and requirements.
**r** Enrolled Retirement Plan Agent—enrolled as a retirement plan agent under the requirements of Circular 230 (the authority to practice before the Internal Revenue Service is limited by section 10.3(e)).

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THE POWER OF ATTORNEY. REPRESENTATIVES MUST SIGN IN THE ORDER LISTED IN PART I, LINE 2.**

Note: For designations d-f, enter your title, position, or relationship to the taxpayer in the "Licensing jurisdiction" column.

| Designation— Insert above letter (a-r). | Licensing jurisdiction (State) or other licensing authority (if applicable). | Bar, license, certification, registration, or enrollment number (if applicable). | Signature | Date |
|---|---|---|---|---|
| A | GA | 367065 | _signature_ | 7/3/18 |
| A | AL | ASB-5602-L73C | _signature_ | 07/03/2018 |
| | | | | |
| | | | | |
| | | | | |

Form **2848** (Rev. 1-2018)

4

# Form 1023 w/ Attachments

HAMBURGER DECL. - EXHIBIT 11 (Page 13 of 52)

Form **1023**

(Rev. December 2017)
Department of the Treasury
Internal Revenue Service

## Application for Recognition of Exemption
### Under Section 501(c)(3) of the Internal Revenue Code

► Do not enter social security numbers on this form as it may be made public.
► Go to *www.irs.gov/Form1023* for instructions and the latest information.

OMB No. 1545-0056
Note: If exempt status is approved, this application will be open for public inspection.

Use the instructions to complete this application and for a definition of all **bold** items. For additional help, call IRS Exempt Organizations Customer Account Services toll-free at 1-877-829-5500. Visit our website at *www.irs.gov* for forms and publications. If the required information and documents are not submitted with payment of the appropriate user fee, the application may be returned to you.

Attach additional sheets to this application if you need more space to answer fully. Put your name and EIN on each sheet and identify each answer by Part and line number. Complete Parts I – XI of Form 1023 and submit only those Schedules (A through H) that apply to you.

**Part I**   Identification of Applicant

| | | | |
|---|---|---|---|
| 1 | Full name of organization (exactly as it appears in your organizing document) | 2 | c/o Name (if applicable) |

Trinity Healthshare, Inc.

| | | | |
|---|---|---|---|
| 3 | Mailing address (Number and street) (see instructions) | Room/Suite | 4   Employer Identification Number (EIN) |

860 Johnson Ferry Road                              140-106

City or town, state or country, and ZIP + 4      |   5   Month the annual accounting period ends (01 – 12)

Atlanta, GA 30342                                                December

6   Primary contact (officer, director, trustee, or authorized representative)
a   Name:

b   Phone:      404-401-1748

Jennifer Moseley                                               c   Fax: (optional)

| 7 | Are you represented by an authorized representative, such as an attorney or accountant? If "Yes," provide the authorized representative's name, and the name and address of the authorized representative's firm. Include a completed Form 2848, *Power of Attorney and Declaration of Representative*, with your application if you would like us to communicate with your representative. | ☑ Yes ☐ No |
|---|---|---|
| 8 | Was a person who is not one of your officers, directors, trustees, employees, or an authorized representative listed in line 7, paid, or promised payment, to help plan, manage, or advise you about the structure or activities of your organization, or about your financial or tax matters? If "Yes," provide the person's name, the name and address of the person's firm, the amounts paid or promised to be paid, and describe that person's role. | ☐ Yes ☑ No |
| 9 a | Organization's website:  none at this time | |
| b | Organization's email: (optional) | |
| 10 | Certain organizations are not required to file an information return (Form 990 or Form 990-EZ). If you are granted tax-exemption, are you claiming to be excused from filing Form 990 or Form 990-EZ? If "Yes," explain. See the instructions for a description of organizations not required to file Form 990 or Form 990-EZ. | ☐ Yes ☑ No |
| 11 | Date incorporated if a corporation, or formed, if other than a corporation.   (MM/DD/YYYY)   06 / 26 / 2019 | |
| 12 | Were you formed under the laws of a foreign country? If "Yes," state the country. | ☐ Yes ☑ No |

For Paperwork Reduction Act Notice, see instructions.          Cat. No. 17133K          Form **1023** (Rev. 12-2017)

HAMBURGER DECL. - EXHIBIT 11 (Page 14 of 52)

Form 1023 (Rev. 12-2017)    Name: Trinity Healthshare, Inc.    EIN: ▮▮▮▮▮    Page **2**

## Part II — Organizational Structure

You must be a corporation (including a limited liability company), an unincorporated association, or a trust to be tax exempt. See instructions. **DO NOT file this form unless you can check "Yes" on lines 1, 2, 3, or 4.**

| | | Yes | No |
|---|---|---|---|
| 1 | Are you a corporation? If "Yes," attach a copy of your articles of incorporation showing certification of filing with the appropriate state agency. Include copies of any amendments to your articles and be sure they also show state filing certification. | ☑ Yes | ☐ No |
| 2 | Are you a limited liability company (LLC)? If "Yes," attach a copy of your articles of organization showing certification of filing with the appropriate state agency. Also, if you adopted an operating agreement, attach a copy. Include copies of any amendments to your articles and be sure they show state filing certification. Refer to the instructions for circumstances when an LLC should not file its own exemption application. | ☐ Yes | ☑ No |
| 3 | Are you an unincorporated association? If "Yes," attach a copy of your articles of association, constitution, or other similar organizing document that is dated and includes at least two signatures. Include signed and dated copies of any amendments. | ☐ Yes | ☑ No |
| 4a | Are you a trust? If "Yes," attach a signed and dated copy of your trust agreement. Include signed and dated copies of any amendments. | ☐ Yes | ☑ No |
| b | Have you been funded? If "No," explain how you are formed without anything of value placed in trust. | ☐ Yes | ☐ No |
| 5 | Have you adopted bylaws? If "Yes," attach a current copy showing date of adoption. If "No," explain how your officers, directors, or trustees are selected. | ☑ Yes | ☐ No |

## Part III — Required Provisions in Your Organizing Document

The following questions are designed to ensure that when you file this application, your organizing document contains the required provisions to meet the organizational test under section 501(c)(3). Unless you can check the boxes in both lines 1 and 2, your organizing document does not meet the organizational test. **DO NOT file this application until you have amended your organizing document.** Submit your original and amended organizing documents (showing state filing certification if you are a corporation or an LLC) with your application.

| | | |
|---|---|---|
| 1 | Section 501(c)(3) requires that your organizing document state your exempt purpose(s), such as charitable, religious, educational, and/or scientific purposes. Check the box to confirm that your organizing document meets this requirement. Describe specifically where your organizing document meets this requirement, such as a reference to a particular article or section in your organizing document. Refer to the instructions for exempt purpose language. | ☑ |
| | Location of Purpose Clause (Page, Article, and Paragraph): within Art. of Incorporation, see attached. Page 2, Sect. 3. | |
| 2a | Section 501(c)(3) requires that upon dissolution of your organization, your remaining assets must be used exclusively for exempt purposes, such as charitable, religious, educational, and/or scientific purposes. Check the box on line 2a to confirm that your organizing document meets this requirement by express provision for the distribution of assets upon dissolution. If you rely on state law for your dissolution provision, do not check the box on line 2a and go to line 2c. | ☑ |
| b | If you checked the box on line 2a, specify the location of your dissolution clause (Page, Article, and Paragraph). Do not complete line 2c if you checked box 2a. within Art. of Incorporation, see attached. Page 2, Sect. 8. | |
| c | See the instructions for information about the operation of state law in your particular state. Check this box if you rely on operation of state law for your dissolution provision and indicate the state: | ☐ |

## Part IV — Narrative Description of Your Activities

Using an attachment, describe your past, present, and planned activities in a narrative. If you believe that you have already provided some of this information in response to other parts of this application, you may summarize that information here and refer to the specific parts of the application for supporting details. You may also attach representative copies of newsletters, brochures, or similar documents for supporting details to this narrative. Remember that if this application is approved, it will be open for public inspection. Therefore, your narrative description of activities should be thorough and accurate. Refer to the instructions for information that must be included in your description.

## Part V — Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors

1a  List the names, titles, and mailing addresses of all of your officers, directors, and trustees. For each person listed, state their total annual compensation, or proposed compensation, for all services to the organization, whether as an officer, employee, or other position. Use actual figures, if available. Enter "none" if no compensation is or will be paid. If additional space is needed, attach a separate sheet. Refer to the instructions for information on what to include as compensation.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Form **1023** (Rev. 12-2017)

Form 1023 (Rev. 12-2017)    Name: Trinity Healthshare, Inc.    EIN: ███████    Page **3**

**Part V**  Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors (Continued)

b  List the names, titles, and mailing addresses of each of your five highest compensated employees who receive or will receive compensation of more than $50,000 per year. Use the actual figure, if available. Refer to the instructions for information on what to include as compensation. Do not include officers, directors, or trustees listed in line 1a.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|------|-------|-----------------|--------------------------------------------------|
|      |       |                 |                                                  |
|      |       |                 |                                                  |
|      |       |                 |                                                  |
|      |       |                 |                                                  |
|      |       |                 |                                                  |

c  List the names, names of businesses, and mailing addresses of your five highest compensated independent contractors that receive or will receive compensation of more than $50,000 per year. Use the actual figure, if available. Refer to the instructions for information on what to include as compensation.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|------|-------|-----------------|--------------------------------------------------|
|      |       |                 |                                                  |
|      |       |                 |                                                  |
|      |       |                 |                                                  |
|      |       |                 |                                                  |
|      |       |                 |                                                  |

The following "Yes" or "No" questions relate to past, present, or planned relationships, transactions, or agreements with your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in lines 1a, 1b, and 1c.

2a  Are any of your officers, directors, or trustees related to each other through family or business relationship? If "Yes," identify the individuals and explain the relationship.  ☑ Yes  ☐ No

b  Do you have a business relationship with any of your officers, directors, or trustees other than through their position as an officer, director, or trustee? If "Yes," identify the individuals and describe the business relationship with each of your officers, directors, or trustees.  ☐ Yes  ☑ No

c  Are any of your officers, directors, or trustees related to your highest compensated employees or highest compensated independent contractors listed on lines 1b or 1c through family or business relationships? If "Yes," identify the individuals and explain the relationship.  ☐ Yes  ☑ No

3a  For each of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c, attach a list showing their name, qualifications, average hours worked, and duties.

b  Do any of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c receive compensation from any other organizations, whether tax exempt or taxable, that are related to you through common control? If "Yes," identify the individuals, explain the relationship between you and the other organization, and describe the compensation arrangement.  ☐ Yes  ☑ No

4  In establishing the compensation for your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, and 1c, the following practices are recommended, although they are not required to obtain exemption. Answer "Yes" to all the practices you use.

a  Do you or will the individuals that approve compensation arrangements follow a conflict of interest policy?  ☑ Yes  ☐ No

b  Do you or will you approve compensation arrangements in advance of paying compensation?  ☑ Yes  ☐ No

c  Do you or will you document in writing the date and terms of approved compensation arrangements?  ☑ Yes  ☐ No

Form **1023** (Rev. 12-2017)

HAMBURGER DECL. - EXHIBIT 11 (Page 16 of 52)

Form 1023 (Rev. 12-2017)   Name: Trinity Healthshare, Inc.   EIN: ▉▉▉▉   Page 4

**Part V**   Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors *(Continued)*

| | | | |
|---|---|---|---|
| d | Do you or will you record in writing the decision made by each individual who decided or voted on compensation arrangements? | ☑ Yes | ☐ No |
| e | Do you or will you approve compensation arrangements based on information about compensation paid by similarly situated taxable or tax-exempt organizations for similar services, current compensation surveys compiled by independent firms, or actual written offers from similarly situated organizations? Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation. | ☑ Yes | ☐ No |
| f | Do you or will you record in writing both the information on which you relied to base your decision and its source? | ☑ Yes | ☐ No |
| g | If you answered "No" to any item on lines 4a through 4f, describe how you set compensation that is reasonable for your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in Part V, lines 1a, 1b, and 1c. | | |
| 5a | Have you adopted a conflict of interest policy consistent with the sample conflict of interest policy in Appendix A to the instructions? If "Yes," provide a copy of the policy and explain how the policy has been adopted, such as by resolution of your governing board. If "No," answer lines 5b and 5c. | ☑ Yes | ☐ No |
| b | What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you for setting their own compensation? | | |
| c | What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you regarding business deals with themselves? Note: A conflict of interest policy is recommended though it is not required to obtain exemption. Hospitals, see Schedule C, Section I, line 14. | | |
| 6a | Do you or will you compensate any of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in lines 1a, 1b, or 1c through non-fixed payments, such as discretionary bonuses or revenue-based payments? If "Yes," describe all non-fixed compensation arrangements, including how the amounts are determined, who is eligible for such arrangements, whether you place a limitation on total compensation, and how you determine or will determine that you pay no more than reasonable compensation for services. Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation. | ☐ Yes | ☑ No |
| b | Do you or will you compensate any of your employees, other than your officers, directors, trustees, or your five highest compensated employees who receive or will receive compensation of more than $60,000 per year, through non-fixed payments, such as discretionary bonuses or revenue-based payments? If "Yes," describe all non-fixed compensation arrangements, including how the amounts are or will be determined, who is or will be eligible for such arrangements, whether you place or will place a limitation on total compensation, and how you determine or will determine that you pay no more than reasonable compensation for services. Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation. | ☐ Yes | ☑ No |
| 7a | Do you or will you purchase any goods, services, or assets from any of your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," describe any such purchase that you made or intend to make, from whom you make or will make such purchases, how the terms are or will be negotiated at arm's length, and explain how you determine that you pay no more than fair market value. Attach copies of any written contracts or other agreements relating to such purchases. | ☐ Yes | ☑ No |
| b | Do you or will you sell any goods, services, or assets to any of your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," describe any such sales that you made or intend to make, to whom you make or will make such sales, how the terms are or will be negotiated at arm's length, and explain how you determine you are or will be paid at least fair market value. Attach copies of any written contracts or other agreements relating to such sales. | ☐ Yes | ☑ No |
| 8a | Do you or will you have any leases, contracts, loans, or other agreements with your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," provide the information requested in lines 8b through 8f. | ☐ Yes | ☑ No |
| b | Describe any written or oral arrangements that you made or intend to make. | | |
| c | Identify with whom you have or will have such arrangements. | | |
| d | Explain how the terms are or will be negotiated at arm's length. | | |
| e | Explain how you determine you pay no more than fair market value or you are paid at least fair market value. | | |
| f | Attach copies of any signed leases, contracts, loans, or other agreements relating to such arrangements. | | |
| 9a | Do you or will you have any leases, contracts, loans, or other agreements with any organization in which any of your officers, directors, or trustees are also officers, directors, or trustees, or in which any individual officer, director, or trustee owns more than a 35% interest? If "Yes," provide the information requested in lines 9b through 9f. | ☐ Yes | ☑ No |

Form **1023** (Rev. 12-2017)

HAMBURGER DECL. - EXHIBIT 11 (Page 17 of 52)

Form 1023 (Rev. 12-2017)   Name: Trinity Healthshare, Inc.                                EIN: ▮▮▮▮▮▮▮        Page 8

## Part V   Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors (Continued)

| | |
|---|---|
| b | Describe any written or oral arrangements you made or intend to make. |
| c | Identify with whom you have or will have such arrangements. |
| d | Explain how the terms are or will be negotiated at arm's length. |
| e | Explain how you determine or will determine you pay no more than fair market value or that you are paid at least fair market value. |
| f | Attach a copy of any signed leases, contracts, loans, or other agreements relating to such arrangements. |

## Part VI   Your Members and Other Individuals and Organizations That Receive Benefits From You

The following "Yes" or "No" questions relate to goods, services, and funds you provide to individuals and organizations as part of your activities. Your answers should pertain to past, present, and planned activities. See instructions.

| | | | |
|---|---|---|---|
| 1a | In carrying out your exempt purposes, do you provide goods, services, or funds to individuals? If "Yes," describe each program that provides goods, services, or funds to individuals. | ☑ Yes | ☐ No |
| b | In carrying out your exempt purposes, do you provide goods, services, or funds to organizations? If "Yes," describe each program that provides goods, services, or funds to organizations. | ☐ Yes | ☑ No |
| 2 | Do any of your programs limit the provision of goods, services, or funds to a specific individual or group of specific individuals? For example, answer "Yes," if goods, services, or funds are provided only for a particular class, your members, individuals who work for a particular employer, or graduates of a particular school. If "Yes," explain the limitation and how recipients are selected for each program. | ☑ Yes | ☐ No |
| 3 | Do any individuals who receive goods, services, or funds through your programs have a family or business relationship with any officer, director, trustee, or with any of your highest compensated employees or highest compensated independent contractors listed in Part V, lines 1a, 1b, and 1c? If "Yes," explain how these related individuals are eligible for goods, services, or funds. | ☑ Yes | ☐ No |

## Part VII   Your History

The following "Yes" or "No" questions relate to your history. See instructions.

| | | | |
|---|---|---|---|
| 1 | Are you a successor to another organization? Answer "Yes," if you have taken or will take over the activities of another organization; you took over 25% or more of the fair market value of the net assets of another organization; or you were established upon the conversion of an organization from for-profit to nonprofit status. If "Yes," complete Schedule G. | ☐ Yes | ☑ No |
| 2 | Are you submitting this application more than 27 months after the end of the month in which you were legally formed? If "Yes," complete Schedule E. | ☐ Yes | ☑ No |

## Part VIII   Your Specific Activities

The following "Yes" or "No" questions relate to specific activities that you may conduct. Check the appropriate box. Your answers should pertain to past, present, and planned activities. See instructions.

| | | | |
|---|---|---|---|
| 1 | Do you support or oppose candidates in political campaigns in any way? If "Yes," explain. | ☐ Yes | ☑ No |
| 2a | Do you attempt to influence legislation? If "Yes," explain how you attempt to influence legislation and complete line 2b. If "No," go to line 3a. | ☐ Yes | ☑ No |
| b | Have you made or are you making an election to have your legislative activities measured by expenditures by filing Form 5768? If "Yes," attach a copy of the Form 5768 that was already filed or attach a completed Form 5768 that you are filing with this application. If "No," describe whether your attempts to influence legislation are a substantial part of your activities. Include the time and money spent on your attempts to influence legislation as compared to your total activities. | ☐ Yes | ☑ No |
| 3a | Do you or will you operate bingo or gaming activities? If "Yes," describe who conducts them, and list all revenue received or expected to be received and expenses paid or expected to be paid in operating these activities. Revenue and expenses should be provided for the time periods specified in Part IX, Financial Data. | ☐ Yes | ☑ No |
| b | Do you or will you enter into contracts or other agreements with individuals or organizations to conduct bingo or gaming for you? If "Yes," describe any written or oral arrangements that you made or intend to make, with whom you have or will have such arrangements, explain how the terms are or will be negotiated at arm's length, and explain how you determine or will determine you pay no more than fair market value or you will be paid at least fair market value. Attach copies of any written contracts or other agreements relating to such arrangements. | ☐ Yes | ☑ No |
| c | List the states and local jurisdictions, including Indian Reservations, in which you conduct or will conduct gaming or bingo. | | |

Form 1023 (Rev. 12-2017)

Form 1023 (Rev. 12-2017)      Name: Trinity Healthshare, Inc.                EIN: ███████              Page 6

**Part VIII    Your Specific Activities** *(Continued)*

**4a** Do you or will you undertake fundraising? If "Yes," check all the fundraising programs you do or will  ☑ Yes  ☐ No
conduct. See Instructions.

    ☑ mail solicitations                     ☑ phone solicitations
    ☑ email solicitations                  ☑ accept donations on your website
    ☑ personal solicitations              ☐ receive donations from another organization's website
    ☐ vehicle, boat, plane, or similar donations    ☐ government grant solicitations
    ☐ foundation grant solicitations           ☐ Other

    Attach a description of each fundraising program.

**b** Do you or will you have written or oral contracts with any individuals or organizations to raise funds for  ☐ Yes  ☑ No
you? If "Yes," describe these activities. Include all revenue and expenses from these activities and state
who conducts them. Revenue and expenses should be provided for the time periods specified in Part IX,
Financial Data. Also, attach a copy of any contracts or agreements.

**c** Do you or will you engage in fundraising activities for other organizations? If "Yes," describe these  ☐ Yes  ☑ No
arrangements. Include a description of the organizations for which you raise funds and attach copies of
all contracts or agreements.

**d** List all states and local jurisdictions in which you conduct fundraising. For each state or local jurisdiction
listed, specify whether you fundraise for your own organization, you fundraise for another organization, or
another organization fundraises for you.

**e** Do you or will you maintain separate accounts for any contributor under which the contributor has the  ☐ Yes  ☑ No
right to advise on the use or distribution of funds? Answer "Yes" if the donor may provide advice on the
types of investments, distributions from the types of investments, or the distribution from the donor's
contribution account. If "Yes," describe this program, including the type of advice that may be provided
and submit copies of any written materials provided to donors.

| | | |
|---|---|---|
| **5** | Are you affiliated with a governmental unit? If "Yes," explain. | ☐ Yes  ☑ No |

**6a** Do you or will you engage in economic development? If "Yes," describe your program.  ☐ Yes  ☑ No
**b** Describe in full who benefits from your economic development activities and how the activities promote
exempt purposes.

**7a** Do or will persons other than your employees or volunteers develop your facilities? If "Yes," describe  ☐ Yes  ☑ No
each facility, the role of the developer, and any business or family relationship(s) between the developer
and your officers, directors, or trustees.

**b** Do or will persons other than your employees or volunteers manage your activities or facilities? If "Yes,"  ☐ Yes  ☑ No
describe each activity and facility, the role of the manager, and any business or family relationship(s)
between the manager and your officers, directors, or trustees.

**c** If there is a business or family relationship between any manager or developer and your officers,
directors, or trustees, identify the individuals, explain the relationship, describe how contracts are
negotiated at arm's length so that you pay no more than fair market value, and submit a copy of any
contracts or other agreements.

**8** Do you or will you enter into joint ventures, including partnerships or limited liability companies  ☐ Yes  ☑ No
treated as partnerships, in which you share profits and losses with partners other than section 501(c)(3)
organizations? If "Yes," describe the activities of these joint ventures in which you participate.

**9a** Are you applying for exemption as a childcare organization under section 501(k)? If "Yes," answer lines  ☐ Yes  ☑ No
9b through 9d. If "No," go to line 10.

**b** Do you provide childcare so that parents or caretakers of children you care for can be gainfully  ☐ Yes  ☐ No
employed (see instructions)? If "No," explain how you qualify as a childcare organization described in
section 501(k).

**c** Of the children for whom you provide childcare, are 85% or more of them cared for by you to enable their  ☐ Yes  ☐ No
parents or caretakers to be gainfully employed (see instructions)? If "No," explain how you qualify as a
childcare organization described in section 501(k).

**d** Are your services available to the general public? If "No," describe the specific group of people for whom  ☐ Yes  ☐ No
your activities are available. Also, see the instructions and explain how you qualify as a childcare
organization described in section 501(k).

**10** Do you or will you publish, own, or have rights in music, literature, tapes, artworks, choreography,  ☐ Yes  ☑ No
scientific discoveries, or other intellectual property? If "Yes," explain. Describe who owns or will own
any copyrights, patents, or trademarks, whether fees are or will be charged, how the fees are
determined, and how any items are or will be produced, distributed, and marketed.

Form **1023** (Rev. 12-2017)

Form 1023 (Rev. 12-2017)    Name: Trinity Healthshare, Inc.    EIN:    Page 7

**Part VIII    Your Specific Activities (Continued)**

| | | | |
|---|---|---|---|
| 11 | Do you or will you accept contributions of: real property; conservation easements; closely held securities; intellectual property such as patents, trademarks, and copyrights; works of music or art; licenses; royalties; automobiles, boats, planes, or other vehicles; or collectibles of any type? If "Yes," describe each type of contribution, any conditions imposed by the donor on the contribution, and any agreements with the donor regarding the contribution. | ☐ Yes | ☑ No |

| | | | |
|---|---|---|---|
| 12a | Do you or will you operate in a foreign country or countries? If "Yes," answer lines 12b through 12d. If "No," go to line 13a. | ☐ Yes | ☑ No |
| b | Name the foreign countries and regions within the countries in which you operate. | | |
| c | Describe your operations in each country and region in which you operate. | | |
| d | Describe how your operations in each country and region further your exempt purposes. | | |

| | | | |
|---|---|---|---|
| 13a | Do you or will you make grants, loans, or other distributions to organization(s)? If "Yes," answer lines 13b through 13g. If "No," go to line 14a. | ☐ Yes | ☑ No |
| b | Describe how your grants, loans, or other distributions to organizations further your exempt purposes. | | |
| c | Do you have written contracts with each of these organizations? If "Yes," attach a copy of each contract. | ☐ Yes | ☐ No |
| d | Identify each recipient organization and any relationship between you and the recipient organization. | | |
| e | Describe the records you keep with respect to the grants, loans, or other distributions you make. | | |
| f | Describe your selection process, including whether you do any of the following. | | |
| | (i)  Do you require an application form? If "Yes," attach a copy of the form. | ☐ Yes | ☐ No |
| | (ii)  Do you require a grant proposal? If "Yes," describe whether the grant proposal specifies your responsibilities and those of the grantee, obligates the grantee to use the grant funds only for the purposes for which the grant was made, provides for periodic written reports concerning the use of grant funds, requires a final written report and an accounting of how grant funds were used, and acknowledges your authority to withhold and/or recover grant funds in case such funds are, or appear to be, misused. | ☐ Yes | ☐ No |
| g | Describe your procedures for oversight of distributions that assure you the resources are used to further your exempt purposes, including whether you require periodic and final reports on the use of resources. | | |

| | | | |
|---|---|---|---|
| 14a | Do you or will you make grants, loans, or other distributions to foreign organizations? If "Yes," answer lines 14b through 14f. If "No," go to line 15. | ☐ Yes | ☑ No |
| b | Provide the name of each foreign organization, the country and regions within a country in which each foreign organization operates, and describe any relationship you have with each foreign organization. | | |
| c | Does any foreign organization listed in line 14b accept contributions earmarked for a specific country or specific organization? If "Yes," list all earmarked organizations or countries. | ☐ Yes | ☐ No |
| d | Do your contributors know that you have ultimate authority to use contributions made to you at your discretion for purposes consistent with your exempt purposes? If "Yes," describe how you relay this information to contributors. | ☐ Yes | ☐ No |
| e | Do you or will you make pre-grant inquiries about the recipient organization? If "Yes," describe these inquiries, including whether you inquire about the recipient's financial status, its tax-exempt status under the Internal Revenue Code, its ability to accomplish the purpose for which the resources are provided, and other relevant information. | ☐ Yes | ☐ No |
| f | Do you or will you use any additional procedures to ensure that your distributions to foreign organizations are used in furtherance of your exempt purposes? If "Yes," describe these procedures, including site visits by your employees or compliance checks by impartial experts, to verify that grant funds are being used appropriately. | ☐ Yes | ☐ No |

Form 1023 (Rev. 12-2017)

HAMBURGER DECL. - EXHIBIT 11 (Page 20 of 52)

Form 1023 (Rev. 12-2017) Name: Trinity Healthshare, Inc.     EIN:     ▇▇▇▇     Page 9

| **Part VIII** | **Your Specific Activities** *(Continued)* | | |
|---|---|---|---|
| 15 | Do you have a close connection with any organizations? If "Yes," explain. | ☐ Yes | ☑ No |
| 16 | Are you applying for exemption as a cooperative hospital service organization under section 501(e)? If "Yes," explain. | ☐ Yes | ☑ No |
| 17 | Are you applying for exemption as a cooperative service organization of operating educational organizations under section 501(f)? If "Yes," explain. | ☐ Yes | ☑ No |
| 18 | Are you applying for exemption as a charitable risk pool under section 501(n)? If "Yes," explain. | ☐ Yes | ☑ No |
| 19 | Do you or will you operate a school? If "Yes," complete Schedule B. Answer "Yes," whether you operate a school as your main function or as a secondary activity. | ☐ Yes | ☑ No |
| 20 | Is your main function to provide hospital or medical care? If "Yes," complete Schedule C. | ☐ Yes | ☑ No |
| 21 | Do you or will you provide low-income housing or housing for the elderly or handicapped? If "Yes," complete Schedule F. | ☐ Yes | ☑ No |
| 22 | Do you or will you provide scholarships, fellowships, educational loans, or other educational grants to individuals, including grants for travel, study, or other similar purposes? If "Yes," complete Schedule H. **Note:** Private foundations may use Schedule H to request advance approval of individual grant procedures. | ☐ Yes | ☑ No |

HAMBURGER DECL. - EXHIBIT 11 (Page 21 of 52)

Form 1023 (Rev. 12-2017)    Name: Trinity Healthshare, Inc.    EIN: ▮▮▮▮▮    Page 9

## Part IX   Financial Data

For purposes of this schedule, years in existence refer to completed tax years.

1. If in existence less than 5 years, complete the statement for each year in existence and provide projections of your likely revenues and expenses based on a reasonable and good faith estimate of your future finances for a total of:
   a. Three years of financial information if you have not completed one tax year, or
   b. Four years of financial information if you have completed one tax year. See instructions.

2. If in existence 5 or more years, complete the schedule for the most recent 5 tax years. You will need to provide a separate statement that includes information about the most recent 5 tax years because the data table in Part IX has not been updated to provide for a 5th year. See instructions.

### A. Statement of Revenues and Expenses

| | Type of revenue or expense | Current tax year | | 3 prior tax years or 2 succeeding tax years | | | | (e) Provide Total for (a) through (d) |
|---|---|---|---|---|---|---|---|---|
| | | (a) From 1/1/18 To 12/31/18 | (b) From 1/1/19 To 12/31/19 | (c) From 1/1/20 To 12/31/20 | | (d) From To | | |
| Revenues | 1 Gifts, grants, and contributions received (do not include unusual grants) | 110,000 | 400,000 | 550,000 | | | | 1,060,000 |
| | 2 Membership fees received | | | | | | | |
| | 3 Gross investment income | | | | | | | |
| | 4 Net unrelated business income | | | | | | | |
| | 5 Taxes levied for your benefit | | | | | | | |
| | 6 Value of services or facilities furnished by a governmental unit without charge (not including the value of services generally furnished to the public without charge) | | | | | | | |
| | 7 Any revenue not otherwise listed above or in lines 9-12 below (attach an itemized list) | | | | | | | |
| | 8 Total of lines 1 through 7 | 110,000 | 400,000 | 550,000 | | | | 1,060,000 |
| | 9 Gross receipts from admissions, merchandise sold or services performed, or furnishing of facilities in any activity that is related to your exempt purposes (attach itemized list) | | | | | | | |
| | 10 Total of lines 8 and 9 | 110,000 | 400,000 | 550,000 | | | | 1,060,000 |
| | 11 Net gain or loss on sale of capital assets (attach schedule and see instructions) | | | | | | | |
| | 12 Unusual grants | | | | | | | |
| | 13 Total Revenue Add lines 10 through 12 | 110,000 | 400,000 | 550,000 | | | | 1,060,000 |
| Expenses | 14 Fundraising expenses | 2,500 | 7,500 | 7,500 | | | | |
| | 15 Contributions, gifts, grants, and similar amounts paid out (attach an itemized list) | | | | | | | |
| | 16 Disbursements to or for the benefit of members (attach an itemized list) | 45,000 | 105,000 | 210,000 | | | | |
| | 17 Compensation of officers, directors, and trustees | 30,000 | 125,000 | 125,000 | | | | |
| | 18 Other salaries and wages | | | 30,000 | | | | |
| | 19 Interest expense | | | | | | | |
| | 20 Occupancy (rent, utilities, etc.) | | 5,100 | 5,100 | | | | |
| | 21 Depreciation and depletion | | | | | | | |
| | 22 Professional fees | 15,000 | 10,000 | 10,000 | | | | |
| | 23 Any expense not otherwise classified, such as program services (attach itemized list) | | | | | | | |
| | 24 Total Expenses Add lines 14 through 23 | 92,500 | 442,600 | 487,600 | | | | |

Form 1023 (Rev. 12-2017)

HAMBURGER DECL. - EXHIBIT 11 (Page 22 of 52)

Form 1023 (Rev. 12-2017)    Name: Trinity Healthshare, Inc.    EIN: ▮▮▮▮▮    Page 10

## Part IX    Financial Data *(Continued)*

### B. Balance Sheet (for your most recently completed tax year)

|  | Assets |  | Year End (Whole dollars) |
|---|---|---|---|
| 1 | Cash | 1 | n/a |
| 2 | Accounts receivable, net | 2 | |
| 3 | Inventories | 3 | |
| 4 | Bonds and notes receivable (attach an itemized list) | 4 | |
| 5 | Corporate stocks (attach an itemized list) | 5 | |
| 6 | Loans receivable (attach an itemized list) | 6 | |
| 7 | Other investments (attach an itemized list) | 7 | |
| 8 | Depreciable and depletable assets (attach an itemized list) | 8 | |
| 9 | Land | 9 | |
| 10 | Other assets (attach an itemized list) | 10 | |
| 11 | Total Assets (add lines 1 through 10) | 11 | |
|  | **Liabilities** |  | |
| 12 | Accounts payable | 12 | |
| 13 | Contributions, gifts, grants, etc. payable | 13 | |
| 14 | Mortgages and notes payable (attach an itemized list) | 14 | |
| 15 | Other liabilities (attach an itemized list) | 15 | |
| 16 | Total Liabilities (add lines 12 through 15) | 16 | |
|  | **Fund Balances or Net Assets** |  | |
| 17 | Total fund balances or net assets | 17 | |
| 18 | Total Liabilities and Fund Balances or Net Assets (add lines 16 and 17) | 18 | |
| 19 | Have there been any substantial changes in your assets or liabilities since the end of the period shown above? If "Yes," explain. | ☐ Yes   ☑ No | |

## Part X    Public Charity Status

Part X is designed to classify you as an organization that is either a private foundation or a public charity. Public charity status is a more favorable tax status than private foundation status. If you are a private foundation, Part X is designed to further determine whether you are a private operating foundation. See instructions.

| 1a | Are you a private foundation? If "Yes," go to line 1b. If "No," go to line 5 and proceed as instructed. If you are unsure, see the instructions. | ☐ Yes   ☑ No |
|---|---|---|
| b | As a private foundation, section 508(e) requires special provisions in your organizing document in addition to those that apply to all organizations described in section 501(c)(3). Check the box to confirm that your organizing document meets this requirement, whether by express provision or by reliance on operation of state law. Attach a statement that describes specifically where your organizing document meets this requirement, such as a reference to a particular article or section in your organizing document or by operation of state law. See the instructions, including Appendix B, for information about the special provisions that need to be contained in your organizing document. Go to line 2. | ☐ |
| 2 | Are you a private operating foundation? To be a private operating foundation you must engage directly in the active conduct of charitable, religious, educational, and similar activities, as opposed to indirectly carrying out these activities by providing grants to individuals or other organizations. If "Yes," go to line 3. If "No," go to the signature section of Part XI. | ☐ Yes   ☐ No |
| 3 | Have you existed for one or more years? If "Yes," attach financial information showing that you are a private operating foundation; go to the signature section of Part XI. If "No," continue to line 4. | ☐ Yes   ☐ No |
| 4 | Have you attached either (1) an affidavit or opinion of counsel, (including a written affidavit of opinion from a certified public accountant or accounting firm with expertise regarding this tax law matter), that sets forth facts concerning your operations and support to demonstrate that you are likely to satisfy the requirements to be classified as a private operating foundation; or (2) a statement describing your proposed operations as a private operating foundation? | ☐ Yes   ☐ No |
| 5 | If you answered "No" to line 1a, indicate the type of public charity status you are requesting by checking one of the choices below. You may check only one box. | |
|  | The organization is not a private foundation because it is: | |
| a | 509(a)(1) and 170(b)(1)(A)(i)—a church or a convention or association of churches. Complete and attach Schedule A. | ☐ |
| b | 509(a)(1) and 170(b)(1)(A)(ii)—a school. Complete and attach Schedule B. | ☐ |
| c | 509(a)(1) and 170(b)(1)(A)(iii)—a hospital, a cooperative hospital service organization, or a medical research organization operated in conjunction with a hospital. Complete and attach Schedule C. | ☐ |
| d | 509(a)(3)—an organization supporting either one or more organizations described in line 5a through c, f, h, or i or a publicly supported section 501(c)(4), (5), or (6) organization. Complete and attach Schedule D. | ☐ |

Form **1023** (Rev. 12-2017)

Form 1023 (Rev. 12-2017)     Name: Trinity Healthshare, Inc.        EIN:  [redacted]      Page **11**

| **Part X** | **Public Charity Status** *(Continued)* |

**e**   509(a)(4) – an organization organized and operated exclusively for testing for public safety. ☐

**f**   509(a)(1) and 170(b)(1)(A)(iv) – an organization operated for the benefit of a college or university that is owned or ☐
operated by a governmental unit.

**g**   509(a)(1) and 170(b)(1)(A)(ix) – an agricultural research organization directly engaged in the continuous active ☐
conduct of agricultural research in conjunction with a college or university.

**h**   509(a)(1) and 170(b)(1)(A)(vi) – an organization that receives a substantial part of its financial support in the form ☑
of contributions from publicly supported organizations, from a governmental unit, or from the general public.

**i**   509(a)(2) – an organization that normally receives not more than one-third of its financial support from gross ☐
**investment income** and receives more than one-third of its financial support from contributions, membership
fees, and gross receipts from activities related to its exempt functions (subject to certain exceptions).

**j**   A publicly supported organization, but unsure if it is described in 5h or 5i. You would like the IRS to decide the ☐
correct status.

**6**   If you checked box h, i, or j in question 5 above, and you have been in existence more than 5 years, you must confirm
your public support status. Answer line 6a if you checked box h in line 5 above. Answer line 6b if you checked box i in
line 5 above. If you checked box j in line 5 above, answer both lines 6a and 6b.

**a**   (i)   Enter 2% of line 8, column (e) on Part IX-A Statement of Revenues and Expenses   _____

      (ii)   Attach a list showing the name and amount contributed by each person, company, or organization whose gifts
totaled more than the 2% amount. If the answer is "None," state this.

**b**   (i)   For each year amounts are included on lines 1, 2, and 9 of Part IX-A Statement of Revenues and Expenses, attach
a list showing the name and amount received from each **disqualified person**. If the answer is "None," state this.

      (ii)   For each year amounts were included on line 9 of Part IX-A Statement of Revenues and Expenses, attach a list
showing the name of and amount received from each payer, other than a disqualified person, whose payments
were more than the larger of (1) 1% of Line 10, Part IX-A Statement of Revenues and Expenses, or (2) $5,000. If
the answer is "None," state this.

**7**   Did you receive any unusual grants during any of the years shown on Part IX-A Statement of  ☐ **Yes**  ☑ **No**
Revenues and Expenses? If "Yes," attach a list including the name of the contributor, the date and
amount of the grant, a brief description of the grant, and explain why it is unusual.

| **Part XI** | **User Fee Information and Signature** |

You must include the correct user fee payment with this application. If you do not submit the correct user fee, we will not
process the application and we will return it to you. Your check or money order must be made payable to the United States
Treasury. User fees are subject to change. Check our website at *www.irs.gov* and type "Exempt Organizations User Fee" in
the search box, or call Customer Account Services at 1-877-829-5500 for current information.

     Enter the amount of the user fee paid:    $600

I declare under the penalties of perjury that I am authorized to sign this application on behalf of the above organization and that I have examined this
application, including the accompanying schedules and attachments, and to the best of my knowledge it is true, correct, and complete.

**Please
Sign
Here**  ▶

| *(Signature of Officer, Director, Trustee, or other authorized official)* | *(Type or print name of signer)* William H. Thomas III | *(Date)* 6-28-18 |

                        CHAIRMAN
*(Type or print title or authority of signer)*

Form **1023** (Rev. 12-2017)

# 4a

# Additional Information

HAMBURGER DECL. - EXHIBIT 11 (Page 25 of 52)

Trinity Healthshare, Inc.

██████████

**Attachment to Form 1023**
**Application for Recognition of Exemption**
**under Section 501(c)(3) of the Internal Revenue Code**

### TRINITY HEALTHSHARE, INC.
██████████

---

**Part I, Question 7 – Legal Assistance**
    Jennifer Moseley has provided her services to Trinity Healthshare, Inc. Her office is located at 171 17th Street NW, Suite 1100, Atlanta, GA 30363. She has assisted in the preparation of Form 1023 and attachments. However, as of this date, Jennifer has not charged the entity for her services.

**Part I, Question 11 – Date of Formation**
    Trinity Healthshare, Inc. became incorporated on June 27, 2018, but the Baptist church has been sharing health care needs since the sixteenth century. Trinity Healthshare, Inc. is carrying on the health care sharing tradition of its Baptist predecessors.

**Part IV – Narrative Description of Activities**
    Trinity Healthshare, Inc. is a traditional Baptist sharing entity which is carrying on the longstanding Baptist tradition of sharing and bearing healthcare needs. Trinity Healthshare, Inc. was formed by members of the church to support the needs of missionaries, volunteers, and employees of nonprofit ministries. The members of Trinity Healthshare, Inc. share a common set of ethical or religious beliefs and their medical expenses are shared in accordance with those beliefs.

    Trinity Healthshare, Inc. strives to protect and conserve the biblical traditions of the original Baptist movement which began during the persecutions of Europe in the sixteenth century. Trinity Healthshare, Inc. provides no-cost or low-cost health care sharing support especially for Baptists, or persons who share in the same beliefs, which are missionaries, volunteers, or employees of faith based churches or ministries. Trinity Healthshare, Inc. coordinates sharing contributions from within the Baptist community to make this possible.

    Additionally, the judiciary has specifically confirmed the tax-exempt status of traditional Anabaptist Health Care Sharing Ministries ("Medical Aid Plans"). For example, in *Bethel Conservative Mennonite Church v. Comm'r*, 746 F.2d 388 (7th Cir. 1984), the U.S. Court of Appeals found that a Mennonite church whose members pooled funds to share each other's medical needs was exempt from taxation under §§ 501(a) and 501(c)(3). The participants of Trinity Healthshare, Inc. share a common set of ethical and religious beliefs and their medical expenses are shared in accordance with those beliefs. There are common characteristics and traditions shared by many Baptist congregations.

    One unifying similarity among Baptists is adherence to the New Testament.

> We also believe and confess that before His ascension He instituted His New Testament, and, since it was to be and remain an eternal Testament, that He confirmed and sealed the same with His precious blood, and gave and left it to His disciples, yea, charged them so highly with it, that neither angel nor man may alter it, nor add to it nor take away from

1

HAMBURGER DECL. - EXHIBIT 11 (Page 26 of 52)

Trinity Healthshare, Inc.
EIN: ███████

it; and that He caused the same, as containing the whole counsel and will of His heavenly Father, as far as is necessary for salvation to be proclaimed in His name by His beloved apostles, messengers, and ministers -- whom He called, chose, and sent into all the world for that purpose -- among all peoples, nations, and tongues; and repentance and remission of sins to be preached and testified of; and that He accordingly has therein declared all men without distinction, who through faith, as obedient children, heed, follow, and practice what the same contains, to be His children and lawful heirs; thus excluding no one from the precious inheritance of eternal salvation, except the unbelieving and disobedient, the stiff-necked and obdurate, who despise it, and incur this through their own sins, thus making themselves unworthy of eternal life.

Baptists can trace their origins all the way back to Martin Luther and the Reformation in Europe in the sixteenth century, by John Smyth, who arose out of that transitional time and was considered to be part of the Radical Reformation.

Martin Luther began a German reformation movement in 1517 by nailing his ninety-five theses to the door of the Castle Church of Wittenberg. This Reformation challenged the hierarchies and doctrines of the official state church in that era. Members of the Reformation objected to state church practices such as the selling of indulgences by church clergy, and desired to have the Bible fully translated into their own language so that every common person could read it.

As the Reformation progressed and expanded, several student ministers in the Reformation began studying the Scriptures for themselves and began to develop their own religious convictions. They became dissatisfied with the Reformation movement, but they also objected to the nature and hierarchy of the official state church. They particularly denounced the state church practice of infant baptism, and they began the practice of rebaptism for Christians who wished to publicly express their faith after becoming adults.

The Baptist denomination was founded by John Smyth in 1609. It started as a "Seperatist" movement from the Church of England or Anglican Church in Lincolnshire and then moved to Holland. With his colleague, Thomas Helwys, he chose to be "Baptised" as adults into Christ. Smyth then moved back to England and joined the Waterlander Mennonites and was thereafter identified with the Radical Reformation movement. His Colleague Helwys was disillusioned with Smyth's choice not to break with the past and he moved back to England and formed the first Baptist gathering on English soil in London in 1612.

Sadly, many Baptists have paid for their ethical and religious beliefs with their lives. Most historians state, in fact, that the history of the Baptists is a history of persecution. The sixteenth century official state church viewed the Baptist movement as a theological and political threat to its existence, and it began persecuting and killing Baptists for their faith. In England, the early Baptists were persecuted. John Bunyan, the Baptist author of *The Pilgrim's Progress,* for example, wrote his book while imprisoned for his unauthorized preaching.

During persecution, Baptists held church services in secret, clinging to their ethical and religious beliefs to the death. For some, it meant burning at the stake. It was in this closely-knit circle of persecuted believers that the concept of caring for one another

2

Trinity Healthshare, Inc.
EIN: ▮▮▮▮▮▮▮▮

was transfused into the lifeblood of the Baptist faith.

Those early Baptists believed in a literal interpretation of the Bible and as they read and studied the Scriptures, they developed unparalleled ethical and religious convictions, embracing as one of their core beliefs that they should care for one another.

The ancestry of nearly every member of the Baptist or Anabaptist association of churches can be directly traced to European countries such as Germany, Switzerland, or the Netherlands. Their ancestors fled successive persecutions in search of a country where they could peaceably assemble without the need for secrecy or catacombs.

After five centuries of this faith tradition and the refining fire of persecution for that faith, the members of the Baptist association of churches still believe in a literal interpretation of the Bible. They still believe that caring for one another can and should include sharing one another's needs. When Jesus said to "Love your neighbor as yourself," members of the Baptist association of churches believe that Jesus was commanding them to care for one another.

One scriptural expression of their beliefs is found in Galatians 6:2 which says Christians are to, "Bear one another's burdens, and so fulfill the law of Christ."

Baptists believe in caring for each and every member, including those with pre-existing medical conditions. Many traditional Baptists believe they are following the teachings of Jesus by sharing and "bearing" one another's healthcare needs. The Baptists bore one another's burdens in Europe in the sixteenth century, and Baptists still believe in sharing one another's health care burdens.

Trinity Healthshare, Inc. wishes to continue the centuries-old Baptist tradition of health care sharing and to "so fulfill the law of Christ." The core ethical beliefs of traditional Baptists mobilize their actions, and they relate to one another in community because of them.

Baptists and many other Christian denominations have been sharing in each other's needs medical expenses since the sixteenth century. They have not only shared medical expenses since before 1999, they have shared medical expenses since the 1600's. The Baptist association of churches has formally been in existence since the early 1600's. Baptist members have created Trinity Healthshare, Inc. to be a health care sharing vehicle for missionaries, volunteers, and employees of faith based nonprofit ministries, and those who adhere to its Statement of Beliefs.

Coordinating sharing is today a core function of a local church just the same as it was in Jerusalem, Rome, and Philippi or for the Moravians during the Reformation. That concept of mutual sharing among churches is woven throughout the New Testament with one of the most succinct descriptions of it being found at II Corinthians 8:13-15 in which the Apostle Paul states, "Our desire is not that others might be relieved while you are hard pressed, but that there might be equality. At the present time your plenty will supply what they need, so that in turn their plenty will supply what you need. The goal is equality, as it

is written: 'The one who gathered much did not have too much, and the one who gathered little did not have too little.'"[1]

The Baptist association of churches has been an active, functioning group of churches since the early 17th century. These churches are exempt from taxation under § 501(a).

Trinity Healthshare, Inc. is comprised of traditional faith based ministers and those who adhere to the Statement of Beliefs contained within its Bylaws. Trinity

3

Trinity Healthshare, Inc.
EIN: ▮▮▮▮▮▮▮▮

Healthshare, Inc. is appropriate to be recognized as a 501(c)(3) entity by the Internal
Revenue Service.

**Part V, Question 1a – Name, Title, Mailing Address and Compensation for Officers,
Directors and Trustees**
William H. Thead III – Chairman, Director, and Ordained Minister
860 Johnson Ferry Road, Suite 140-106
Atlanta, GA 30342
No compensation has been paid at this time. However, an annual salary for the
administrator of the plan is projected at $30,000 for 2018, as it is a partial year, and
$125,000 for 2019.

David R. Thead – Secretary, Treasurer, and Director
2343 Sherbrooke Drive NE
Atlanta, GA 30345
No compensation.

**Part V, Question 2a – Family or Business Relationships**
There is a familial relationship between William H. Thead III (brother) and David R.
Thead (brother).

---

[1] See also, Romans 15:24-26, in which the Apostle Paul discusses sharing among the churches: "[W]henever I
journey to Spain, I shall come to you. For I hope to see you on my journey, and to be helped on my way there
by you, if first I may enjoy your company for a while. But now I am going to Jerusalem to minister to the
saints. For it pleased those from Macedonia and Achaia to make a certain contribution for the poor among the
saints who are in Jerusalem."

4

Trinity Healthshare, Inc.
EIN: ███████████

**Part V, Question 3a – Duties and Qualifications of Officers and Directors**
William H. Thead III – Chairman, Director, and Ordained Minister
- Qualifications: William Thead is an ordained minister and has been serving the church for over 20 years. His business career has been working in sales in his family business. For over 25 years, will also serve as a layperson in the church.
- Duties: As Chairman of the Board of Directors, William serves as the leader of the Board, presides at all Board meetings, ensures that Board decisions are implemented, and provides executive supervision over the entity's activities and personnel. He also processes medical bills, corresponds with care providers, raises funds, provides assistance for new and existing members, prepares financial statements, and ensures the entity's solvency.
- Average hours worked: William may work up to 40 hours per week by 2019.

David R. Thead – Secretary, Treasurer, and Director
- Qualifications: David Thead works as a manager of a metal fabrication manufacturer.
- Duties: As Secretary, David is responsible for the records of Trinity Healthshare, Inc. He is responsible for official minute records of meetings, voting on decisions affecting the entity, negotiating medical bills with providers, and helping ensure financial solvency.
- Average hours worked: David may work up to 4 hours per week by 2019.

**Part V, Question 5a – Conflict of Interest Policy**
The Board of Directors of the Corporation adopted a Conflict of Interest Policy by vote on May 26, 2015. A copy of the Conflict of Interest Policy is attached.

**Part V, Question 9a – Agreements**
Trinity Healthshare, Inc. will seek contributions from Baptist entities and individuals to support the entity, including William's current employer.

**Part VI, Question 1a – Provision of Goods, Services or Funds to Individuals**
The Baptists have been sharing one another's health care needs since the sixteenth century. Baptists formed Trinity Healthshare, Inc. to provide a health care sharing vehicle for the members of faith based nonprofit ministries. In accordance with their longstanding Baptist heritage and tradition, the Baptists believe that they are following the teachings of Jesus by bearing one another's health care burdens.[2]

Trinity Healthshare, Inc. coordinates contributions from within the Baptist community to help cover the health care needs of missionaries, volunteers, and employees of faith based nonprofit ministries. When a member of Trinity Healthshare, Inc. has a need, they will be able to submit their health care bills to the Board of Directors, or its designees, for evaluation. In accordance with its guidelines, the Board of Directors will channel shared funds to the members in need.

---

[2] See, Matthew 22:39, "Love your neighbor as yourself." See also, Philippians 2:4, "Look not every man on his own things, but every man also on the things of others."

5

Trinity Healthshare, Inc.
EIN: ███████

## Part VI, Question 2 – Limitation to a Specific Group

Participation in this health care sharing ministry Corporation is limited to missionaries, volunteers, and employees of faith based nonprofit ministries, and those who adhere to its Statement of Beliefs.

## Part VI, Question 3 – Benefits to Officers, Directors, and Family Members

This health care sharing ministry Corporation exists for the benefit of all missionaries, volunteers, and employees of faith based nonprofit ministries, especially Baptist nonprofit ministries. The medical expenses of its members will be charitably and religiously shared in accordance with the Baptist and or Christian health care sharing tradition.

The Corporation's directors and officers are eligible to participate in the Corporation and will be subject to the same terms and conditions as its members. Individuals who have a family or business relationship with directors or officers will be eligible to share health care expenses just like other participants of the Corporation. No special consideration will be given to individuals with family or business relationships, and the Conflict of Interest Policy exists to prevent unequal treatment of participants (See attached "Conflict of Interest Policy").

## Part VIII, Question 4a – Fundraising

The Corporation will be operated exclusively by members of a Christian church, or persons sharing in the same beliefs, and it will be funded by accepting contributions and coordinating sharing within the Christian community, or person whom shares in the same beliefs. It does not intend to solicit funds outside of the Christian community. It will inform businesses and individuals within the Baptist community if it has a deficit or financial need in covering the medical bills of its members. The entity does not have a website at this time, but it may set up a website in the future with an option to donate.

## Part VIII, Question 4d – Fundraising

Large populations of Baptists exist all over the United States. The Corporation does not conduct fundraising for other entities.

## Part VIII, Question 11 – Other Gifts

The Corporation does not accept non-cash gifts at this time. It may eventually expand its gift acceptance policies to include real property or other liquefiable gifts, if possible to do so within IRS guidelines.

## Part VIII, Question 12a – Foreign Countries

The Corporation does not operate or exist in foreign countries. However, Baptist missionaries may incur medical expenses in foreign countries, and the Corporation may directly cover those medical expenses or reimburse the missionaries.

## Part VIII, Question 15 – Close Connection with other Organizations

The Corporation has a close connection with the Baptist church constituency (See above, "Part IV – Narrative Description of Activities").

6

Trinity Healthshare, Inc.
EIN: ███████

**Part IX, Section A – Projections for Statement of Revenues and Expenses**
      Trinity Healthshare, Inc. became incorporated on June 27, 2018. Therefore, it is applying for 501(c)(3) status as a "newly formed" entity, and the Corporation has provided good faith projections of its revenues and expenses for 2018, 2019, and 2020.

**Part X, Questions 6(b)(i), (ii)**
See above, Part VI, Question 3.

7

HAMBURGER DECL. - EXHIBIT 11 (Page 32 of 52)

5

# Certificate of Incorporation

# Delaware

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF INCORPORATION OF "TRINITY
HEALTHSHARE, INC.", FILED IN THIS OFFICE ON THE TWENTY-SEVENTH
DAY OF JUNE, A.D. 2018, AT 9:49 O'CLOCK A.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE
NEW CASTLE COUNTY RECORDER OF DEEDS.

Jeffrey W. Bullock, Secretary of State

6951163  8100
SR# 20185385351

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 202966193
Date: 06-27-18

State of Delaware
Secretary of State
Division of Corporations
Delivered 09:49 AM 06/27/2018
FILED 09:49 AM 06/27/2018
SR 20188385351 - File Number 6961163

# CERTIFICATE OF INCORPORATION

## OF

## TRINITY HEALTHSHARE, INC.
### (A Non-Stock Corporation)

The undersigned, acting as incorporator of a corporation under the provisions of the General Corporation Law of the State of Delaware, hereby certifies that:

**FIRST:** The name of the corporation (hereinafter called "Corporation") is Trinity Healthshare, Inc.

**SECOND:** The address, including street, number, city and county, of the registered office of the Corporation in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle, 19801. The name of the registered agent of the Corporation in the State of Delaware at such address is The Corporation Trust Company.

**THIRD:** The Corporation is organized exclusively for charitable and religious purposes under section 501(c)(3) of the Internal Revenue Code, or corresponding section of any future federal tax code. No part of the net earnings of the Corporation shall inure to the benefit of, or be distributed to its participants, directors, officers, or other private persons, except that the Corporation shall be authorized and empowered to pay any reasonable compensation for services rendered and to make payments and distributions in furtherance of the exempt purposes set forth herein. No substantial part of the activities of the Corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the Corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of or in opposition to any candidate for public office. Notwithstanding any other provision of this Certificate of Incorporation, the Corporation shall not carry on any other activities not permitted to be carried on (a) by an organization exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code, or (b) by an organization, contributions to which are deductible under section 170(c)(2) of the Internal Revenue Code, or the corresponding section of any future federal tax code.

**FOURTH:** The Corporation shall not have any capital stock.

**FIFTH:** The conditions of membership for the Corporation shall be stated in the Bylaws of the Corporation.

**SIXTH:** Upon dissolution of the Corporation, all assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) of the Internal Revenue Code, or corresponding section of any future federal tax code, or shall be distributed to the federal government, or to a state or local government for a public purpose. Any such assets not so disposed of shall be disposed of by a court of competent jurisdiction of the county in which the principal office of the Corporation is then located, exclusively for such purposes or to such organization or organizations, as said court shall determine, which are organized and operated exclusively for such purposes.

31835237 v1

**SEVENTH:**  A director of the Corporation shall not be personally liable to the Corporation for monetary damages for breach of fiduciary duty as a director except for liability (i) for any breach of the director's duty of loyalty to the Corporation; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of the General Corporation Law of the State of Delaware; or (iv) for any transaction from which the director derived any improper personal benefit.  Neither the repeal or the modification of this Article SEVENTH nor the adoption of any provisions of the Certificate of Incorporation of the Corporation inconsistent with this Article SEVENTH shall adversely affect the rights of any director of the Corporation with respect to any matter occurring, or any cause of action, suit or claim that, but for this Article SEVENTH, would accrue or arise, prior to such repeal, modification or adoption of an inconsistent provision.

**EIGHT:**      The name and mailing address of the sole incorporator of the Corporation is as follows:

Name

Christy Floyd

Mailing Address

420 North 20th Street
Suite 3400
Birmingham, Alabama 35203

Dated the 27th day of June, 2018.

Christy Floyd, Incorporator

31835237 v1

2

# 6

# Bylaws

## BYLAWS
### FOR TRINITY HEALTHSHARE, INC.

### ARTICLE I
#### IDENTIFICATION

**Section 1.    Name.** The name of this corporation shall be Trinity Healthshare, Inc.

**Section 2.    Office.** The principal office of this Corporation shall be in Atlanta, Georgia.

**Section 3.    Fiscal Year.** The fiscal year of the Corporation shall begin on the first day of January each year and end on the last day of December in the same year.

**Section 4. Management.** The governing or legislative body of this Corporation shall be a Board of Directors initially appointed by the incorporator of Trinity Healthshare, Inc., as may be provided in these bylaws. Successor board members will be appointed by the Board of Directors of Trinity Healthshare, Inc. The day to day activities of the Corporation shall be carried on by the Chairman and Secretary of the Corporation, and such other Officers as the Board of Directors may appoint.

**Section 5. Funds.** The assets of this Corporation shall be kept upon the books thereof in one fund or in segregated funds as the Board of Directors may prescribe.

**Section 6.    Private Property Exempt.** The private property of all participants, Officers, and Directors of this Corporation shall be exempt from the corporate liabilities.

### ARTICLE II
#### PURPOSE

The purpose for the formation of this Corporation is to enable the community to bear and to assist in sharing one another's burdens and:

In Galatians 6:2 the Apostle Paul instructs believers to, "Bear one another's burdens, and so fulfill the law of Christ." II Corinthians 8:14 further explains, "At the present time your plenty will supply what they need, so that in turn their plenty will supply what you need."

1.    To associate within the faithful community for medical-sharing, physical needs-sharing, financial stewardship, and faithful charitable purposes and in accordance with the Bylaws of this organization and the laws of the state or states wherein this Corporation may be doing business.

2.    To promote the historical, biblical concept of mutual aid sharing, practiced among the community as it relates to the health and wellbeing, to the financial and spiritual needs of its community members.

3.    To create funds from its activities and to maintain and invest its funds; and to disburse and apply its funds among the aged, children disabled or sick among its members in accordance with the laws of the state or states wherein this Corporation may be doing business.

d.      To remain faithful to this Statement of Faith: We believe the Bible alone is the inspired Word of God; therefore it is the final and only source of absolute spiritual authority.

We believe in the triune God of the Bible. He is one God who is revealed in three distinct Persons - God, the Father; God, the Son; and God, the Holy Spirit.

We believe Jesus Christ was God in the flesh - fully God and fully man. He was born of a virgin, lived a sinless life, died on the cross to pay the penalty for our sins, was bodily resurrected on the third day, and now is seated in the heavens at the right hand of God, the Father.

We believe that all people are born with a sinful nature and can be saved from eternal death only by grace alone, through faith alone, trusting only in Christ's atoning death and resurrection to save us from our sins and give us eternal life.

We believe in the bodily resurrection of all who have put their faith in Jesus Christ.

All we believe and do is for the glory of God alone.

## ARTICLE III

### MEMBERSHIP

**Section 1. Age and Gender.** Membership shall not be limited on the basis age or gender. Membership is limited to traditional believers who are volunteers, missionaries, or employees of nonprofit Trinity Healthshare, Inc. ministries, and those who prescribe to the Statement of beliefs at Article II, Section 4, and prescriptions for living a full, healthy and personally spiritual life as contained in the bible and holy writings.

**Section 2. Dependents.** Dependents of members of the faith based Trinity Healthshare, Inc. may be included in the Corporation in accordance with the rules and regulations as set forth by the Board of Directors, but they shall have no voting rights.

**Section 3. Voting.** The members of the Corporation shall not have voting rights unless given voting rights by the Board of Directors.

**Section 4. Application.** Admission to participation in the Corporation shall be made according to the rules, regulations and restrictions fixed from time to time by the Board of Directors.

## ARTICLE IV

### ORGANIZATION

**Section 1. Day-to-Day Management.** The day-to-day management of the Corporation has been delegated by the Board of Directors to a governing body known as the Officers of the Corporation, which shall initially consist of a Chairman and Secretary. The Board of Directors has the authority to appoint additional Officers at any time.

2

## ARTICLE V

### BOARD OF DIRECTORS

**Section 1. Number and Term of Office.** The minimum number of operating directors shall be two, and may be increased by the Board of Directors. The Board of Directors may also create an Advisory Board from within the faithful community or from outside the community to provide spiritual oversight and financial accountability for the organization. The directors' terms shall be staggered so that only one director's term may expire each year.

**Section 2. Method of Selection.** The legislative body of this Corporation shall be a Board of Directors initially appointed by the incorporator of Trinity Healthshare, Inc. Successor board members may be appointed by the Board of Directors of Trinity Healthshare, Inc. as the terms for the incumbent members of the Board of Directors expire or become vacant. Nominees will be taken from the Board of Directors, and voted upon by the Board of Directors. The persons receiving the most votes shall fill the positions on the Board of Directors.

**Section 3. Duties.** The corporate power shall be vested in the Board of Directors who shall have the management and control of the business of the Corporation. They shall employ such agents, representatives and persons as they may deem advisable.

**Section 4. Officers of the Board.** The members of the Board of Directors shall elect the Chairman of the Board, Secretary of the Board, and any other Officer positions established by the Board of Directors, at scheduled Board of Directors meetings. Such officers shall have duties as assigned by the Board of Directors.

**Section 5. Resignation.** A Director may resign at any time by filing a written resignation with the Chairman. The nomination and election process of Section 2 shall be used to fill that unexpired term.

**Section 6. Salary.** The Board of Directors may receive reasonable compensation from the Corporation, and the Board of Directors may establish policies providing for the payment of traveling expenses and other expenses incurred by directors in attending board meetings or otherwise performing their duties.

**Section 7. Annual Meetings.** The date of the regular annual meeting of the Board of Directors shall normally be in the month of February, with the exact date and hour to be designated by the Chairman or Secretary of the Board. The annual meeting of the Board of Directors shall be at a home office, or by telephone, or at such other place as the Chairman or Secretary of the Board may specify.

**Section 8. Other Meetings.** Other meetings of the Board of Directors may be held upon the call of the Chairman or Secretary at any time or place upon proper notice given to each director, specifying the general purpose of the meeting.

**Section 9. Voting.** On matters requiring a vote from the Board of Directors, the board must meet in person, thereafter, votes may be taken by email, phone, ballot, or any other reasonable method, if the method is in accordance with applicable law.

3

Section 10. Quorum. At any meeting of the Board of Directors, the presence of a majority of the members of the Board shall constitute a quorum for the transaction of any business.

Section 11. Committees. The Board of Directors may, from time to time, appoint such standing and special committees as may be deemed necessary and advisable.

Section 12. Proxy Voting. Proxy voting shall not be allowed by Directors.

## ARTICLE VI

### OFFICERS OF THE CORPORATION

Section 1, Officers. At the Annual Meeting of the Board of Directors, they shall appoint officers of this Corporation and shall function according to the policies and directives set forth by the Board of Directors; The Board of Directors may from time to time create other offices with designation of duties and shall appoint persons to fill such offices.

Section 2, Chairman. The Chairman shall preside at all meetings of the Board. He shall fairly present all matters of business and perform the duties assigned to him by the Board of Directors.

Section 3, Secretary. The Secretary shall have custody of the official records of the Corporation. He shall keep the official minute records of all the meetings of the Board of Directors and its committees, and shall perform such other duties as the Board of Directors may from time to time determine. He shall give the required notice of annual and special meetings of the Board of Directors with the advice and consent of the Chairman of the Board. The duties of the Secretary may be performed by one or more assistant Secretaries appointed by the Board of Directors.

Section 4.    Vacancies. All vacancies of officers of the Corporation shall be filled by a special meeting of the Board of Directors.

Section 5, Legal Documents. All legal documents and checks, drafts, notes and orders for the payment of money shall be signed by those officers or employees of the Corporation as the Board of Directors may from time to time designate.

Section 6. Loans to Officers. No loan of money or property or any advance because of services to be performed in the future shall be made to any officer or director of the corporation except for travel advances under such conditions which the Board of directors may determine.

## ARTICLE VII

### INDEMNIFICATION OF DIRECTORS, OFFICERS AND EMPLOYEES

The Corporation shall indemnify any person made a party to any claim, action, suit or proceeding (civil, criminal or administrative) because he is or was a Director, Officer or employee of the Corporation or of any corporation (for profit or not for profit), partnership, association, trust, foundation, or other organization or entity

4

where he served at the request of the Corporation, against the reasonable expenses, including attorneys' fees actually and reasonably incurred by him in connection with the defense of such claim, action, suit or proceeding, or in connection with any appeal therein, except in relation to matters as to which it shall be adjudged therein that such Director, Officer, or employee is liable for negligence, misconduct or wrongdoing in the performance of his duties. The standard of conduct required shall be that such person acted in good faith for a purpose which he reasonably believed to be in the best interests of the Corporation, and, in addition, in any criminal action or proceeding, had no reasonable cause to believe that his conduct was unlawful. Expenses, as aforesaid, shall also include but not be limited to, disbursements and amounts of judgments, fines or penalties incurred by or imposed upon him in connection with any such claim, action, suit or proceeding. The Corporation may also reimburse to any such Director, Officer or employee the reasonable costs of settlement of any such claim, action, suit or proceeding if it shall be found by a majority of a committee composed of the Directors not involved in the matter in controversy (whether or not a quorum) or by a committee of disinterested persons appointed by the Directors, that it was to the best interests of the Corporation that such settlement be made and that such Director, Officer or employee was not guilty of negligence or misconduct or wrongdoing under the standards aforesaid.

## ARTICLE VIII

### AMENDMENTS

These bylaws may be amended, repealed or added to at any regular meeting (or at any special meeting of the Board of Directors called for that purpose) by unanimous vote of the Board of Directors. No amendment, repeal or addition shall be considered unless notice of the proposed amendment, repeal or addition is submitted to the members of the Board of Directors at least 30 days in advance of such meeting.

## ARTICLE IX

### TAX-EXEMPT PURPOSE

The Corporation is organized exclusively for charitable and religious purposes under section 501(c)(3) of the Internal Revenue Code, or corresponding section of any future federal tax code. No part of the net earnings of the Corporation shall inure to the benefit of, or be distributed to its participants, directors, officers, or other private persons, except that the Corporation shall be authorized and empowered to pay any reasonable compensation for services rendered and to make payments and distributions in furtherance of the exempt purposes set forth herein. No substantial part of the activities of the Corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the Corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of or in opposition to any candidate for public office. Notwithstanding any other provision of these Bylaws, the Corporation shall not carry on any other activities not

5

permitted to be carried on (a) by an organization exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code, or (b) by an organization, contributions to which are deductible under section 170(c)(2) of the Internal Revenue Code, or the corresponding section of any future federal tax code.

## ARTICLE X

### DISSOLUTION

Upon dissolution of the Corporation, all assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) of the Internal Revenue Code, or corresponding section of any future federal tax code, or shall be distributed to the federal government, or to a state or local government for a public purpose. Any such assets not so disposed of shall be disposed of by a court of competent jurisdiction of the county in which the principal office of the Corporation is then located, exclusively for such purposes or to such organization or organizations, as said court shall determine, which are organized and operated exclusively for such purposes.

These Bylaws were adopted on June 28, 2018.

I, the undersigned Chairman of the Corporation, do hereby certify that the above Bylaws were duly adopted by the Corporation on the date set forth above.

_____                          6-28-18
Chairman Signature                                Date

6

HAMBURGER DECL. - EXHIBIT 11 (Page 43 of 52)

7

# Conflict of Interest Policy

HAMBURGER DECL. - EXHIBIT 11 (Page 44 of 52)

# CONFLICT OF INTEREST POLICY
## FOR TRINITY HEALTHSHARE, INC.

## ARTICLE I
### PURPOSE

The purpose of this conflict of interest policy is to ensure that the officers and directors of Trinity Healthshare, Inc. do not use poor business judgment, engage in self-dealing, or attempt to receive excessive benefits based on their private interests in transactions or contemplated transactions of Trinity Healthshare, Inc. This policy is intended as a supplement to applicable state and federal laws governing conflicts of interest.

## ARTICLE II
### DEFINITIONS

1.    **Interested Person**

Any officer, director, or individual with board-delegated power, who has a direct or indirect financial interest, as defined below, is an interested person.

2.    **Financial Interest**

A person has a financial interest if the person has, directly or indirectly, through business, investment, or family:

      a. An ownership or investment interest in any entity with which the Corporation has a transaction or arrangement,

      b. A compensation arrangement with the Corporation or with any entity or individual with which the Corporation has a transaction or arrangement, or

      c. A potential ownership or investment interest in, or compensation arrangement with, any entity or individual with which the Corporation is negotiating a transaction or arrangement.

Compensation includes direct and indirect remuneration as well as gifts or favors that are not insubstantial.

A financial interest is not necessarily a conflict of interest. Under Article III, Section 2, a person who has a financial interest may have a conflict of interest only if the appropriate governing board or committee decides that a conflict of interest exists.

## ARTICLE III
### PROCEDURES

1.    **Duty to Disclose**

An interested person must disclose the existence of any financial interest that poses an actual or possible conflict of interest. The interested person must be given the opportunity to disclose all material facts to the Board of Directors.

2.    **Determining Whether a Conflict of Interest Exists**

After the interested person has disclosed the financial interest that poses an actual or possible conflict of interest to the Board of Directors, along with all material facts, and

after any discussion with the interested person has occurred, the interested person shall leave the board meeting while the remaining board members discuss the conflict of interest and hold a vote. The remaining board members shall decide whether a conflict of interest exists and vote on whether the Corporation should proceed with the contemplated transaction.

3.   **Procedures for Addressing the Conflict of Interest**

    a.   An interested person may make a presentation to the Board of Directors and discuss the conflict with the Board of Directors;

    b.   After any such presentation and discussion, the interested person shall leave the Board meeting during further discussion and voting on the conflict of interest;

    c.   Disinterested directors may appoint a disinterested third party or committee to investigate alternative options.

    d.   After exercising due diligence, the disinterested directors shall determine whether the Corporation can obtain with reasonable efforts a more advantageous transaction for the Corporation from a disinterested party.

    e.   If a more advantageous transaction is not determined to be reasonably possible, the disinterested directors shall determine, by majority vote, whether the transaction is fair and reasonable and in the best interests of the Corporation. If the transaction is determined to be fair and reasonable and in the best interests of the Corporation, the disinterested directors may then elect, by majority vote, to enter into the transaction with the interested person.

4.   **Violations of the Conflicts of Interest Policy**

    a.   If the Board of Directors has reason to believe that an interested person has failed to disclose an actual or possible conflict of interest, it shall inform the interested member of the basis for such belief and afford the member an opportunity to explain the alleged failure to disclose.

    b.   If the Board of Directors determines the interested member has failed to disclose an actual or possible conflict of interest, it shall take appropriate corrective action.

## ARTICLE IV
### RECORDS OF PROCEEDINGS

The minutes of the Board of Directors and all committees with board delegated powers shall contain:

    a.   The names of the persons who disclosed or otherwise were found to have a financial interest in connection with an actual or possible conflict of interest, the nature of the financial interest, any action taken to determine whether a conflict of interest was present, and the governing board's or committee's decision as to whether a conflict of interest in fact existed.

    b.   The names of the persons who were present for discussion and votes relating to the transaction or arrangement, the content of the discussion, including

2

any alternatives to the proposed transaction or arrangement, and a record of any votes taken in connection with the proceedings.

## ARTICLE V
### COMPENSATION

A member of the Board of Directors who receives compensation, directly or indirectly, from the Corporation for services is precluded from voting on matters pertaining to that member's compensation.

## ARTICLE VI
### ANNUAL STATEMENTS

Each director, principal officer and member of a committee with governing board delegated powers shall annually sign a statement which affirms such person:

    a.  Has received a copy of the conflicts of interest policy,
    b.  Has read and understands the policy,
    c.  Has agreed to comply with the policy, and
    d.  Understands that the corporation is charitable and in order to maintain its federal tax exemption it must engage primarily in activities which accomplish one or more of its tax-exempt purposes.

## ARTICLE VII
### PERIODIC REVIEWS

To ensure the Corporation operates in a manner consistent with charitable purposes and does not engage in activities that could jeopardize its tax-exempt status, periodic reviews shall be conducted. The periodic reviews shall, at a minimum, include the following subjects:

    a.  Whether compensation arrangements and benefits are reasonable, based on competent survey information, and the result of arm's length bargaining,
    b.  Whether partnerships, joint ventures, and arrangements with management organizations conform to the Corporation's written policies, are properly recorded, reflect reasonable investment or payments for goods and services, further charitable purposes and do not result in self-dealing, impermissible private benefit or an excess benefit transaction.

## ARTICLE VIII
### USE OF OUTSIDE ADVISORS

When conducting the periodic reviews as provided for in Article VII, the Corporation is permitted to use outside advisors. If outside advisors are used, their use shall not relieve the governing board of its responsibility for ensuring periodic reviews are conducted.

3

## CERTIFICATE OF ADOPTION OF CONFLICT OF INTEREST
## POLICY AND AGREEMENT

I do hereby certify that the above stated Conflict of Interest Policy and Agreement for Trinity Healthshare, Inc. were approved and adopted by board of directors on Thursday, June 28, 2018 and constitute a complete copy of the Conflict of Interest Policy of the corporation.

Chairman _____

Date ___6-28-78___

4

# 8

# EIN Confirmation



DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH   45999-0023

Date of this notice:  06-27-2018

Employer Identification Number:
█████████

Form:  SS-4

Number of this notice:  CP 575 A

TRINITY HEALTHSHARE INC
% WILLIAM H THEAD III
860 JOHNSON FERRY ROAD STE 140-106
ATLANTA, GA  30342

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.


WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

        Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN ████████.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

        When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

        Based on the information received from you or your representative, you must file
the following form(s) by the date(s) shown.

              Form 941                          10/31/2018
              Form 940                          01/31/2019

        If you have questions about the form(s) or the due date(s) shown, you can call us at
the phone number or write to us at the address shown at the top of this notice.  If you
need help in determining your annual accounting period (tax year), see Publication 538,
*Accounting Periods and Methods.*

        We assigned you a tax classification based on information obtained from you or your
representative.  It is not a legal determination of your tax classification, and is not
binding on the IRS.  If you want a legal determination of your tax classification, you may
request a private letter ruling from the IRS under the guidelines in Revenue Procedure
2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue).  Note:
Certain tax classification elections can be requested by filing Form 8832, *Entity
Classification Election.*  See Form 8832 and its instructions for additional information.

        If you are required to deposit for employment taxes (Forms 941, 943, 940, 944, 945,
CT-1, or 1042), excise taxes (Form 720), or income taxes (Form 1120), you will receive a
Welcome Package shortly, which includes instructions for making your deposits
electronically through the Electronic Federal Tax Payment System (EFTPS).  A Personal
Identification Number (PIN) for EFTPS will also be sent to you under separate cover.
Please activate the PIN once you receive it, even if you have requested the services of a
tax professional or representative.  For more information about EFTPS, refer to
Publication 966, *Electronic Choices to Pay All Your Federal Taxes.*  If you need to
make a deposit immediately, you will need to make arrangements with your Financial
Institution to complete a wire transfer.

(IRS USE ONLY)      575A            06-27-2018  TRIN B  9999999999  SS-4

 

The IRS is committed to helping all taxpayers comply with their tax filing
obligations.  If you need help completing your returns or meeting your tax obligations,
Authorized e-file Providers, such as Reporting Agents (payroll service providers) are
available to assist you.  Visit the IRS Web site at www.irs.gov for a list of companies
that offer IRS e-file for business products and services.  The list provides addresses,
telephone numbers, and links to their Web sites.

To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

IMPORTANT REMINDERS:

* Keep a copy of this notice in your permanent records.  This notice is issued only
  one time and the IRS will not be able to generate a duplicate copy for you.  You
  may give a copy of this document to anyone asking for proof of your EIN.

* Use this EIN and your name exactly as they appear at the top of this notice on all
  your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice.  If you write, please tear off the stub
at the bottom of this notice and send it along with your letter.  If you do not need to
write us, do not complete and return the stub.

Your name control associated with this EIN is TRIN.  You will need to provide this
information, along with your EIN, if you file your returns electronically.

Thank you for your cooperation.

 

Keep this part for your records.        CP 575 A (Rev. 7-2007)

--------------------------------------------------------------------------------

Return this part with any correspondence
so we may identify your account.  Please                              CP 575 A
correct any errors in your name or address.
                                                                     9999999999

Your Telephone Number  Best Time to Call   DATE OF THIS NOTICE:  06-27-2018
(    )      -                              EMPLOYER IDENTIFICATION NUMBER:
                                          FORM:  SS-4           NOBOD

INTERNAL REVENUE SERVICE                   TRINITY HEALTHSHARE INC
CINCINNATI OH   45999-0023                 % WILLIAM H THEAD III
                                           860 JOHNSON FERRY ROAD STE 140-106
                                           ATLANTA, GA  30342

WALZ
CERTIFIED
MAILER®

FROM **WALZ**

**Label #1**

Internal Revenue Service
Attn: EO Determination Letters
Stop 31
Post Office Box 12192
Covington, KY 41012-0192

**Label #2**

Jennifer M. Moseley
Burr Forman, LLP
171 17th Street, NW, Suite 1100
Suite 1100
Atlanta, GA 30363

**Label #3**

Jennifer M. Moseley
Burr Forman, LLP
171 17th Street, NW, Suite 1100
Suite 1100
Atlanta, GA 30363

FOLD AND TEAR THIS WAY ⟶ OPTIONAL

## U.S. Postal Service
## CERTIFIED MAIL® RECEIPT
Domestic Mail Only

USPS® ARTICLE NUMBER

9314 8699 0430 0048 2346 07

| | | |
|---|---|---|
| Certified Mail Fee | $ | 3.45 |
| Return Receipt (Hardcopy) | $ | 0.00 |
| Return Receipt (Electronic) | $ | 1.50 |
| Certified Mail Restricted Delivery | $ | 0.00 |
| Postage | $ | 2.05 |
| Total Postage and Fees | $ | 7.00 |

Postmark
Here

Sent to:
Internal Revenue Service
Attn: EO Determination Letters
Stop 31
Post Office Box 12192
Covington, KY 41012-0192

Reference Information

PS Form 3800, Facsimile, July 2015

TEAR ALONG THIS LINE

Certified Article Number

9314 8699 0430 0048 2346 07

SENDER'S RECORD

**Label #5 (Optional)**

Internal Revenue Service
Attn: EO Determination Letters
Stop 31
Post Office Box 12192
Covington, KY 41012-0192

**Label #6 - Return Receipt Article Number**

PLACE ON BACK OF RETURN RECEIPT (REQUIRED)

**Label #7 - Certified Mail Article Number**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

9314 8699 0430 0048 2346 07
RETURN RECEIPT (ELECTRONIC)

Label #8

FOLD AND TEAR THIS WAY ⟶

Return Receipt (Form 3811) Barcode

RETURN RECEIPT REQUESTED
USPS® MAIL CARRIER
DETACH ALONG PERFORATION

1. Article Addressed to:

# Please Discard

2. Certified Mail (Form 3800) Article Number

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____ ☐ Agent  ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail
☐ Certified Mail Restricted Delivery

Reference Information

Thank you for using Return Receipt Service

Thank you for using Return Receipt Service