# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SHARITY MINISTRIES, INC.,[1] | Case No.: 21-11001 (JTD) |
| Debtor. | **Ref. No. 264** |

**AMENDED PLAN SUPPLEMENT[2]**

This amended Plan Supplement contains documents filed in connection with the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Sharity Ministries Inc.* [D.I. 264] (as may be amended, supplemented or modified, including all exhibits thereto, the "Plan").[3] Included in this amended Plan Supplement is the following:

**Exhibit A** **Revised Form of the Liquidating Trust Agreement**

**Exhibit B** **Blackline of the Revised Form of the Liquidating Trust Agreement compared against the version filed in the first Plan Supplement**

**Exhibit C** **Identity of Liquidating Trustee**

**Exhibit C-1** **Liquidating Trustee Engagement Letter**

[*Remainder of page intentionally left blank*]

[1] The last four digits of the Debtor's federal tax identification number is 0344. The Debtor's mailing address is 821 Atlanta Street, Suite 124, Roswell, GA 30075.

[2] The *Amended Plan Supplement* amends the Debtor's Plan Supplement [D.I. 293] as filed on November 8, 2021.

[3] All capitalized terms used herein and not otherwise defined herein shall have the respective meanings ascribed to them in the Plan.

The Debtor reserves the right to alter, amend, update, supplement, or modify the Plan Supplement.

Dated: November 18, 2021
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Nicolas E. Jenner*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Nicolas E. Jenner (No. 6554)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
mcguire@lrclaw.com
jenner@lrclaw.com

-and-

**BAKER & HOSTETLER LLP**

Jorian L. Rose (Admitted *pro hac vice*)
Jason I. Blanchard (Admitted *pro hac vice*)
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Email: jrose@bakerlaw.com
jblanchard@bakerlaw.com

Andrew V. Layden (Admitted *pro hac vice*)
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407) 649-4000
Facsimile: (407) 841-0168
Email: alayden@bakerlaw.com

*Counsel for the Debtor and Debtor-in-Possession*

# EXHIBIT A

# SHARITY MINISTRIES, INC., LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "Trust Agreement"), dated as of December [2], 2021, by and among Sharity Ministries, Inc. ("Sharity" or the "Debtor") and the Official Committee of Members (as the Debtor's representative) (the "Committee," and together with the Debtor, the "Grantor"), and Neil F. Luria, as the trustee of the liquidating trust (the "Plan Trustee"), is executed in connection with the "Chapter 11 Plan of Liquidation of Sharity Ministries, Inc." under Chapter 11 of the Bankruptcy Code including, without limitation, the exhibits and schedules thereto and it or they may be modified or supplemented from time to time in accordance with the terms and provisions thereof ( the "Plan"), to provide for a liquidating trust to resolve, liquidate and realize upon the assets transferred to the Plan Trustee and distribute the proceeds of the Liquidating Trust Assets to its beneficiaries. Capitalized terms used in this Trust Agreement and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## PREMISES:

A. On July 8, 2021, the Debtor filed a voluntary petition for relief under Subchapter V of chapter 11 of the Bankruptcy Code (the "Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

B. With the petition, the Debtor filed a motion to approve a "Small Business Debtor" Subchapter V plan of reorganization. [Dkt. No. 14]

C. After various proceedings and hearings by the Court, on September 1, 2021, the Office of the United States Trustee convened an organizational meeting of Members of the Debtor and appointed a 5-person Official Committee of Members. [D.I. 178]

D. On October 1, 2021, the Debtor filed its proposed Small Business Subchapter V Plan (Dkt. No. 223); filed a certification of counsel for the approval of its withdrawal of its election to proceed as a Small Business debtor [Dkt. No. 224] and filed a motion for the approval of a combined disclosure statement and chapter 11 liquidating plan of reorganization (the "Plan and Disclosure Statement") on shortened notice. [Dkt. Nos. 225 & 226]

E. On October 14, 2021, the Court entered an order provisionally (i) approving the disclosure statement as amended and (ii) confirming the Plan and Disclosure statement [Dkt. No. 263], the final form of which was filed by the Debtor the same day. [Dkt. No. 264]

F. On December [2], 2021, after due and sufficient notice; service of the Plan and Disclosure Statement upon all parties in interest; and voting by all parties in interest entitled to vote on the Plan in number and in amount sufficient to approve the Plan; and after a hearing on final approval of the Plan and Disclosure Statement, the Court entered an order approving both the Disclosure Statement and the Plan (the "Confirmation Order"). [Dkt. No. __]

G. The Effective Date of the Plan occurred today.

H. The Plan Trust is to be and by this agreement is created pursuant to, and to effectuate certain provisions of, the Plan, including, without limitation, to liquidate the Causes of Action and the Trust Assets for the benefit of holders of Allowed Claims (all such holders are referred to collectively herein as the "Plan Trust Beneficiaries"), in accordance with Treasury Regulation Section [301.7701-4(d).

I. The Plan Trust is intended to be treated, in part, as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), for the benefit of the Plan Trust Beneficiaries entitled to distributions and will not conduct any ongoing trade or business.

J. The Causes of Action, the Remaining Cash, the Liquidating Trust Assets, and all rights relating thereto and all proceeds and distributions deriving from or received or distributed in respect thereof, and any other Assets contributed by the Grantor to the Plan Trust collectively constitute and are referred to as the "Trust Assets."

K. The Plan Trustee shall be responsible for reconciling all asserted Claims, allowing or objecting to Claims, and obtaining final determinations of the identities of the Plan Trust Beneficiaries in order to distribute the proceeds of the Trust Assets to them.

In consideration of the Premises and the mutual covenants and agreements contained in this Agreement and in the Plan, the Grantor and the Plan Trustee agree as follows:

## ARTICLE 1

## ESTABLISHMENT OF THE LIQUIDATION TRUST

1.1 Establishment of Plan Trust and Appointment of Plan Trustee.

(a) Pursuant to the Plan, the Grantor and the Plan Trustee hereby establish the Plan Trust on behalf and for the benefit of the Plan Trust Beneficiaries.

(b) The Plan Trustee is hereby appointed as trustee of the Plan Trust, effective as of the date hereof and agrees to accept and hold the Trust Assets in trust and administer them for the benefit of the Plan Trust Beneficiaries, as they shall be determined, subject to the terms of the Plan and this Trust Agreement. The Plan Trustee and any successor trustee serving from time to time hereunder shall have all the rights, powers and duties set forth herein.

(c) The Plan Trust has no objective to, and will not, engage in the conduct of a trade or business and, subject to Article 9 below, will terminate upon the completion of its liquidation and distribution duties.

1.2 Transfer of Plan Trust Assets and Rights to the Plan Trust.

(a) As of the date hereof, each Grantor hereby transfers, assigns, and delivers to the Plan Trust all its respective right to and interest in and to the Causes of Action which shall vest in and hereafter be prosecuted by and in the name of the Plan Trust, in each case free and clear of any right, claim or interest in such Assets of any other Person.

(b) The Plan Trust hereby accepts all Plan Trust Assets and agrees to hold and administer the Plan Trust Assets for the benefit of the Plan Trust Beneficiaries, subject to the terms and conditions of this Trust Agreement and the Plan.

(c) On or prior to the date hereof, the Grantor shall (i) deliver, cause to be delivered, or provide access to the Plan Trustee to any and all documents evidencing or relating to the Trust Assets (including those maintained in electronic format and original documents), whether held by the Grantor or its employees, agents, advisors, attorneys, accountants or any other professionals hired by the Grantor, and (ii) use commercially reasonable efforts to provide access to the Plan Trustee to such employees of each Grantor, and their respective agents,

advisors, attorneys, accountants or any other professionals hired by each Grantor, with knowledge of matters relevant to the Trust Assets, subject to the Trustee's payment of any reasonable fees and/or expenses related to the foregoing.

(d) At any time and from time to time on and after the date hereof, the Grantor agrees at the reasonable request of the Plan Trustee to execute and deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), and to take, or cause to be taken, all such further actions as the Plan Trustee may reasonably request in order to evidence or effectuate the transfer of the Plan Trust Assets to the Plan Trust, the substitution of the Plan Trustee as plaintiff with respect to any pending or contemplated Causes of Action and the consummation of the transactions contemplated hereby and by the Plan, and to otherwise carry out the intent of the parties hereunder and under the Plan.

1.3 Title to Trust Assets; Disputed Claims Reserve; Tax Treatment.

(a) The transfer of the Plan Trust Assets by the Grantor to the Plan Trust shall be made for the ratable benefit of the Plan Trust Beneficiaries. The Plan Trustee shall establish and fund such separate accounts (each a "Trust Account") as it determines to be necessary or desirable to carry out the purposes of the Plan Trust in accordance with the Plan and Treasury Regulations Section 301.7701-4(d), including, by way of illustration and without limitation: (i) a Trust Account in an amount sufficient to pay each holder of a Disputed Claim the amount such holder would be entitled to receive if such Disputed Claim had been allowed in full as of the Effective Date (or such other amount as the Bankruptcy Court may determine) (the "Disputed Claims Reserve"); (ii) a Trust Account in an amount sufficient to pay all of the fees, taxes, costs and expenses that are or become payable by the Plan Trust (the "Trust Expense Account"); and (iii) a Trust Account with the balance of the Trust Assets that are not deposited to any other Trust Account, to satisfy Claims which are Allowed Claims (the "Allowed Claims Trust Account"). During the term of the Plan Trust, the Plan Trustee, in his discretion, may (x) transfer Trust Assets between or among the Trust Accounts, and (xi) deposit any additional Trust Assets and/or the proceeds of any Trust Assets to and among the Trust Accounts, in each case as it determines

to be necessary or desirable to carry out the purposes of the Plan Trust in accordance with the Plan and Treasury Regulations Section 301.7701-4(d).

(b) The Plan Trust (which includes the various Trust Accounts) is intended to be treated for federal income tax purposes, in part, as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d), for the benefit of holders of Allowed Claims entitled to distributions, and otherwise as one or more disputed ownership funds within the meaning of Treasury Regulations Section 1.468B-9(b)(1). The Plan Trustee will act as the "administrator" of such disputed ownership funds within the meaning of Treasury Regulations Section 1.468B-9(b)(2). The Disputed Claims Reserve will be subject to the continuing jurisdiction of the Court, and, as a result, no money or property can be paid or distributed from the Disputed Claims Reserve to, or on behalf of, a "claimant" or the "transferor" (as such terms are defined in Treasury Regulations Sections 1.468B-9(b)(3) and 1.468B-9(b)(7), respectively) except if, as and when (i) a Disputed Claim becomes an Allowed Claim pursuant to the procedures for resolving Disputed Claims and making distributions on such Allowed Claims prescribed in the Plan, or (ii) funds are transferred from the Disputed Claims Reserve to any Trust Expense Account to pay the fees, taxes, costs and expenses that are or become payable by the Plan Trust-or incurring and paying such fees, taxes, costs and expenses.

For all purposes of the Internal Revenue Code of 1986, as amended (*e.g.*, sections 61(a)(12), 483, 1001, 1012, and 1274), the Debtors, the Plan Trustee and Plan Trust Beneficiaries of the Plan Trust will treat the transfers of Plan Trust Assets to the Plan Trusts as follows: (i) to the extent not thereafter transferred to the Disputed Claims Reserve or any other disputed ownership fund within the meaning of Treasury Regulations Section 1.468B-9(b)(1), as a transfer of the Plan Trust Assets directly from the Debtor to the Plan Trust Beneficiaries of the Plan Trust established for the Debtor, in partial satisfaction of their then-Allowed Claims, followed by the transfer of such Plan Trust Assets by such Plan Trust Beneficiaries to the Plan Trust established for such Debtor in exchange for Plan Trust Interests for their Pro Rata benefit in accordance with the Plan; and (ii) to the extent thereafter transferred to the Disputed Claims Reserve or any other disputed ownership fund within the meaning of Treasury Regulations Section 1.468B-9(b)(1), as a transfer to such one or more disputed ownership funds. Accordingly, the holders of Plan Trust Interests of the Plan Trust will be treated for federal

income tax purposes as the Grantor and deemed owners of their shares of the Plan Trust Assets held by the Plan Trust described above that are not transferred to a Disputed Claims Reserve or any other disputed ownership fund within the meaning of Treasury Regulations Section 1.468B-9(b)(1), and any earnings thereon.

(c) Upon the transfer of the Plan Trust Assets by the Grantor to the Plan Trust, the Plan Trustee shall succeed to all of the Grantor' rights, title and interests in and to the Plan Trust Assets and the Grantor will have no further interest in or with respect to the Plan Trust Assets or this Plan Trust.

1.4 Nature and Purpose of the Plan Trust.

(a) Purpose. The Plan Trust is a liquidating trust pursuant to which the Plan Trustee, subject to the terms and conditions contained herein and in the Plan, is to: (i) hold the Trust Assets and dispose of the same in accordance with this Trust Agreement, the Plan, and Treasury Regulation Section 301.7701-4(d); (ii) oversee and direct the expeditious but orderly liquidation and distribution of the Trust Assets; and (iii) prosecute appropriate Causes of Action and objections to Claims and resolve Disputed Claims. Accordingly, the primary purpose of this Plan Trust is to liquidate the Trust Assets transferred to it with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan Trust and Treasury Regulation Section 301.7701-4(d).

(b) Actions of the Plan Trustee. The Plan Trustee, upon consultation with the Plan Trust Beneficiary Committee, in an expeditious but orderly manner, shall liquidate and convert to Cash the Trust Assets, make timely distributions, and not unduly prolong the duration of the Plan Trust. The liquidation of the Causes of Action may be accomplished either through the prosecution, compromise and settlement, abandonment or dismissal of any or all claims, rights or causes of action, or otherwise.

(c) Relationship. This Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a liquidating trust. The Plan Trust is not intended to be and shall not be deemed to be or treated as a general partnership,

limited partnership, joint venture, corporation, joint stock company or association, nor shall the Plan Trustee or the Plan Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners, joint venturers or shareholders. The relationship of the Plan Trust Beneficiaries to the Plan Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Trust Agreement.

1.5 Incorporation of Plan. The Plan and the Confirmation Order are each hereby incorporated into this Trust Agreement and made a part hereof by this reference; *provided, however*, to the extent that there is conflict between the provisions of this Trust Agreement, the provisions of the Plan, and/or the Confirmation Order, each such document shall have controlling effect in the following order: (1) the Confirmation Order; (2) the Plan; and (3) this Trust Agreement.

1.6 Funding of the Plan Trust. In accordance with Section 1.3, the initial funding of the Plan Trust shall be the Debtor's Remaining Cash as of the Effective Date (the "Funding Amount"), from which (i) within 30 days after the Effective Date, all Allowed Class 3 Claims shall be paid in full and (ii) in due course all unpaid Allowed Professional Fee Claims for the period before the Effective Date shall be paid.

1.7 Identification of Holders of Plan Trust Interests. The allocation and distribution of interests in the Plan Trust (the "Plan Trust Interests") among the Plan Trust Beneficiaries shall be accomplished as set forth in the Plan, including, without limitation, Article XI of the Plan. The name, address and Disputed Amount and Allowed Amount of the Claims of each Plan Trust Beneficiary shall be recorded and set forth in a confidential register maintained by the Plan Trustee expressly for such purpose (as updated pursuant to this Trust Agreement, the "Register"), which shall in all respects remain subject to the protections of the Court's Order dated November 4, 2021 [Dkt. No. 287]. All references in this Trust Agreement to "Plan Trust Beneficiaries" shall be read to mean holders of record as set forth in the Register and shall not mean any beneficial owner not recorded in the Register. Unless expressly provided herein, the

Plan Trustee may establish a record date which it deems practical for determining the holders of Plan Trust Interests for a particular purpose.

1.8 Interests Beneficial Only. The ownership of a Plan Trust Interest shall not entitle any holder thereof to any title in or to the Trust Assets as such (which title shall be vested in the Plan Trustee) or to any right to call for a partition or division of the assets of the Plan Trust or to require an accounting.

1.9 Non-Transferability of Plan Trust Interests. The Plan Trust Interests shall not be certificated and shall not be transferable, assigned, pledged or hypothecated, in whole or part, except with respect to a transfer by testamentary bequest or under the laws of descent and distribution or otherwise by operation of law (a "Permitted Transfer"); *provided, however,* that any Permitted Transfer shall not be effective until and unless the Plan Trustee receives written notice of such Permitted Transfer and has been provided with evidence satisfactory to it in its sole discretion of the legal right of such transferee to such Plan Trust Interests. Upon the Plan Trustee's receipt of and satisfaction with such written notice he shall update the Register to reflect the transferee as the holder of the Plan Trust Interests subject to such Permitted Transfer.

1.10 Absolute Owners. The Plan Trustee may deem and treat the holder of record as the absolute owner of such Plan Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever and, until any Permitted Transfer is recorded in the Register pursuant to Section 2.3 above, the Plan Trustee shall not be charged with having received notice of any claim or demand to such Plan Trust Interests or the interest therein of any other Person.

1.11 Access to the Register by Holders of Plan Trust Interests. Plan Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable written notice to the Plan Trustee, and in accordance with the reasonable regulations prescribed by the Plan Trustee, to inspect and, at the sole expense of the holder seeking the same, make copies of the Register, in each case for a purpose reasonably related to such Plan Trust Beneficiary's interest in the Plan Trust.

1.12 Securities Law Registration. Under section 1145 of the Code, the issuance of Plan Trust Interests under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and any applicable state or local laws or regulations requiring registration of securities. If the Plan Trustee determines that the Plan Trust is required to comply with registration and reporting requirements of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), or the Investment Company Act of 1940, as amended (the "Investment Company Act"), then the Plan Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and file periodic reports with the SEC.

1.13 Conflicting Claims to Beneficial Interests. If any dispute arises with respect to the ownership or control of the Plan Trust Interests of any holder thereof or the right to receive any distribution in respect thereof, or if there is any disagreement among persons claiming to be permitted successors of any Plan Trust Interests resulting in adverse claims or demands being made in connection with such Plan Trust Interests (an "Ownership Dispute"), then the Plan Trustee shall be entitled to refuse to comply with any demand or direction made by any party to such Ownership Dispute. In so refusing, the Plan Trustee may elect to make no payment or distribution with respect to the Plan Trust Interests relating to the Ownership Dispute or any part thereof, or to make payment or distribution into escrow as provided below, and to refer such Ownership Dispute to the Court or another court of competent jurisdiction, which shall have jurisdiction over resolution of such Ownership Dispute. In so doing, the Plan Trustee shall not be or become liable to any of such parties for its refusal to comply with any demand or direction made by them, nor shall the Plan Trustee be liable for interest on any funds which it may so withhold. The Plan Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a final judgment or (ii) all differences have been resolved by a valid written agreement among all of such parties and the Plan Trustee, which agreement shall include a complete release of the Plan Trustee and the Plan Trust Beneficiary Committee and their respective professionals. With respect to any payment or distribution to be made, the Plan Trustee may make such payment or distribution into an escrow account until the disposition thereof shall be determined by court order or by written agreement among the interested parties to such dispute; *provided, however,* that after providing interested parties at least thirty days' notice, if no action has been commenced within ninety days after the relevant

Distribution Date, the property which is the subject of the dispute shall irrevocably become Unclaimed Property.

## ARTICLE 2

## THE PLAN TRUSTEE

2.1 Plan Trust Proceeds. All proceeds and distributions deriving from or received or distributed in respect of Trust Assets shall be added to the Trust Assets and held as a part thereof.

2.2 Collection of Income. The Plan Trustee shall collect all income earned with respect to the assets of the Plan Trust, if any, which shall thereupon be added to the assets of the Plan Trust and held as a part thereof.

2.3 Payment of Plan Trust Expenses. The Plan Trustee may expend the assets of the Disputed Claims Reserve (i) to pay expenses incurred by the Plan Trust in reconciling and resolving Disputed Claims, (ii) to pay reasonable expenses relating to the administration of the Plan Trust (including, without limitation, the costs and expenses of the Plan Trustee and the Plan Trust Beneficiary Committee, the fees of the U.S. Trustee, and the fees, costs and expenses of all professionals retained by any of them or their members, as the case may be, and any taxes imposed on the Plan Trust or fees and expenses in connection with, arising out of or related to the Trust Assets, and (iii) to satisfy other liabilities incurred or assumed by the Plan Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Trust Agreement. Notwithstanding any other provision of this Trust Agreement to the contrary, the Plan Trustee shall not be required to take any action or enter into or maintain any claim, demand, action or proceeding relating to the Plan Trust unless it shall have sufficient funds in the Disputed Claims Reserve for that purpose.

2.4 Distributions. The Plan Trustee shall distribute the net distributable assets of the Plan Trust to the holders of Plan Trust Interests in accordance with the provisions of Article IV of the Plan.

2.5 Tenure, Removal, and Replacement of the Plan Trustee.

(a) The Plan Trustee will serve until resignation and the appointment of a successor pursuant to subsection (b) below, removal pursuant to subsection (c) below or death (if applicable).

(b) The Plan Trustee may resign by giving not less than ninety (90) days' written notice to the Plan Trust Beneficiary Committee; provided, however that such resignation will become effective upon the appointment of a successor trustee as provided herein and the acceptance by such successor trustee of such appointment and such successor trustee may accept his/her appointment within such ninety-day period. If a successor trustee is not appointed or does not accept its appointment within ninety (90) days following delivery of notice of resignation, the Plan Trustee may file a motion with the Court, upon notice and hearing, for the appointment of a successor trustee.

(c) The Plan Trustee may be removed by resolution of the Plan Trust Beneficiary Committee.

(d) To the extent that the Plan Trustee is removed pursuant to the terms specified in Section 3.5(c) (a "Removal") or the Plan Trustee resigns pursuant to the terms specified in Section 3.5(b) (a "Resignation"), and such Plan Trustee is then serving in any other capacity for or on behalf of either of the Grantor or is serving as trustee of any trust formed pursuant to the Plan (service by the Plan Trustee in each such additional capacity, collectively, the "Responsibilities"), the Plan Trustee shall be deemed to be terminated (for all purposes and without any further action) from each of its other Responsibilities upon its Removal or Resignation.

(e) In the event of a vacancy in the position of Plan Trustee (whether by removal, resignation or death, if applicable), the vacancy will be filled by the appointment of a successor trustee by (i) resolution of the Plan Trust Beneficiary Committee and by the acceptance of the position by the successor trustee in accordance with Section 3.6 or (ii) an order of the Court after an opportunity for a hearing (*provided, however,* that only the Plan Trust Beneficiary Committee shall have standing to seek such an order). If a successor trustee is appointed by resolution, as

provided in clause (i) of the preceding sentence, and such appointment is accepted by the successor trustee, the Plan Trust Beneficiary Committee shall file notice of such appointment and acceptance with the Court, which notice will include the name, address, and telephone number of the successor trustee; provided that the filing of such notice shall not be a condition precedent to the vesting in the successor trustee of all the estates, properties, rights, powers, trusts, and duties of its predecessor.

(f) Immediately upon the acceptance of appointment by any successor trustee, all rights, powers, duties, authority, and privileges of the predecessor Plan Trustee hereunder will be vested in and undertaken by the successor trustee without any further act; and the successor trustee will not be liable personally for any act or omission of the predecessor Plan Trustee.

(g) Upon the appointment of a successor trustee, the predecessor Plan Trustee (or the duly appointed legal representative of a deceased Plan Trustee) shall, if applicable, when requested in writing by the successor trustee, execute and deliver an instrument or instruments conveying and transferring to such successor trustee upon the trust herein expressed, all the estates, properties, rights, powers and trusts of such predecessor Plan Trustee, and shall duly assign, transfer, and deliver to such successor trustee all property and money held hereunder, and all other assets and documents relating to the Plan Trust, the Trust Assets, or the Plan Trust Interests then in its possession and held hereunder.

(h) During any period in which there is a vacancy in the position of Plan Trustee, the Plan Trust Beneficiary Committee shall appoint one of its members to serve as interim Plan Trustee (the "Interim Trustee"). The Interim Trustee shall be subject to all the terms and conditions applicable to a Plan Trustee hereunder. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a member of the Plan Trust Beneficiary Committee merely by its appointment as Interim Trustee. The Plan Trust Beneficiary Committee may, but shall not be required to, file a notice with the Court of the type required in Section 3.5(e) of the appointment of an Interim Trustee.

2.6 Acceptance of Appointment by Successor Plan Trustee. Any successor trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all the obligations of the predecessor Plan Trustee hereunder and thereupon the successor trustee

shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of its predecessor in the Plan Trust hereunder with like effect as if originally named herein.

2.7 Meetings of the Plan Trustee and the Plan Trust Beneficiary Committee. Meetings of the Plan Trustee and the Plan Trust Beneficiary Committee are to be held whenever, wherever and however, in person or by electronic means, the Plan Trustee and the Plan Trust Beneficiary Committee may determine in their reasonable discretion.

2.8 Notice of and Waiver of Notice for Plan Trustee and Plan Trust Beneficiary Committee Meetings. Regular meetings may be called from time to time by the Plan Trustee. Special meetings may be called by the Plan Trustee or on request by any member of the Plan Trust Beneficiary Committee. Notice of the time and place (but not necessarily the purpose or all of the purposes) of any meeting will be given by or on behalf of the Plan Trustee to the members of the Plan Trust Beneficiary Committee via electronic transmission. Notice to the Plan Trustee and the members of the Plan Trust Beneficiary Committee of any special meeting will be deemed given sufficiently in advance when given by electronic transmission on a business day at least twenty-four (24) hours prior to the convening of the meeting to the Plan Trustee and the members of the Plan Trust Beneficiary Committee The Plan Trustee and any member of the Plan Trust Beneficiary Committee may waive notice of any meeting and any adjournment thereof at any time before, during, or after it is held, as provided by law. Except as provided in the next sentence below, the waiver must be in writing, signed by the Plan Trustee or the applicable member or members of the Plan Trust Beneficiary Committee entitled to the notice, and filed with the minutes or records of the Plan Trust. The attendance of the Plan Trustee or a member of the Plan Trust Beneficiary Committee at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting and objects at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened.

2.9 Manner of Acting. The Plan Trustee or any member of the Plan Trust Beneficiary Committee may participate in a meeting by, or conduct the meeting through the use of, any form of communications by means of which all persons participating in the meeting may hear and address each other simultaneously, in which case any required notice of such meeting may

generally describe the arrangements (rather than or in addition to the place) for the holding thereof. The Plan Trustee or any member of the Plan Trust Beneficiary Committee participating in a meeting by this means is deemed to be present in person at the meeting.

2.10 Role of the Plan Trustee. In furtherance of and consistent with the purpose of the Plan Trust and the Plan, the Plan Trustee, subject to the terms and conditions contained herein and in the Plan and subject to the direction of the Plan Trust Beneficiary Committee, shall have the power to perform the functions and take the actions provided or permitted in the Plan or in this Trust Agreement. In all circumstances, the Plan Trustee shall, subject to the direction of the Plan Trust Beneficiary Committee act in the best interests of all the Plan Trust Beneficiaries of the Plan Trust and in furtherance of the purpose of the Plan Trust.

2.11 Authority of the Plan Trustee. The Plan Trustee shall report all material matters to the Plan Trust Beneficiary Committee. Subject to the supervision of the Plan Trust Beneficiary Committee and to any limitations contained herein (including, without limitation, Section 3.12 hereof) or in the Plan, the Plan Trustee shall have the power and authority to:

(a) receive, manage, invest, supervise, and protect the Trust Assets, hold legal title to any and all rights of the holders of Plan Trust Interests in or arising from the Trust Assets, including, without limitation, collecting and receiving any and all money and other property belonging to the Plan Trust;

(b) pay taxes or other obligations incurred by the Trust;

(c) retain and pay such counsel and other professionals and/or advisors, including tax advisors (including, without limitation, any professionals previously retained by the Committee or the Debtor), as the Plan Trustee shall select in its reasonable discretion to assist the Plan Trustee in its duties (including, without limitation, the administration, prosecution and distribution of Trust Assets), on such terms as the Plan Trustee deem reasonable and appropriate, without Court approval. The Plan Trustee may commit the Plan Trust to and shall pay such counsel and other professionals' reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred;

(d) calculate and implement distributions of Trust Assets and the proceeds thereof pursuant to the terms of the Plan and the Plan Trust Agreement;

(e) prosecute, compromise, and settle, in accordance with the specific terms of the Plan Trust Agreement, all Claims against the Debtor and all Claims and Causes of Action vested in or otherwise transferred to the Plan Trust, and all objections related thereto;

(f) investigate, reconcile and resolve asserted Claims and determine which Claims to dispute;

(g) perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Code, including, without limitation, commencing, prosecuting or settling causes of action, enforcing contracts or asserting claims, defenses, offsets and privileges;

(h) protect and enforce the rights to the Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(i) obtain reasonable insurance coverage with respect to the liabilities and obligations of the Plan Trustee and the Plan Trust Beneficiary Committee under this Trust Agreement (in the form of an errors and omissions policy or otherwise);

(j) obtain insurance coverage with respect to real and personal property that may become Assets of the Plan Trust, if any;

(k) cause such reviews and/or audits of the financial books and records of the Plan Trust and other required professionals, as may be required by the SEC and applicable securities laws and as may be reasonable and appropriate in the Plan Trustee's discretion to be performed and to prepare and file any tax returns, informational returns, or periodic or current reports as required by applicable securities laws, for the Plan Trust as may be required;

(l) commit the Plan Trust to indemnify the Plan Trustee's counsel and other professionals and/or advisors (including, without limitation, tax advisors and any professionals previously retained by the Committee or the Debtor) in connection with the performance of services; *provided, however,* that such indemnity shall not cover any losses, costs, damages,

expenses or liabilities that result from the recklessness, gross negligence, willful misconduct, breach of fiduciary duty or knowing violation of law by such party;

(m) compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, all Causes of Action or Ownership Disputes in favor of or against the Plan Trust;

(n) invest any moneys held as part of the Plan Trust in accordance with the terms of Section 3.18 hereof, limited, however, to such investments that are consistent with the Plan Trust's status as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc 94-45, 1994-2 C.B. 684;

(o) appear on behalf of the Plan Trust or the Plan Trust Beneficiaries in any proceeding that may directly or indirectly affect the Trust Assets or their value or the recovery of Plan Trust Beneficiaries;

(p) request any appropriate tax determination with respect to the Plan Trust, including, without limitation, a determination pursuant to Section 505 of the Code;

(q) establish and maintain a website for the purpose of providing notice of Plan Trust activities in lieu of providing written notice to holders of Plan Trust Interests, subject to providing notice of such website to such holders; and

(r) take or refrain from taking any and all other actions that the Plan Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Trust Assets, the protection of the interests of the Plan Trust Beneficiaries, or to carry out the purposes hereof. In furtherance of the power and authority granted to the Plan Trustee in this Section 3.11(r) and elsewhere in this Trust Agreement, in accordance with clause (i) of Section 10.1(a), but otherwise notwithstanding any other provision of this Trust Agreement, except Section 3.12, and for the avoidance of doubt, the Grantor and each Person that acquires any interest in the Plan Trust, by virtue of the Confirmation Order, acknowledge and agree that:

(i) in accordance with Section 1.3(a), the Plan Trustee shall establish and fund such separate Trust Accounts as it determines to be necessary or desirable to carry out the purposes of the Plan Trust in accordance with the Plan and Treasury Regulations Section 301.7701-4(d), including the Disputed Claims Reserve, which shall be funded with no less than an amount sufficient to pay each holder of a Disputed Claim the amount such holder would have been entitled to receive if such Disputed Claim had been allowed in full as of the Effective Date (or such other amount as the Bankruptcy Court may determine). During the term of the Plan Trust, the Plan Trustee, in his discretion, shall (x) transfer Trust Assets between or among the Trust Accounts, and (xi) deposit any additional Trust Assets and/or the proceeds of any Trust Assets to and among the Trust Accounts, in each case as he determines to be necessary or desirable to carry out the purposes of the Plan Trust in accordance with the Plan and Treasury Regulations Section 301.7701-4(d);

(ii) Plan Trust Interests will be issued by the Plan Trust solely to Persons who are determined to hold Allowed Claims, in proportion to the aggregate amount of all such Allowed Claims as ultimately determined by the Plan Trustee;

(iii) Distributions of Trust Assets to holders of Plan Trust Interests (which, for the avoidance of doubt, excludes Persons who hold Disputed Claims) will be made in proportion to the aggregate amount of their respective Allowed Claims, but in no event in an aggregate amount greater than the aggregate amount of their respective Allowed Claims as of the Effective Date, together with such additional interest or income thereon as the Plan Trustee determines is properly payable in accordance with the purposes of the Plan and the requirements of Treasury Regulations Section 301.7701-4(d);

(iv) Persons who hold Disputed Claims on the Effective Date will not be issued Plan Trust Interests either on the Effective Date or thereafter, if their Disputed Claims become Allowed Claims; instead, such Persons will receive distributions Pro Rata from the Disputed Claims Reserve to the extent their Disputed Claims become Allowed Claims, or as otherwise adjusted by the Plan Trustee to the extent he determines necessary to carry out the purposes of the Plan Trust, but in no event in an aggregate

amount greater than the aggregate amount of their respective Disputed Claims on the Effective Date, together with such additional interest or income thereon as the Plan Trustee determines is properly payable in accordance with the Plan and Treasury Regulations Section 301.7701-4(d); and

(v) the Plan Trustee shall have the power and authority to construe and apply the terms and provisions of the Plan and this Trust Agreement, and to amend this Trust Agreement, as he determines to be necessary, desirable or equitable to carry out the purposes of the Plan Trust as he reasonably understands and interprets such purposes in accordance with the Plan and Treasury Regulations Section 301.7701-4(d).

2.12 Limitation on the Plan Trustee's Authority. Notwithstanding anything herein to the contrary, the Plan Trustee may not, without the approval of the Plan Trust Beneficiary Committee, (i) settle a Cause of Action where the amount in controversy exceeds $500,000, unless the Plan Trustee settles any such Cause of Action for at least 80% of the amount sought to be recovered; (ii) resolve any Disputed Claim where the disputed portion exceeds $500,000, unless the Plan Trustee settles any such Disputed Claim by obtaining a reduction of at least 50% of the disputed portion thereof; (iii) retain any counsel and other professionals and/or advisors, including tax advisors (including, without limitation, any professionals previously retained by the Committee or the Debtor) whose fees and expenses are expected to exceed $100,000; (iv) at any time, on behalf of the Plan Trust or the Plan Trust Beneficiaries, operate as a business entity within the meaning of Treasury Regulations Section 301.7701-2, or engage in any trade or business as proscribed by Treasury Regulations Section 301.7701-4(d), and the Plan Trustee will not use or dispose of any part of the Trust Assets in furtherance of any trade or business; (v) take actions inconsistent with the orderly liquidation of the Assets of the Plan Trust as are required or contemplated by applicable law, the Plan and this Trust Agreement; or (vi) engage in any investments or activities inconsistent with the treatment of the Plan Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

2.13 Books and Records.

(a) The Plan Trustee shall maintain books and records relating to the assets of the Plan Trust and income of the Plan Trust and the payment of expenses of, and liabilities for claims against or assumed by, the Plan Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting and securities law requirements of the Plan Trust. Nothing in this Trust Agreement requires that the Plan Trustee file any accounting or seek approval of any court with respect to the administration of the Plan Trust, or as a condition for managing any payment or distribution out of the assets of the Plan Trust.

2.14 Inquiries into the Plan Trustee's Authority. Except as otherwise set forth in the Trust Agreement or in the Plan, no Person dealing with the Plan Trust shall be obligated to inquire into the authority of the Plan Trustee in connection with the protection, conservation or disposition of the Trust Assets.

2.15 Compliance with Laws. Any and all distributions of assets of the Plan Trust shall be in compliance with applicable laws, including, without limitation, applicable federal and state securities laws.

2.16 Compensation of the Plan Trustee. Notwithstanding anything to the contrary contained herein, the Plan Trustee shall be compensated for its services hereunder on the terms and conditions set forth in the separate written engagement agreement between the Plan Trust and the Plan Trustee effective as of today, and as approved by the Plan Trust Beneficiary Committee. Additionally, all reasonable and documented out-of-pocket expenses incurred by the Plan Trustee in connection with the performance of its duties hereunder shall be reimbursed by the Trust upon demand for payment thereof.

2.17 Reliance by the Plan Trustee. Except as otherwise provided herein:

(a) the Plan Trustee may rely, and shall be protected in acting upon, (i) any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Plan Trustee to be genuine and to have been signed or

presented by the proper party or parties, (ii) any direction by the Plan Trust Beneficiary Committee or (iii) the Debtor's filed schedules and statements of financial affairs and all other information filed by the Debtor or provided by the Debtor or its representatives to the Plan Trust concerning Claims filed against the Debtor, and its reconciliation and documents supporting such reconciliation; and

(b) Persons dealing with the Plan Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Plan Trustee to such Person in carrying out the terms of this Trust Agreement, and neither the Plan Trustee nor any member of the Plan Trust Beneficiary Committee shall have any personal obligation to satisfy any such liability.

2.18 Investment and Safekeeping of Trust Assets. The Plan Trustee shall invest all Assets transferred to the Plan Trust, all Remaining Cash, proceeds from Causes of Action, the Disputed Claims Reserve and all income earned by the Plan Trust (pending periodic distributions in accordance with the provisions of the Plan and this Trust Agreement) only in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills, *provided, however,* that (i) the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise, (ii) the Plan Trustee may retain any proceeds from Causes of Action received that are not Cash in the form received only for so long as may be required for the prompt and orderly liquidation of such assets in Cash; and (iii) under no circumstances shall the Plan Trustee segregate the assets of the Plan Trust on the basis of classification of the holders of Plan Trust Interests, other than with respect to distributions to be made on account of Disputed Claims in accordance with the provisions of the Plan.

2.19 Standard of Care; Exculpation. Neither the Plan Trustee nor any of its duly designated agents or representatives or professionals shall be liable for any act or omission taken or omitted to be taken by the Plan Trustee in good faith, other than acts or omissions resulting from the Plan Trustee's own gross negligence, recklessness, willful misconduct, breach of

fiduciary duty or knowing violation of law. The Plan Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Plan Trustee shall be under no obligation to consult with its attorneys, accountants, financial advisors or agents, and its good-faith determination not to do so shall not result in the imposition of liability on the Plan Trustee, unless such determination is based on gross negligence, recklessness, willful misconduct, breach of fiduciary duty or knowing violation of law.

## ARTICLE 3

## PLAN TRUST BENEFICIARY COMMITTEE

3.1 Plan Trust Beneficiary Committee. The Plan Trust Beneficiary Committee shall be comprised of all Persons who were members the Members Committee and who agree to serve on the Plan Trust Beneficiary Committee. The Committee may also include one *ex officio* representative of the State regulators, as described in the Plan.

3.2 Authority of the Plan Trust Beneficiary Committee.

(a) The Plan Trust Beneficiary Committee shall have the authority and responsibility to review the activities and performance of the Plan Trustee, to consult with the Plan Trustee, and to approve in advance the acts of the Plan Trustee where such approval is specifically required herein. The Plan Trust Beneficiary Committee shall have the authority to remove the Plan Trustee in accordance with Section 3.5(c) . The Plan Trustee shall consult with and provide information to the Plan Trust Beneficiary Committee in accordance with and pursuant to the terms of this Trust Agreement and the Plan. The Plan Trust shall reimburse such Persons for their reasonable and documented out-of-pocket costs and expenses consistent with the terms of this Trust Agreement. The Plan Trust Beneficiary Committee may consult with the same counsel and financial advisor as the Plan Trustee has engaged. This Trust Agreement is not intended to create a fiduciary duty, and neither the Plan Trust Beneficiary Committee nor any of its members shall be deemed to be or be treated in any way as fiduciaries of the Plan Trust Beneficiaries.

(b) The Plan Trust Beneficiary Committee may elect to abandon any asset or claim included among the Trust Assets. Upon any such election, such claims shall cease to be Trust Assets.

3.3 Meetings of the Plan Trust Beneficiary Committee. Meetings of the Plan Trust Beneficiary Committee are to be held whenever, wherever and however the members may determine in their reasonable discretion.

3.4 Manner of Acting.

(a) A majority of the total number of members of the Plan Trust Beneficiary Committee then in office shall constitute a quorum for the transaction of business at any meeting of the Plan Trust Beneficiary Committee; *provided, however,* that the Plan Trust Beneficiary Committee may, by the majority vote of its members, designate a single member of the Plan Trust Beneficiary Committee to exercise all power of the Plan Trust Beneficiary Committee in respect of any particular matter in the absence of a quorum or in exigent circumstances when a meeting of all members cannot be timely convened. The affirmative vote of a majority of the members of the Plan Trust Beneficiary Committee present and entitled to vote at a meeting at which a quorum is present shall be the act of the Plan Trust Beneficiary Committee except as otherwise required by law or as provided in this Trust Agreement. Any or all of the members of the Plan Trust Beneficiary Committee may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any member of the Plan Trust Beneficiary Committee participating in a meeting by this means is deemed to be present in person at the meeting.

(b) Any member of the Plan Trust Beneficiary Committee who is present and entitled to vote at a meeting of the Plan Trust Beneficiary Committee when action is taken is deemed to have assented to the action taken unless: (i) such member of the Plan Trust Beneficiary Committee objects at the beginning of the meeting (or promptly upon his/her arrival) to holding it or transacting business at the meeting; (ii) his/her dissent or abstention from the

action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice of his/her dissent or abstention to the Plan Trust Beneficiary Committee before its adjournment. The right of dissent or abstention is not available to any member of the Plan Trust Beneficiary Committee who votes in favor of the action taken.

(c) Before voting on any matter or issue or taking any action with respect to any matter or issue, each member of the Plan Trust Beneficiary Committee shall report to the Plan Trust Beneficiary Committee any conflict of interest such member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue). A member who has or who may have a conflict of interest shall be deemed to be a "conflicted member" who shall not be entitled to vote or take part in any action with respect to such matter or issue (such member shall be counted to determine the existence of a quorum, however); and the vote or action with respect to such matter or issue shall be undertaken only by members of the Plan Trust Beneficiary Committee who are not "conflicted members."

3.5 Plan Trust Beneficiary Committee's Action Without a Meeting. Any action required or permitted to be taken by the Plan Trust Beneficiary Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Plan Trust Beneficiary Committee as evidenced by one or more written consents describing the action taken, signed by all members of the Plan Trust Beneficiary Committee and filed with the minutes or proceedings of the Plan Trust Beneficiary Committee.

3.6 Tenure, Removal, and Replacement of the Members of the Plan Trust Beneficiary Committee. The authority of the members of the Plan Trust Beneficiary Committee will be effective as of the date hereof and will remain and continue in full force and effect until the Plan Trust is terminated in accordance with Section 9.1 hereof. The service of the members of the Plan Trust Beneficiary Committee will be subject to the following:

(a) The members of the Plan Trust Beneficiary Committee will serve until death or until resignation pursuant to subsection (b) below, or removal pursuant to subsection (c) below, or upon the winding up of the Plan Trust.

(b) A member of the Plan Trust Beneficiary Committee may resign upon thirty (30) days written notice to the Plan Trustee and to the remaining members of the Plan Trust Beneficiary Committee.

(c) A member of the Plan Trust Beneficiary Committee may be removed by order of the Court obtained by any member of the Plan Trust Beneficiary Committee or by the unanimous resolution of the other members of the Plan Trust Beneficiary Committee, a copy of which shall be delivered to the removed Plan Trust Beneficiary Committee member; *provided, however,* that such removal may only be made for cause. For purposes of this Section 4.6(c), "Cause" shall be defined as: (i) such Plan Trust Beneficiary Committee member's theft or embezzlement or attempted theft or embezzlement of money or tangible or intangible assets or property; (ii) such Plan Trust Beneficiary Committee member's violation of any law (whether foreign or domestic), which results in a felony indictment or similar judicial proceeding; (iii) such Plan Trust Beneficiary Committee member's recklessness, gross negligence, willful misconduct, breach of fiduciary duty or knowing violation of law, in the performance of his or her duties; or (iv) such Plan Trust Beneficiary Committee member's failure to perform any of his or her other material duties under this Agreement; *provided, however,* that such Plan Trust Beneficiary Committee member shall have been given a reasonable period to cure any alleged Cause under clauses (iii) (other than willful misconduct or knowing violation of law) or (iv).

(d) In the event of a vacancy in the Plan Trust Beneficiary Committee (whether by removal, death or resignation), a new member may be appointed to fill such position by a majority of the remaining members of the Plan Trust Beneficiary Committee or the Court. If there are no remaining members of the Plan Trust Beneficiary Committee to fill such vacancies, appointments shall be made upon an order entered after an opportunity for a hearing by the Court, upon motion of the Plan Trustee. The appointment of a successor member of the Plan Trust Beneficiary Committee will be evidenced by the filing with the Court of a notice of appointment, which notice will include the name, address, and telephone number of the successor member of the Plan Trust Beneficiary Committee.

(e) Immediately upon the appointment of any successor member of the Plan Trust Beneficiary Committee, all rights, powers, duties, authority, and privileges of the predecessor

member of the Plan Trust Beneficiary Committee hereunder will be vested in and undertaken by the successor member of the Plan Trust Beneficiary Committee without any further act; and the successor member of the Plan Trust Beneficiary Committee will not be liable personally for any act or omission of the predecessor member of the Plan Trust Beneficiary Committee.

3.7 Compensation of the Plan Trust Beneficiary Committee. Except for the reimbursement of reasonable actual costs and expenses incurred in connection with their duties as members of the Plan Trust Beneficiary Committee, the members of the Plan Trust Beneficiary Committee shall serve without compensation. Reasonable expenses incurred by members may be paid by the Plan Trust without the need for Court approval.

3.8 Standard of Care; Exculpation. None of the Plan Trust Beneficiary Committee, its members, designees or professionals, or any of their duly designated agents or representatives, shall be liable for the act or omission of any other member, agent or representative of the Plan Trust Beneficiary Committee, nor shall the Plan Trust Beneficiary Committee or any of its members be liable for any act or omission taken or omitted to be taken by the Plan Trust Beneficiary Committee in good faith, other than acts or omissions resulting from the Plan Trust Beneficiary Committee's own gross negligence, recklessness, willful misconduct, breach of fiduciary duty or knowing violation of law. The Plan Trust Beneficiary Committee and each of its members may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, neither the Plan Trust Beneficiary Committee nor any of its members shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and its good faith determination not to do so shall not result in the imposition of liability on the Plan Trust Beneficiary Committee or, as applicable, its members or designees, unless such determination is based on gross negligence, recklessness, willful misconduct, breach of fiduciary duty or knowing violation of law.

## ARTICLE 4

## TAX MATTERS

4.1 Federal Income Tax Returns and Payments.

(a) General. The Plan Trustee will be responsible for filing all foreign, U.S. federal, state and local tax returns for the Plan Trust and the Estate, to the extent necessary, and for the timely preparation and distribution to the Plan Trust Beneficiaries of any necessary foreign, U.S. federal, state or local information returns. Notwithstanding anything to the contrary in this Trust Agreement, the Plan Trustee will not be obligated to deliver any such information returns to holders of Disputed Claims in their capacity as such.

(b) Grantor Trust Accounts. Except as otherwise provided in Section 5.1(c) or applicable law with respect to Trust Accounts that are not, and that portion of the Plan Trust that is not, a disputed ownership fund within the meaning of Treasury Regulations Section 1.468B-9(b)(1) (collectively, the "Grantor Trust Accounts"), the Plan Trustee will timely file tax returns for the Grantor Trust Accounts as a grantor trust and/or a liquidating trust under Treasury Regulations Section 1.671-4(a) and/or Treasury Regulations Section 301.7701-4(d) and related regulations. Pursuant to such provisions, for federal income tax purposes the Plan Trustee of such Plan Trust will allocate to holders of Plan Trust Interests entitled to receive payments from the Grantor Trust Accounts of such Plan Trust, their Pro Rata shares of any income or loss of such Grantor Trust Accounts, and such Plan Trust Interest holders will be subject to tax on the Grantor Trust Accounts' taxable income on a current basis.

(c) Disputed Ownership Funds. With respect to the Trust Accounts that are, and any portion of the Plan Trust that constitutes, a disputed ownership fund within the meaning of Treasury Regulations Section 1.468B-9(b)(1), the Plan Trustee will timely (i) file such income tax and other returns and statements as are required to comply with (x) the applicable provisions of the Internal Revenue Code and the Treasury Regulations promulgated thereunder, including the requirements set forth in Treasury Regulations Section 1.468B-9(c), and (y) any applicable state and local law and the regulations promulgated thereunder, and (ii) pay from the applicable Trust Account any taxes reported as owing on such returns and statements.

(d) As soon as possible after the date hereof, but in no event later than one-hundred twenty (120) days thereafter, (i) the Plan Trustee shall determine the value of any assets in the Plan Trust, based on the good-faith determination of the Plan Trustee with advice of any qualified professional who may be retained to do so if necessary and (ii) with the advice and consent of the Plan Trust Beneficiary Committee, the Plan Trustee shall apprise the Plan Trust Beneficiaries in writing of such valuation. The valuation shall be used consistently by all parties (including the Grantor, the Plan Trustee and the holders of Plan Trust Interests) for all federal income tax purposes, including, for the avoidance of doubt, all applicable federal income tax reporting requirements. The Plan Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Plan Trust that are required by any governmental unit and pay taxes, if any, properly payable by the Plan Trust.

(e) The Plan Trustee may request an expedited determination of taxes of the Plan Trust under Section 505(b) of the Code for all returns filed for, or on behalf of, the Plan Trust for all taxable periods through the dissolution of the Plan Trust.

4.2 <u>Withholding; Apportionment</u>.

(a) To the extent applicable, the Plan Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all allocations of income or gain and distributions pursuant to the Plan and/or this Trust Agreement will be subject to such withholding and reporting requirements. The Plan Trustee will be authorized to take any actions that it determines to be necessary, appropriate or desirable to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan or this Trust Agreement, each entity receiving an allocation of income or gain or a distribution of cash pursuant to the Plan or this Trust Agreement will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such allocations and distributions, including income, withholding and other tax obligations.

(b) The Plan Trustee shall be entitled to deduct any foreign, federal, state and local taxes from any payments to be made to Plan Trust Beneficiaries, as appropriate, and shall otherwise comply with section 346 of the Code.

(c) With regard to Permitted Transfers of Plan Trust Interests in accordance with Section 2.3 herein, the Plan Trustee shall promptly establish a standard convention for allocating and apportioning taxable income and loss between a transferor and its transferee and shall not be required to so allocate and apportion based on the actual Plan Trust activities prior and subsequent to the date of any Permitted Transfer. The Plan Trustee shall notify the holders of Plan Trust Interest of the convention adopted promptly after such adoption. The Plan Trustee shall use its discretion to establish a fair and equitable convention to apply and may, but is not required to, adopt a monthly, quarterly or similar record date convention.

## ARTICLE 5

## DISTRIBUTIONS

5.1 Annual Distribution; Withholding. The Plan Trustee shall distribute *pro rata* as required by law any minimum threshold as may be or become applicable for annual distributions to the holders of Plan Trust Interests, and to the holders of any other Allowed Claims, the net income of the Plan Trust (net of any payment of or provisions for taxes), plus all net proceeds from the sale or liquidation of Trust Assets; *provided, however,* that the Plan Trustee may cause the Plan Trust to retain such amounts (i) as are reasonably necessary to meet contingent liabilities (including Disputed Claims) and to maintain the value of the assets of the Plan Trust during liquidation, (ii) to pay reasonable administrative expenses (including the costs and expenses of the Plan Trustee and the Plan Trust Beneficiary Committee and the fees, costs and expenses of all professionals retained by any of them or their members, as the case may be, and any taxes imposed on the Plan Trust or in respect of the Trust Assets), (iii) to satisfy other liabilities incurred or assumed by the Plan Trust (or to which the Trust Assets are otherwise subject) in accordance with the Plan or this Trust Agreement, and (iv) to establish any necessary reserve or Funding Amount. All distributions to the holders of Plan Trust Interests and to holders of Allowed Claims which were Disputed Claims on the Effective Date shall be Pro Rata. Pursuant to Section 5.2, the Plan Trustee may withhold from amounts distributable to any Person any and all amounts determined in the Plan Trustee's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement. As provided in the Plan, Plan Trust Beneficiaries shall, as a condition to receiving distributions, provide such information and take such steps as the Plan Trustee may reasonably require to ensure compliance

with withholding and reporting requirements and to enable the Plan Trustee to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

5.2 Manner of Payment or Distribution. All distributions made by the Plan Trustee to Plan Trust Beneficiaries shall be payable to the holders of Plan Trust Interests of record, or the holders of Disputed Claims of record which have become allowed, as of the 20th day prior to the date scheduled for the distribution, unless such day is not a Business Day; then such day shall be the next Business Day. If the distribution shall be in Cash, the Plan Trustee shall distribute such Cash by wire, check, or such other method as the Plan Trustee deems appropriate under the circumstances.

5.3 Delivery of Plan Trust Distributions. All distributions under this Trust Agreement to any Plan Trust Beneficiary shall be made at the address of such holder as set forth in the Register or at such other address as such holder of a Plan Trust Interest or an Allowed Claim shall have specified in writing to the Plan Trustee at least fifteen (15) days prior to such distribution date. In the event that any distribution to any holder is returned as undeliverable, the Plan Trustee shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Plan Trustee has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however,* that such undeliverable or unclaimed distributions shall be deemed Unclaimed Property at the expiration of 180 days from the date of distribution. The Plan Trustee shall reallocate any undeliverable or unclaimed distributions for the benefit of holders of all other Allowed Claims and reserve for Disputed Claims.

5.4 Cash Distributions. No Cash distributions shall be made if in an amount less than $25.00. Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent distributions. Notwithstanding the foregoing, all cash shall be distributed in the final distribution of the Plan Trust.

## ARTICLE 6

## CLAIMS RESOLUTION PROCESS

The Plan Trustee shall object to any claims by the Claims Objection Deadline. The Trustee may obtain an extension of the Claims Objection Deadline from the Bankruptcy Court. By not later than thirty (30) days after receipt of the Trustee's Claims Objection, Holders of Disputed Claims may dispute the decision of the Plan Trustee. The following steps may be taken to dispute the decision of the Plan Trustee as to the Allowed Amount of a Claim or whether a Claim is Allowed. At the option of the Holder of Disputed Claims, the Holder may pursue either:

(a) **Request for Reconsideration to the Plan Trustee**. The Holder may request in writing, by no later than thirty (30) days after service with the Plan Trustee's objection, that the Trustee reconsider the objection. The Holder must submit any additional evidence, documentation, or other materials to the Plan Trustee to support the request for reconsideration. The Plan Trustee shall issue a written decision documenting the outcome of the request for reconsideration.

(b) **Appeal to the Plan Trust Beneficiary Committee**. If the request for reconsideration is denied, the Holder may appeal the denial to the Plan Trust Beneficiary Committee, in writing by no later than thirty (30) days after service with the Plan Trustee's denial of reconsideration. The Holder must submit any additional evidence, documentation, or other materials to the counsel for the Plan Trust Beneficiary Committee to support the appeal. The Plan Trustee will provide the Plan Trust Beneficiary Committee with a written response to the appeal, and the evidence and materials in support of their determination. The appeal will be decided based upon the papers submitted. The Plan Trust Beneficiary Committee shall issue a written decision to the Holder and the Trustee.

(c) **Non-binding Arbitration**. If the Appeal to the Plan Trust Beneficiary Committee is denied, the Holder may seek non-binding arbitration at the expense of the Liquidating Trust. Voluntary arbitration shall be before (ret.) Judge George Finkle of Judicial Dispute Resolution in Seattle, Washington. The Holder must request arbitration, in writing by no later than thirty (30) days after service with the Plan Trust Beneficiary Committee's written decision. If Judge Finkle

is unavailable, the Holder and the Trustee shall identify another mutually agreeable arbitrator. If the Holder and the Trustee cannot reach agreement on a another mutually agreeable arbitrator, the Bankruptcy Court may select another arbitrator from the Judicial Dispute Resolution roster. The type, manner and timing of the arbitration (in-person, by phone or video conference, or on the parties' written submissions), shall be determined by the arbitrator. The arbitrator shall issue a written decision on the arbitration to the Holder and the Trustee.

(d) **Judicial review by the Bankruptcy Court.** If the Holder's appeal is denied by the arbitrator, they may seek binding judicial review by the Bankruptcy Court. An appeal to the Bankruptcy Court must be filed within thirty (30) days of service of the arbitration decision on the Holder. A Holder may only appeal to the Bankruptcy Court after participating in non-binding arbitration.

(e) **Class 5 Claims Exempt from Claims Resolution Process**. Notwithstanding the foregoing, review of objections to Class 5 claims shall be only by the Bankruptcy Court.

(f) **Materiality.** Not withstanding any other provision of this Trust Agreement, at any time during the Claims Resolution Process, the Plan Trustee has the discretion resolve or settle disputes involving objections up to $500,000.00. Any proposed resolution or settlement of an objection to a claim of over $500,000.00 must be reviewed by the Plan Trust Beneficiary Committee.

## ARTICLE 7

## INDEMNIFICATION

7.1 Indemnification of the Plan Trustee and the Plan Trust Beneficiary Committee.

(a) To the fullest extent permitted by law, the Plan Trust, to the extent of its assets legally available for that purpose, shall indemnify and hold harmless the Plan Trustee and each of the members of the Plan Trust Beneficiary Committee and each of their respective directors, members, shareholders, partners, officers, agents, employees, attorneys and other professionals (collectively, the "Indemnified Persons") from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including, without limitation, fees and expenses of attorneys and other advisors and any court costs incurred by any Indemnified

Person) or liability by reason of anything any Indemnified Person did, does or refrains from doing for the business or affairs of the Plan Trust, except to the extent that the loss, cost, damage, expense or liability resulted primarily from the Indemnified Person's recklessness, gross negligence, willful misconduct, breach of fiduciary duty or knowing violation of law. To the extent reasonable, the Plan Trust will pay in advance or reimburse reasonable and documented out-of-pocket expenses (including advancing reasonable costs of defense) incurred by the Indemnified Person who is or is threatened to be named or made a defendant or a respondent in a proceeding concerning the business and affairs of the Plan Trust.

(b) Any Indemnified Person may waive the benefits of indemnification under this Section 7.1, but only by an instrument in writing executed by such Indemnified Person.

(c) The rights to indemnification under this Section 7.1 are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including, without limitation, common law rights to indemnification or contribution. Nothing in this Section 7.1 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party.

## ARTICLE 8

## REPORTS TO PLAN TRUST BENEFICIARIES

8.1 Quarterly Reports.

(a) The Plan Trustee shall cause to be prepared as soon as practicable after the end of each quarter, financial statements of the Plan Trust as of the end of and for such periods, prepared in accordance with generally accepted accounting principles, including (i) a balance sheet of the Plan Trust, (ii) a statement of receipts, disbursements and distributions, (iii) a statement of profit and loss, (iv) a schedule summarizing by type investments and assets, indicating acquisitions and dispositions, and (v) a summary listing of the status of the resolution of Disputed Claims. In addition, such financial statements shall contain the following supplementary information: (vi) a statement of per unit Plan Trust Interest data consisting of net investment income, income distributed, net realized gains or losses and increases or decreases in unrealized appreciation, net increases or decreases in net asset values, net asset values and the

Plan Trust Interests outstanding as of the beginning and end of the period, (vii) a statement of changes in the number of Plan Trust Interests outstanding, including distributions and cancellations from whatever source, and (viii) a schedule of expenses, including accrued and paid expenses relating to the administration of the Plan Trust.

(b) Within 45 Business Days after the end of the relevant report preparation period in which the Trust is in existence, the Plan Trustee shall cause any information listed in Section 9.1(a) to be sent by electronic means to such holders, to the extent the Plan Trustee possesses the electronic addresses for each holder, posted on the Plan Trust's website and filed with the Court.

(c) The Plan Trustee may post any report required to be provided under this Section 9.1 on a website maintained by the Plan Trustee in lieu of actual notice to the Plan Trust Beneficiaries (unless otherwise required by law) subject to providing notice to the Persons listed in Section 2.1 herein.

## ARTICLE 9

## TERMINATION OF THE LIQUIDATION TRUST

9.1 Winding Up/Termination of the Plan Trust.

(a) After (i) the Plan Trust has been fully administered, (ii) all Disputed Claims have been resolved, (iii) all Causes of Action have been resolved, and (iv) all Trust Assets have been reduced to Cash or abandoned, the Plan Trustee shall make a final distribution of all Cash remaining in the Plan Trust to the Plan Trust Beneficiaries as set forth in Section 7.3 of the Plan, after reserving sufficient Cash to pay all unpaid expenses of the Plan Trust and all expenses reasonably expected to be incurred in connection with the final distribution.

(b) The Plan Trustee shall not unduly prolong the existence of the Plan Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Trust Assets, to make the distribution of Trust Assets to Plan Trust Beneficiaries in accordance with the terms hereof and to terminate the Plan Trust as soon as practicable. Without limiting the generality of the preceding sentence, the Plan Trust shall terminate at such time as (i) all of the Trust Assets have been reduced to Cash and all of such Cash has been distributed to Plan Trust

Beneficiaries in accordance with the terms of the Plan, and (ii) all distributions required to be made by the Plan Trustee under the Plan, the Confirmation Order and this Trust Agreement have been made, but in no event shall this Plan Trust be dissolved later than five (5) years from the Effective Date. Notwithstanding the foregoing, the Court upon motion by a party in interest on notice with an opportunity for a hearing at least six (6) months prior to the fifth anniversary of the Effective Date (or the end of any extended term approved by the Court) may extend, for a fixed period (not to exceed three (3) years, inclusive of any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Plan Trust as a liquidating trust for federal income tax purposes) the duration of the Plan Trust if the Court determines that such extension is necessary to facilitate the liquidation of the assets of the Plan Trust.

9.2 Continuance of Trust for Winding Up. After the termination of the Plan Trust and for the purpose of liquidating and winding up the affairs of the Plan Trust, the Plan Trustee shall continue to act as such until its duties have been fully performed. Prior to the final distribution of all of the remaining assets of the Plan Trust and upon approval of the Plan Trust Beneficiary Committee, the Plan Trustee shall be entitled to reserve from such assets any and all amounts required to provide for its own and the Plan Trust Beneficiary Committee's costs and expenses, in accordance with Sections 3.16 and 9.1(a) herein, until such time as the winding up of the Plan Trust is completed. Upon termination of the Plan Trust, the Plan Trustee shall retain for a period of two years the books, records, Plan Trust Beneficiary lists, Register, and certificates and other documents and files that have been delivered to or created by the Plan Trustee. At the Plan Trustee's discretion, all of such records and documents may, but need not, be destroyed two years after the completion and winding up of the affairs of the Plan Trust. Except as otherwise specifically provided herein, upon the termination of the Plan Trust, the Plan Trustee shall have no further duties or obligations hereunder.

## ARTICLE 10

## AMENDMENT AND WAIVER

10.1 Amendment and Waiver.

(a) The Plan Trustee may amend, supplement, or waive any provision of this Trust Agreement without notice to or the consent of any holder of Plan Trust Interests or an Allowed Claim or the approval of the Court for these purposes: (i) to cure any ambiguity, omission, defect or inconsistency in this Trust Agreement, provided that such amendments, supplements or waivers shall not adversely affect the distributions to be made under this Trust Agreement to any Plan Trust Beneficiary, adversely affect the U.S. federal income tax status of the Plan Trust as a "liquidating trust," or adversely affect the rights of the Committee under the Plan or this Trust Agreement; (ii) to comply with any requirements in connection with the U.S. federal income tax status of the Plan Trust as a "liquidating trust"; (iii) to comply with any requirements in connection with maintaining that the Plan Trust is not subject to registration or reporting requirements of the Exchange Act, or the Investment Company Act; and (iv) to evidence and provide for the acceptance of appointment hereunder by a successor trustee in accordance with the terms of this Trust Agreement and the Plan.

(b) Substantive amendments to this Trust Agreement – *i.e.*, those falling outside the scope of Section 10.1(a) above – may be made (or such provisions waived) by the Plan Trustee with the prior approval of the Plan Trust Beneficiary Committee or with the approval of the Court upon notice and an opportunity for a hearing; *provided, however,* that no change may be made to this Trust Agreement that would adversely affect the distributions to be made under this Trust Agreement to any holder of a Plan Trust Interest or an Allowed Claim, adversely affect the U.S. federal income tax status of the Plan Trust as a "liquidating trust" or adversely affect the rights of the Committee under the Plan or this Trust Agreement. Notwithstanding this Section 11.1, any amendments to this Trust Agreement shall not be inconsistent with the purpose and intention of the Plan Trust to liquidate in an expeditious but orderly manner the Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d).

## ARTICLE 11

## MISCELLANEOUS PROVISIONS

11.1 Intention of Parties to Establish the Plan Trust. This Trust Agreement is intended to create a liquidating trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Trust Agreement may be amended in accordance with Section 10.1 to comply with such federal income tax laws, which amendments may apply retroactively.

11.2 Prevailing Party. If the Plan Trustee, the Plan Trust Beneficiary Committee or the Plan Trust, as the case may be, is the prevailing party in a dispute with any Plan Trust Beneficiary or holder of a Plan Trust Interest regarding the provisions of this Trust Agreement or the enforcement thereof, such person shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action. To the extent that the Plan Trust has advanced such amounts, the Plan Trust may recover such amounts from the non-prevailing party.

11.3 Laws as to Construction. Except as otherwise provided hereby, this Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without reference to conflict of laws principles.

11.4 Jurisdiction. Without limiting any Person's right to appeal any order of the Court or to seek withdrawal of the reference with regard to any matter, the parties, including the members of the Plan Trust Beneficiary Committee and all Plan Trust Beneficiaries and holders of Plan Trust Interests, hereby consent to and submit to the exclusive jurisdiction and venue of the Court.

11.5 Severability. If any provision of this Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or

unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

11.6 Notices. Except as set forth in Section 3.8 or otherwise required by law, rule or regulation all notices, requests or other communications to the parties hereto shall be in writing and shall be sufficiently if sent by electronic communication to the email addresses or telefacsimile numbers below unless and until a change is communicated by conforming means:

If to the Plan Trustee, to:

Neil F. Luria
Liquidating Trustee
425 West New England Avenue, Suite 300
Winter Park, Florida 32789
Fax: 801-751-9537
E-mail: nluria@soliccapital.com

If to the Plan Trust Beneficiary Committee, to:

c/o Eleanor Hamburger
Counsel for the Plan Trust Beneficiary Committee
Sirianni Youtz Spoonemore Hamburger
3101 Western Avenue Suite 350
Seattle, WA 98122
Fax: 206-223-0246
E-mail: sharitymemberscommittee@sylaw.com

With a copy to:

[Debtor's designee]
Fax:
E-mail:

Any party from time to time may change its email address, facsimile number or other information for the purpose of notice by giving notice specifying such change to the other parties hereto.

11.7 Headings. The section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

11.8 Counterparts. This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

11.9 Confidentiality. The Plan Trustee and each successor trustee and each member of the Plan Trust Beneficiary Committee and each successor member of the Plan Trust Beneficiary Committee (each a "Covered Person") shall, during the period that they serve in such capacity under this Trust Agreement and following either the termination of this Trust Agreement or such individual's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the assets of the Plan Trust relates or of which it has become aware in its capacity (the "Information"), including but not limited to protected health information as defined in the Health Insurance Portability and Accountability Act, except to the extent disclosure is required by applicable law, order, regulation or legal process. In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand or similar legal process) to disclose any Information, such Covered Person shall notify the Plan Trust Beneficiary Committee reasonably promptly (unless prohibited by law) so that the Plan Trust Beneficiary Committee may seek an appropriate protective order or other appropriate remedy or, in its discretion, waive compliance with the terms of this Section (and if the Plan Trust Beneficiary Committee seeks such an order, the relevant Covered Person will provide cooperation as the Plan Trust Beneficiary Committee shall reasonably request). If no such protective order or other remedy is obtained, or the Plan Trust Beneficiary Committee waives compliance with the terms of this Section and any Covered Person is nonetheless legally compelled to disclose the Information, the Covered Person will furnish only that portion of the Information which the Covered Person, advised by counsel, is legally required to furnish and will give the Plan Trust Beneficiary Committee written notice (unless prohibited by law) of the Information to be disclosed as far in advance as practicable and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information.

11.10 Entire Agreement. This Trust Agreement (including the Premises), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties hereto and there

are no representations, warranties, covenants or obligations except as set forth herein or therein. This Trust Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, in the Plan or in the Confirmation Order, nothing in this Trust Agreement is intended or shall be construed to confer upon or to give any person other than the parties thereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Trust Agreement.

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Trust Agreement or caused it to be executed and acknowledged on their behalf by their duly-authorized officers all as of the date first above written.

**Sharity Ministries, Inc.**

By:______________________________________
Name:
Title:

**Neil F. Luria, as Liquidating Trustee**

_________________________________________

**OFFICIAL COMMITTEE OF MEMBERS**

By:______________________________________
Name: Cynthia Powers
Title: Committee Chair

# <u>EXHIBIT B</u>

**SHARITY MINISTRIES, INC., LIQUIDATING TRUST AGREEMENT**

This Liquidating Trust Agreement (the "Trust Agreement"), dated as of December [2], 2021, by and among Sharity Ministries, Inc. ("Sharity" or the "Debtor") and the Official Committee of Members (as the Debtor's representative) (the "Committee," and together with the Debtor, the "Grantor"), and ~~____________________~~Neil F. Luria, as the trustee of the liquidating trust (the "Plan Trustee"), is executed in connection with the "Chapter 11 Plan of Liquidation of Sharity Ministries, Inc." under Chapter 11 of the Bankruptcy Code including, without limitation, the exhibits and schedules thereto and it or they may be modified or supplemented from time to time in accordance with the terms and provisions thereof ( the "Plan"), to provide for a liquidating trust to resolve, liquidate and realize upon the assets transferred to the Plan Trustee and distribute the proceeds of the Liquidating Trust Assets to its beneficiaries. Capitalized terms used in this Trust Agreement and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**PREMISES:**

A. On July 8, 2021, the Debtor filed a voluntary petition for relief under Subchapter V of chapter 11 of the Bankruptcy Code (the "Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

B. With the petition, the Debtor filed a motion to approve a "Small Business Debtor" Subchapter V plan of reorganization. [Dkt. No. 14]

C. After various proceedings and hearings by the Court, on September 1, 2021, the Office of the United States Trustee convened an organizational meeting of Members of the Debtor and appointed a 5-person Official Committee of Members. [D.I. 178]

D. On October 1, 2021, the Debtor filed its proposed Small Business Subchapter V Plan (Dkt. No. 223); filed a certification of counsel for the approval of its withdrawal of its election to proceed as a Small Business debtor [Dkt. No. 224] and filed a motion for the approval of a combined disclosure statement and chapter 11 liquidating plan of reorganization (the "Plan and Disclosure Statement") on shortened notice. [Dkt. Nos. 225 & 226]

E. On October 14, 2021, the Court entered an order provisionally (i) approving the disclosure statement as amended and (ii) confirming the Plan and Disclosure statement [Dkt. No. 263], the final form of which was filed by the Debtor the same day. [Dkt. No. 264]

F. On December [2], 2021, after due and sufficient notice; service of the Plan and Disclosure Statement upon all parties in interest; and voting by all parties in interest entitled to vote on the Plan in number and in amount sufficient to approve the Plan; and after a hearing on final approval of the Plan and Disclosure Statement, the Court entered an order approving both the Disclosure Statement and the Plan (the "Confirmation Order"). [Dkt. No. __]

G. The Effective Date of the Plan occurred today.

H. The Plan Trust is to be and by this agreement is created pursuant to, and to effectuate certain provisions of, the Plan, including, without limitation, to liquidate the Causes of Action and the Trust Assets for the benefit of holders of Allowed Claims (all such holders are referred to collectively herein as the "Plan Trust Beneficiaries"), in accordance with Treasury Regulation Section [301.7701-4(d).

I. The Plan Trust is intended to be treated, in part, as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), for the benefit of the Plan Trust Beneficiaries entitled to distributions and will not conduct any ongoing trade or business.

J. The Causes of Action, the Remaining Cash, the Liquidating Trust Assets, and all rights relating thereto and all proceeds and distributions deriving from or received or distributed in respect thereof, and any other Assets contributed by the Grantor to the Plan Trust collectively constitute and are referred to as the "Trust Assets."

K. The Plan Trustee shall be responsible for reconciling all asserted Claims, allowing or objecting to Claims, and obtaining final determinations of the identities of the Plan Trust Beneficiaries in order to distribute the proceeds of the Trust Assets to them.

In consideration of the Premises and the mutual covenants and agreements contained in this Agreement and in the Plan, the Grantor and the Plan Trustee agree as follows:

## ARTICLE 1

## ESTABLISHMENT OF THE LIQUIDATION TRUST

1.1 Establishment of Plan Trust and Appointment of Plan Trustee.

(a) Pursuant to the Plan, the Grantor and the Plan Trustee hereby establish the Plan Trust on behalf and for the benefit of the Plan Trust Beneficiaries.

(b) The Plan Trustee is hereby appointed as trustee of the Plan Trust, effective as of the date hereof and agrees to accept and hold the Trust Assets in trust and administer them for the benefit of the Plan Trust Beneficiaries, as they shall be determined, subject to the terms of the Plan and this Trust Agreement. The Plan Trustee and any successor trustee serving from time to time hereunder shall have all the rights, powers and duties set forth herein.

(c) The Plan Trust has no objective to, and will not, engage in the conduct of a trade or business and, subject to Article 9 below, will terminate upon the completion of its liquidation and distribution duties.

1.2 Transfer of Plan Trust Assets and Rights to the Plan Trust.

(a) As of the date hereof, each Grantor hereby transfers, assigns, and delivers to the Plan Trust all its respective right to and interest in and to the Causes of Action which shall vest in and hereafter be prosecuted by and in the name of the Plan Trust, in each case free and clear of any right, claim or interest in such Assets of any other Person.

(b) The Plan Trust hereby accepts all Plan Trust Assets and agrees to hold and administer the Plan Trust Assets for the benefit of the Plan Trust Beneficiaries, subject to the terms and conditions of this Trust Agreement and the Plan.

(c) On or prior to the date hereof, the Grantor shall (i) deliver, cause to be delivered, or provide access to the Plan Trustee to any and all documents evidencing or relating to the Trust Assets (including those maintained in electronic format and original documents), whether held by the Grantor or its employees, agents, advisors, attorneys, accountants or any other professionals hired by the Grantor, and (ii) use commercially reasonable efforts to provide

access to the Plan Trustee to such employees of each Grantor, and their respective agents, advisors, attorneys, accountants or any other professionals hired by each Grantor, with knowledge of matters relevant to the Trust Assets, subject to the Trustee's payment of any reasonable fees and/or expenses related to the foregoing.

(d) At any time and from time to time on and after the date hereof, the Grantor agrees at the reasonable request of the Plan Trustee to execute and deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), and to take, or cause to be taken, all such further actions as the Plan Trustee may reasonably request in order to evidence or effectuate the transfer of the Plan Trust Assets to the Plan Trust, the substitution of the Plan Trustee as plaintiff with respect to any pending or contemplated Causes of Action and the consummation of the transactions contemplated hereby and by the Plan, and to otherwise carry out the intent of the parties hereunder and under the Plan.

1.3 Title to Trust Assets; Disputed Claims Reserve; Tax Treatment.

(a) The transfer of the Plan Trust Assets by the Grantor to the Plan Trust shall be made for the ratable benefit of the Plan Trust Beneficiaries. The Plan Trustee shall establish and fund such separate accounts (each a "Trust Account") as it determines to be necessary or desirable to carry out the purposes of the Plan Trust in accordance with the Plan and Treasury Regulations Section 301.7701-4(d), including, by way of illustration and without limitation: (i) a Trust Account in an amount sufficient to pay each holder of a Disputed Claim the amount such holder would be entitled to receive if such Disputed Claim had been allowed in full as of the Effective Date (or such other amount as the Bankruptcy Court may determine) (the "Disputed Claims Reserve"); (ii) a Trust Account in an amount sufficient to pay all of the fees, taxes, costs and expenses that are or become payable by the Plan Trust (the "Trust Expense Account"); and (iii) a Trust Account with the balance of the Trust Assets that are not deposited to any other Trust Account, to satisfy Claims which are Allowed Claims (the "Allowed Claims Trust Account"). During the term of the Plan Trust, the Plan Trustee, in his discretion, may (x) transfer Trust Assets between or among the Trust Accounts, and (xi) deposit any additional Trust Assets and/or the proceeds of any Trust Assets to and among the Trust Accounts, in each case as it determines

to be necessary or desirable to carry out the purposes of the Plan Trust in accordance with the Plan and Treasury Regulations Section 301.7701-4(d).

(b) The Plan Trust (which includes the various Trust Accounts) is intended to be treated for federal income tax purposes, in part, as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d), for the benefit of holders of Allowed Claims entitled to distributions, and otherwise as one or more disputed ownership funds within the meaning of Treasury Regulations Section 1.468B-9(b)(1). The Plan Trustee will act as the "administrator" of such disputed ownership funds within the meaning of Treasury Regulations Section 1.468B-9(b)(2). The Disputed Claims Reserve will be subject to the continuing jurisdiction of the Court, and, as a result, no money or property can be paid or distributed from the Disputed Claims Reserve to, or on behalf of, a "claimant" or the "transferor" (as such terms are defined in Treasury Regulations Sections 1.468B-9(b)(3) and 1.468B-9(b)(7), respectively) except if, as and when (i) a Disputed Claim becomes an Allowed Claim pursuant to the procedures for resolving Disputed Claims and making distributions on such Allowed Claims prescribed in the Plan, or (ii) funds are transferred from the Disputed Claims Reserve to any Trust Expense Account to pay the fees, taxes, costs and expenses that are or become payable by the Plan Trust-or incurring and paying such fees, taxes, costs and expenses.

For all purposes of the Internal Revenue Code of 1986, as amended (*e.g.*, sections 61(a)(12), 483, 1001, 1012, and 1274), the Debtors, the Plan Trustee and Plan Trust Beneficiaries of the Plan Trust will treat the transfers of Plan Trust Assets to the Plan Trusts as follows: (i) to the extent not thereafter transferred to the Disputed Claims Reserve or any other disputed ownership fund within the meaning of Treasury Regulations Section 1.468B-9(b)(1), as a transfer of the Plan Trust Assets directly from the Debtor to the Plan Trust Beneficiaries of the Plan Trust established for the Debtor, in partial satisfaction of their then-Allowed Claims, followed by the transfer of such Plan Trust Assets by such Plan Trust Beneficiaries to the Plan Trust established for such Debtor in exchange for Plan Trust Interests for their Pro Rata benefit in accordance with the Plan; and (ii) to the extent thereafter transferred to the Disputed Claims Reserve or any other disputed ownership fund within the meaning of Treasury Regulations Section 1.468B-9(b)(1), as a transfer to such one or more disputed ownership funds. Accordingly, the holders of Plan Trust Interests of the Plan Trust will be treated for federal

income tax purposes as the Grantor and deemed owners of their shares of the Plan Trust Assets held by the Plan Trust described above that are not transferred to a Disputed Claims Reserve or any other disputed ownership fund within the meaning of Treasury Regulations Section 1.468B-9(b)(1), and any earnings thereon.

(c) Upon the transfer of the Plan Trust Assets by the Grantor to the Plan Trust, the Plan Trustee shall succeed to all of the Grantor' rights, title and interests in and to the Plan Trust Assets and the Grantor will have no further interest in or with respect to the Plan Trust Assets or this Plan Trust.

1.4 Nature and Purpose of the Plan Trust.

(a) Purpose. The Plan Trust is a liquidating trust pursuant to which the Plan Trustee, subject to the terms and conditions contained herein and in the Plan, is to: (i) hold the Trust Assets and dispose of the same in accordance with this Trust Agreement, the Plan, and Treasury Regulation Section 301.7701-4(d); (ii) oversee and direct the expeditious but orderly liquidation and distribution of the Trust Assets; and (iii) prosecute appropriate Causes of Action and objections to Claims and resolve Disputed Claims. Accordingly, the primary purpose of this Plan Trust is to liquidate the Trust Assets transferred to it with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan Trust and Treasury Regulation Section 301.7701-4(d).

(b) Actions of the Plan Trustee. The Plan Trustee, upon consultation with the Plan Trust Beneficiary Committee, in an expeditious but orderly manner, shall liquidate and convert to Cash the Trust Assets, make timely distributions, and not unduly prolong the duration of the Plan Trust. The liquidation of the Causes of Action may be accomplished either through the prosecution, compromise and settlement, abandonment or dismissal of any or all claims, rights or causes of action, or otherwise.

(c) Relationship. This Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a liquidating trust. The Plan Trust is not intended to be and shall not be deemed to be or treated as a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the

Plan Trustee or the Plan Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners, joint venturers or shareholders. The relationship of the Plan Trust Beneficiaries to the Plan Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Trust Agreement.

1.5 Incorporation of Plan. The Plan and the Confirmation Order are each hereby incorporated into this Trust Agreement and made a part hereof by this reference; *provided, however*, to the extent that there is conflict between the provisions of this Trust Agreement, the provisions of the Plan, and/or the Confirmation Order, each such document shall have controlling effect in the following order: (1) the Confirmation Order; (2) the Plan; and (3) this Trust Agreement.

1.6 Funding of the Plan Trust. In accordance with Section 1.3, the initial funding of the Plan Trust shall be the Debtor's Remaining Cash as of the Effective Date (the "Funding Amount"), from which (i) within 30 days after the Effective Date, all Allowed Class 3 Claims shall be paid in full and (ii) in due course all unpaid Allowed Professional Fee Claims for the period before the Effective Date shall be paid.

1.7 Identification of Holders of Plan Trust Interests. The allocation and distribution of interests in the Plan Trust (the "Plan Trust Interests") among the Plan Trust Beneficiaries shall be accomplished as set forth in the Plan, including, without limitation, Article XI of the Plan. The name, address and Disputed Amount and Allowed Amount of the Claims of each Plan Trust Beneficiary shall be recorded and set forth in a confidential register maintained by the Plan Trustee expressly for such purpose (as updated pursuant to this Trust Agreement, the "Register"), which shall in all respects remain subject to the protections of the Court's Order dated November 4, 2021 [Dkt. No. 287]. All references in this Trust Agreement to "Plan Trust Beneficiaries" shall be read to mean holders of record as set forth in the Register and shall not mean any beneficial owner not recorded in the Register. Unless expressly provided herein, the Plan Trustee may establish a record date which it deems practical for determining the holders of Plan Trust Interests for a particular purpose.

1.8 <u>Interests Beneficial Only</u>. The ownership of a Plan Trust Interest shall not entitle any holder thereof to any title in or to the Trust Assets as such (which title shall be vested in the Plan Trustee) or to any right to call for a partition or division of the assets of the Plan Trust or to require an accounting.

1.9 <u>Non-Transferability of Plan Trust Interests</u>. The Plan Trust Interests shall not be certificated and shall not be transferable, assigned, pledged or hypothecated, in whole or part, except with respect to a transfer by testamentary bequest or under the laws of descent and distribution or otherwise by operation of law (a "<u>Permitted Transfer</u>"); *provided, however,* that any Permitted Transfer shall not be effective until and unless the Plan Trustee receives written notice of such Permitted Transfer and has been provided with evidence satisfactory to it in its sole discretion of the legal right of such transferee to such Plan Trust Interests. Upon the Plan Trustee's receipt of and satisfaction with such written notice he shall update the Register to reflect the transferee as the holder of the Plan Trust Interests subject to such Permitted Transfer.

1.10 <u>Absolute Owners</u>. The Plan Trustee may deem and treat the holder of record as the absolute owner of such Plan Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever and, until any Permitted Transfer is recorded in the Register pursuant to Section 2.3 above, the Plan Trustee shall not be charged with having received notice of any claim or demand to such Plan Trust Interests or the interest therein of any other Person.

1.11 <u>Access to the Register by Holders of Plan Trust Interests</u>. Plan Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable written notice to the Plan Trustee, and in accordance with the reasonable regulations prescribed by the Plan Trustee, to inspect and, at the sole expense of the holder seeking the same, make copies of the Register, in each case for a purpose reasonably related to such Plan Trust Beneficiary's interest in the Plan Trust.

1.12 <u>Securities Law Registration</u>. Under section 1145 of the Code, the issuance of Plan Trust Interests under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and any applicable state or local laws or regulations requiring registration of securities. If the Plan Trustee determines that the Plan Trust is required

to comply with registration and reporting requirements of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), or the Investment Company Act of 1940, as amended (the "Investment Company Act"), then the Plan Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and file periodic reports with the SEC.

1.13 Conflicting Claims to Beneficial Interests. If any dispute arises with respect to the ownership or control of the Plan Trust Interests of any holder thereof or the right to receive any distribution in respect thereof, or if there is any disagreement among persons claiming to be permitted successors of any Plan Trust Interests resulting in adverse claims or demands being made in connection with such Plan Trust Interests (an "Ownership Dispute"), then the Plan Trustee shall be entitled to refuse to comply with any demand or direction made by any party to such Ownership Dispute. In so refusing, the Plan Trustee may elect to make no payment or distribution with respect to the Plan Trust Interests relating to the Ownership Dispute or any part thereof, or to make payment or distribution into escrow as provided below, and to refer such Ownership Dispute to the Court or another court of competent jurisdiction, which shall have jurisdiction over resolution of such Ownership Dispute. In so doing, the Plan Trustee shall not be or become liable to any of such parties for its refusal to comply with any demand or direction made by them, nor shall the Plan Trustee be liable for interest on any funds which it may so withhold. The Plan Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a final judgment or (ii) all differences have been resolved by a valid written agreement among all of such parties and the Plan Trustee, which agreement shall include a complete release of the Plan Trustee and the Plan Trust Beneficiary Committee and their respective professionals. With respect to any payment or distribution to be made, the Plan Trustee may make such payment or distribution into an escrow account until the disposition thereof shall be determined by court order or by written agreement among the interested parties to such dispute; *provided, however,* that after providing interested parties at least thirty days' notice, if no action has been commenced within ninety days after the relevant Distribution Date, the property which is the subject of the dispute shall irrevocably become Unclaimed Property.

## ARTICLE 2

## THE PLAN TRUSTEE

2.1 Plan Trust Proceeds. All proceeds and distributions deriving from or received or distributed in respect of Trust Assets shall be added to the Trust Assets and held as a part thereof.

2.2 Collection of Income. The Plan Trustee shall collect all income earned with respect to the assets of the Plan Trust, if any, which shall thereupon be added to the assets of the Plan Trust and held as a part thereof.

2.3 Payment of Plan Trust Expenses. The Plan Trustee may expend the assets of the Disputed Claims Reserve (i) to pay expenses incurred by the Plan Trust in reconciling and resolving Disputed Claims, (ii) to pay reasonable expenses relating to the administration of the Plan Trust (including, without limitation, the costs and expenses of the Plan Trustee and the Plan Trust Beneficiary Committee, the fees of the U.S. Trustee, and the fees, costs and expenses of all professionals retained by any of them or their members, as the case may be, and any taxes imposed on the Plan Trust or fees and expenses in connection with, arising out of or related to the Trust Assets, and (iii) to satisfy other liabilities incurred or assumed by the Plan Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Trust Agreement. Notwithstanding any other provision of this Trust Agreement to the contrary, the Plan Trustee shall not be required to take any action or enter into or maintain any claim, demand, action or proceeding relating to the Plan Trust unless it shall have sufficient funds in the Disputed Claims Reserve for that purpose.

2.4 Distributions. The Plan Trustee shall distribute the net distributable assets of the Plan Trust to the holders of Plan Trust Interests in accordance with the provisions of Article IV of the Plan.

2.5 Tenure, Removal, and Replacement of the Plan Trustee.

(a) The Plan Trustee will serve until resignation and the appointment of a successor pursuant to subsection (b) below, removal pursuant to subsection (c) below or death (if applicable).

(b) The Plan Trustee may resign by giving not less than ninety (90) days' written notice to the Plan Trust Beneficiary Committee; provided, however that such resignation will become effective upon the appointment of a successor trustee as provided herein and the acceptance by such successor trustee of such appointment and such successor trustee may accept his/her appointment within such ninety-day period. If a successor trustee is not appointed or does not accept its appointment within ninety (90) days following delivery of notice of resignation, the Plan Trustee may file a motion with the Court, upon notice and hearing, for the appointment of a successor trustee.

(c) The Plan Trustee may be removed by resolution of the Plan Trust Beneficiary Committee.

(d) To the extent that the Plan Trustee is removed pursuant to the terms specified in Section 3.5(c) (a "Removal") or the Plan Trustee resigns pursuant to the terms specified in Section 3.5(b) (a "Resignation"), and such Plan Trustee is then serving in any other capacity for or on behalf of either of the Grantor or is serving as trustee of any trust formed pursuant to the Plan (service by the Plan Trustee in each such additional capacity, collectively, the "Responsibilities"), the Plan Trustee shall be deemed to be terminated (for all purposes and without any further action) from each of its other Responsibilities upon its Removal or Resignation.

(e) In the event of a vacancy in the position of Plan Trustee (whether by removal, resignation or death, if applicable), the vacancy will be filled by the appointment of a successor trustee by (i) resolution of the Plan Trust Beneficiary Committee and by the acceptance of the position by the successor trustee in accordance with Section 3.6 or (ii) an order of the Court after an opportunity for a hearing (*provided, however,* that only the Plan Trust Beneficiary Committee shall have standing to seek such an order). If a successor trustee is appointed by resolution, as provided in clause (i) of the preceding sentence, and such appointment is accepted by the successor trustee, the Plan Trust Beneficiary Committee shall file notice of such appointment and acceptance with the Court, which notice will include the name, address, and telephone number of the successor trustee; provided that the filing of such notice shall not be a

condition precedent to the vesting in the successor trustee of all the estates, properties, rights, powers, trusts, and duties of its predecessor.

(f) Immediately upon the acceptance of appointment by any successor trustee, all rights, powers, duties, authority, and privileges of the predecessor Plan Trustee hereunder will be vested in and undertaken by the successor trustee without any further act; and the successor trustee will not be liable personally for any act or omission of the predecessor Plan Trustee.

(g) Upon the appointment of a successor trustee, the predecessor Plan Trustee (or the duly appointed legal representative of a deceased Plan Trustee) shall, if applicable, when requested in writing by the successor trustee, execute and deliver an instrument or instruments conveying and transferring to such successor trustee upon the trust herein expressed, all the estates, properties, rights, powers and trusts of such predecessor Plan Trustee, and shall duly assign, transfer, and deliver to such successor trustee all property and money held hereunder, and all other assets and documents relating to the Plan Trust, the Trust Assets, or the Plan Trust Interests then in its possession and held hereunder.

(h) During any period in which there is a vacancy in the position of Plan Trustee, the Plan Trust Beneficiary Committee shall appoint one of its members to serve as interim Plan Trustee (the "Interim Trustee"). The Interim Trustee shall be subject to all the terms and conditions applicable to a Plan Trustee hereunder. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a member of the Plan Trust Beneficiary Committee merely by its appointment as Interim Trustee. The Plan Trust Beneficiary Committee may, but shall not be required to, file a notice with the Court of the type required in Section 3.5(e) of the appointment of an Interim Trustee.

2.6 Acceptance of Appointment by Successor Plan Trustee. Any successor trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all the obligations of the predecessor Plan Trustee hereunder and thereupon the successor trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of its predecessor in the Plan Trust hereunder with like effect as if originally named herein.

2.7 Meetings of the Plan Trustee and the Plan Trust Beneficiary Committee. Meetings of the Plan Trustee and the Plan Trust Beneficiary Committee are to be held whenever, wherever and however, in person or by electronic means, the Plan Trustee and the Plan Trust Beneficiary Committee may determine in their reasonable discretion.

2.8 Notice of and Waiver of Notice for Plan Trustee and Plan Trust Beneficiary Committee Meetings. Regular meetings may be called from time to time by the Plan Trustee. Special meetings may be called by the Plan Trustee or on request by any member of the Plan Trust Beneficiary Committee. Notice of the time and place (but not necessarily the purpose or all of the purposes) of any meeting will be given by or on behalf of the Plan Trustee to the members of the Plan Trust Beneficiary Committee via electronic transmission. Notice to the Plan Trustee and the members of the Plan Trust Beneficiary Committee of any special meeting will be deemed given sufficiently in advance when given by electronic transmission on a business day at least twenty-four (24) hours prior to the convening of the meeting to the Plan Trustee and the members of the Plan Trust Beneficiary Committee The Plan Trustee and any member of the Plan Trust Beneficiary Committee may waive notice of any meeting and any adjournment thereof at any time before, during, or after it is held, as provided by law. Except as provided in the next sentence below, the waiver must be in writing, signed by the Plan Trustee or the applicable member or members of the Plan Trust Beneficiary Committee entitled to the notice, and filed with the minutes or records of the Plan Trust. The attendance of the Plan Trustee or a member of the Plan Trust Beneficiary Committee at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting and objects at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened.

2.9 Manner of Acting. The Plan Trustee or any member of the Plan Trust Beneficiary Committee may participate in a meeting by, or conduct the meeting through the use of, any form of communications by means of which all persons participating in the meeting may hear and address each other simultaneously, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. The Plan Trustee or any member of the Plan Trust Beneficiary Committee participating in a meeting by this means is deemed to be present in person at the meeting.

2.10 Role of the Plan Trustee. In furtherance of and consistent with the purpose of the Plan Trust and the Plan, the Plan Trustee, subject to the terms and conditions contained herein and in the Plan and subject to the direction of the Plan Trust Beneficiary Committee, shall have the power to perform the functions and take the actions provided or permitted in the Plan or in this Trust Agreement. In all circumstances, the Plan Trustee shall, subject to the direction of the Plan Trust Beneficiary Committee act in the best interests of all the Plan Trust Beneficiaries of the Plan Trust and in furtherance of the purpose of the Plan Trust.

2.11 Authority of the Plan Trustee. The Plan Trustee shall report all material matters to the Plan Trust Beneficiary Committee. Subject to the supervision of the Plan Trust Beneficiary Committee and to any limitations contained herein (including, without limitation, Section 3.12 hereof) or in the Plan, the Plan Trustee shall have the power and authority to:

(a) receive, manage, invest, supervise, and protect the Trust Assets, hold legal title to any and all rights of the holders of Plan Trust Interests in or arising from the Trust Assets, including, without limitation, collecting and receiving any and all money and other property belonging to the Plan Trust;

(b) pay taxes or other obligations incurred by the Trust;

(c) retain and pay such counsel and other professionals and/or advisors, including tax advisors (including, without limitation, any professionals previously retained by the Committee or the Debtor), as the Plan Trustee shall select in its reasonable discretion to assist the Plan Trustee in its duties (including, without limitation, the administration, prosecution and distribution of Trust Assets), on such terms as the Plan Trustee deem reasonable and appropriate, without Court approval. The Plan Trustee may commit the Plan Trust to and shall pay such counsel and other professionals' reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred;

(d) calculate and implement distributions of Trust Assets and the proceeds thereof pursuant to the terms of the Plan and the Plan Trust Agreement;

(e) prosecute, compromise, and settle, in accordance with the specific terms of the Plan Trust Agreement, all Claims against the Debtor and all Claims and Causes of Action vested in or otherwise transferred to the Plan Trust, and all objections related thereto;

(f) investigate, reconcile and resolve asserted Claims and determine which Claims to dispute;

(g) perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Code, including, without limitation, commencing, prosecuting or settling causes of action, enforcing contracts or asserting claims, defenses, offsets and privileges;

(h) protect and enforce the rights to the Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(i) obtain reasonable insurance coverage with respect to the liabilities and obligations of the Plan Trustee and the Plan Trust Beneficiary Committee under this Trust Agreement (in the form of an errors and omissions policy or otherwise);

(j) obtain insurance coverage with respect to real and personal property that may become Assets of the Plan Trust, if any;

(k) cause such reviews and/or audits of the financial books and records of the Plan Trust and other required professionals, as may be required by the SEC and applicable securities laws and as may be reasonable and appropriate in the Plan Trustee's discretion to be performed and to prepare and file any tax returns, informational returns, or periodic or current reports as required by applicable securities laws, for the Plan Trust as may be required;

(l) commit the Plan Trust to indemnify the Plan Trustee's counsel and other professionals and/or advisors (including, without limitation, tax advisors and any professionals previously retained by the Committee or the Debtor) in connection with the performance of services; *provided, however,* that such indemnity shall not cover any losses, costs, damages,

expenses or liabilities that result from the recklessness, gross negligence, willful misconduct, breach of fiduciary duty or knowing violation of law by such party;

(m) compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, all Causes of Action or Ownership Disputes in favor of or against the Plan Trust;

(n) invest any moneys held as part of the Plan Trust in accordance with the terms of Section 3.18 hereof, limited, however, to such investments that are consistent with the Plan Trust's status as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc 94-45, 1994-2 C.B. 684;

(o) appear on behalf of the Plan Trust or the Plan Trust Beneficiaries in any proceeding that may directly or indirectly affect the Trust Assets or their value or the recovery of Plan Trust Beneficiaries;

(p) request any appropriate tax determination with respect to the Plan Trust, including, without limitation, a determination pursuant to Section 505 of the Code;

(q) establish and maintain a website for the purpose of providing notice of Plan Trust activities in lieu of providing written notice to holders of Plan Trust Interests, subject to providing notice of such website to such holders; and

(r) take or refrain from taking any and all other actions that the Plan Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Trust Assets, the protection of the interests of the Plan Trust Beneficiaries, or to carry out the purposes hereof. In furtherance of the power and authority granted to the Plan Trustee in this Section 3.11(r) and elsewhere in this Trust Agreement, in accordance with clause (i) of Section 10.1(a), but otherwise notwithstanding any other provision of this Trust Agreement, except Section 3.12, and for the avoidance of doubt, the Grantor and each Person that acquires any interest in the Plan Trust, by virtue of the Confirmation Order, acknowledge and agree that:

(i) in accordance with Section 1.3(a), the Plan Trustee shall establish and fund such separate Trust Accounts as it determines to be necessary or desirable to carry out the purposes of the Plan Trust in accordance with the Plan and Treasury Regulations Section 301.7701-4(d), including the Disputed Claims Reserve, which shall be funded with no less than an amount sufficient to pay each holder of a Disputed Claim the amount such holder would have been entitled to receive if such Disputed Claim had been allowed in full as of the Effective Date (or such other amount as the Bankruptcy Court may determine). During the term of the Plan Trust, the Plan Trustee, in his discretion, shall (x) transfer Trust Assets between or among the Trust Accounts, and (xi) deposit any additional Trust Assets and/or the proceeds of any Trust Assets to and among the Trust Accounts, in each case as he determines to be necessary or desirable to carry out the purposes of the Plan Trust in accordance with the Plan and Treasury Regulations Section 301.7701-4(d);

(ii) Plan Trust Interests will be issued by the Plan Trust solely to Persons who are determined to hold Allowed Claims, in proportion to the aggregate amount of all such Allowed Claims as ultimately determined by the Plan Trustee;

(iii) Distributions of Trust Assets to holders of Plan Trust Interests (which, for the avoidance of doubt, excludes Persons who hold Disputed Claims) will be made in proportion to the aggregate amount of their respective Allowed Claims, but in no event in an aggregate amount greater than the aggregate amount of their respective Allowed Claims as of the Effective Date, together with such additional interest or income thereon as the Plan Trustee determines is properly payable in accordance with the purposes of the Plan and the requirements of Treasury Regulations Section 301.7701-4(d);

(iv) Persons who hold Disputed Claims on the Effective Date will not be issued Plan Trust Interests either on the Effective Date or thereafter, if their Disputed Claims become Allowed Claims; instead, such Persons will receive distributions Pro Rata from the Disputed Claims Reserve to the extent their Disputed Claims become Allowed Claims, or as otherwise adjusted by the Plan Trustee to the extent he determines

necessary to carry out the purposes of the Plan Trust, but in no event in an aggregate amount greater than the aggregate amount of their respective Disputed Claims on the Effective Date, together with such additional interest or income thereon as the Plan Trustee determines is properly payable in accordance with the Plan and Treasury Regulations Section 301.7701-4(d); and

(v) the Plan Trustee shall have the power and authority to construe and apply the terms and provisions of the Plan and this Trust Agreement, and to amend this Trust Agreement, as he determines to be necessary, desirable or equitable to carry out the purposes of the Plan Trust as he reasonably understands and interprets such purposes in accordance with the Plan and Treasury Regulations Section 301.7701-4(d).

2.12 Limitation on the Plan Trustee's Authority. Notwithstanding anything herein to the contrary, the Plan Trustee may not, without the approval of the Plan Trust Beneficiary Committee, (i) settle a Cause of Action where the amount in controversy exceeds $500,000, unless the Plan Trustee settles any such Cause of Action for at least 80% of the amount sought to be recovered; (ii) resolve any Disputed Claim where the disputed portion exceeds $500,000, unless the Plan Trustee settles any such Disputed Claim by obtaining a reduction of at least 50% of the disputed portion thereof; (iii) retain any counsel and other professionals and/or advisors, including tax advisors (including, without limitation, any professionals previously retained by the Committee or the Debtor) whose fees and expenses are expected to exceed $100,000; (iv) at any time, on behalf of the Plan Trust or the Plan Trust Beneficiaries, operate as a business entity within the meaning of Treasury Regulations Section 301.7701-2, or engage in any trade or business as proscribed by Treasury Regulations Section 301.7701-4(d), and the Plan Trustee will not use or dispose of any part of the Trust Assets in furtherance of any trade or business; (v) take actions inconsistent with the orderly liquidation of the Assets of the Plan Trust as are required or contemplated by applicable law, the Plan and this Trust Agreement; or (vi) engage in any investments or activities inconsistent with the treatment of the Plan Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.

2.13 Books and Records.

(a) The Plan Trustee shall maintain books and records relating to the assets of the Plan Trust and income of the Plan Trust and the payment of expenses of, and liabilities for claims against or assumed by, the Plan Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting and securities law requirements of the Plan Trust. Nothing in this Trust Agreement requires that the Plan Trustee file any accounting or seek approval of any court with respect to the administration of the Plan Trust, or as a condition for managing any payment or distribution out of the assets of the Plan Trust.

2.14 Inquiries into the Plan Trustee's Authority. Except as otherwise set forth in the Trust Agreement or in the Plan, no Person dealing with the Plan Trust shall be obligated to inquire into the authority of the Plan Trustee in connection with the protection, conservation or disposition of the Trust Assets.

2.15 Compliance with Laws. Any and all distributions of assets of the Plan Trust shall be in compliance with applicable laws, including, without limitation, applicable federal and state securities laws.

2.16 Compensation of the Plan Trustee. Notwithstanding anything to the contrary contained herein, the Plan Trustee shall be compensated for its services hereunder on the terms and conditions set forth in the separate written engagement agreement between the Plan Trust and the Plan Trustee effective as of today, and as approved by the Plan Trust Beneficiary Committee. Additionally, all reasonable and documented out-of-pocket expenses incurred by the Plan Trustee in connection with the performance of its duties hereunder shall be reimbursed by the Trust upon demand for payment thereof.

2.17 Reliance by the Plan Trustee. Except as otherwise provided herein:

(a) the Plan Trustee may rely, and shall be protected in acting upon, (i) any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Plan Trustee to be genuine and to have been signed or

presented by the proper party or parties, (ii) any direction by the Plan Trust Beneficiary Committee or (iii) the Debtor's filed schedules and statements of financial affairs and all other information filed by the Debtor or provided by the Debtor or its representatives to the Plan Trust concerning Claims filed against the Debtor, and its reconciliation and documents supporting such reconciliation; and

(b) Persons dealing with the Plan Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Plan Trustee to such Person in carrying out the terms of this Trust Agreement, and neither the Plan Trustee nor any member of the Plan Trust Beneficiary Committee shall have any personal obligation to satisfy any such liability.

2.18 Investment and Safekeeping of Trust Assets. The Plan Trustee shall invest all Assets transferred to the Plan Trust, all Remaining Cash, proceeds from Causes of Action, the Disputed Claims Reserve and all income earned by the Plan Trust (pending periodic distributions in accordance with the provisions of the Plan and this Trust Agreement) only in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills, *provided, however,* that (i) the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise, (ii) the Plan Trustee may retain any proceeds from Causes of Action received that are not Cash in the form received only for so long as may be required for the prompt and orderly liquidation of such assets in Cash; and (iii) under no circumstances shall the Plan Trustee segregate the assets of the Plan Trust on the basis of classification of the holders of Plan Trust Interests, other than with respect to distributions to be made on account of Disputed Claims in accordance with the provisions of the Plan.

2.19 Standard of Care; Exculpation. Neither the Plan Trustee nor any of its duly designated agents or representatives or professionals shall be liable for any act or omission taken or omitted to be taken by the Plan Trustee in good faith, other than acts or omissions resulting from the Plan Trustee's own gross negligence, recklessness, willful misconduct, breach of

fiduciary duty or knowing violation of law. The Plan Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Plan Trustee shall be under no obligation to consult with its attorneys, accountants, financial advisors or agents, and its good-faith determination not to do so shall not result in the imposition of liability on the Plan Trustee, unless such determination is based on gross negligence, recklessness, willful misconduct, breach of fiduciary duty or knowing violation of law.

## ARTICLE 3

## PLAN TRUST BENEFICIARY COMMITTEE

3.1 Plan Trust Beneficiary Committee. The Plan Trust Beneficiary Committee shall be comprised of all Persons who were members the Members Committee and who agree to serve on the Plan Trust Beneficiary Committee. The Committee may also include one *ex officio* representative of the State regulators, as described in the Plan.

3.2 Authority of the Plan Trust Beneficiary Committee.

(a) The Plan Trust Beneficiary Committee shall have the authority and responsibility to review the activities and performance of the Plan Trustee, to consult with the Plan Trustee, and to approve in advance the acts of the Plan Trustee where such approval is specifically required herein. The Plan Trust Beneficiary Committee shall have the authority to remove the Plan Trustee in accordance with Section 3.5(c) . The Plan Trustee shall consult with and provide information to the Plan Trust Beneficiary Committee in accordance with and pursuant to the terms of this Trust Agreement and the Plan. The Plan Trust shall reimburse such Persons for their reasonable and documented out-of-pocket costs and expenses consistent with the terms of this Trust Agreement. The Plan Trust Beneficiary Committee may consult with the same counsel and financial advisor as the Plan Trustee has engaged. This Trust Agreement is not intended to create a fiduciary duty, and neither the Plan Trust Beneficiary Committee nor any of its members shall be deemed to be or be treated in any way as fiduciaries of the Plan Trust Beneficiaries.

(b) The Plan Trust Beneficiary Committee may elect to abandon any asset or claim included among the Trust Assets. Upon any such election, such claims shall cease to be Trust Assets.

3.3 Meetings of the Plan Trust Beneficiary Committee. Meetings of the Plan Trust Beneficiary Committee are to be held whenever, wherever and however the members may determine in their reasonable discretion.

3.4 Manner of Acting.

(a) A majority of the total number of members of the Plan Trust Beneficiary Committee then in office shall constitute a quorum for the transaction of business at any meeting of the Plan Trust Beneficiary Committee; *provided, however,* that the Plan Trust Beneficiary Committee may, by the majority vote of its members, designate a single member of the Plan Trust Beneficiary Committee to exercise all power of the Plan Trust Beneficiary Committee in respect of any particular matter in the absence of a quorum or in exigent circumstances when a meeting of all members cannot be timely convened. The affirmative vote of a majority of the members of the Plan Trust Beneficiary Committee present and entitled to vote at a meeting at which a quorum is present shall be the act of the Plan Trust Beneficiary Committee except as otherwise required by law or as provided in this Trust Agreement. Any or all of the members of the Plan Trust Beneficiary Committee may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any member of the Plan Trust Beneficiary Committee participating in a meeting by this means is deemed to be present in person at the meeting.

(b) Any member of the Plan Trust Beneficiary Committee who is present and entitled to vote at a meeting of the Plan Trust Beneficiary Committee when action is taken is deemed to have assented to the action taken unless: (i) such member of the Plan Trust Beneficiary Committee objects at the beginning of the meeting (or promptly upon his/her arrival) to holding it or transacting business at the meeting; (ii) his/her dissent or abstention from the

action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice of his/her dissent or abstention to the Plan Trust Beneficiary Committee before its adjournment. The right of dissent or abstention is not available to any member of the Plan Trust Beneficiary Committee who votes in favor of the action taken.

(c) Before voting on any matter or issue or taking any action with respect to any matter or issue, each member of the Plan Trust Beneficiary Committee shall report to the Plan Trust Beneficiary Committee any conflict of interest such member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such member might have with respect to or in connection with such matter or issue). A member who has or who may have a conflict of interest shall be deemed to be a "conflicted member" who shall not be entitled to vote or take part in any action with respect to such matter or issue (such member shall be counted to determine the existence of a quorum, however); and the vote or action with respect to such matter or issue shall be undertaken only by members of the Plan Trust Beneficiary Committee who are not "conflicted members."

3.5 Plan Trust Beneficiary Committee's Action Without a Meeting. Any action required or permitted to be taken by the Plan Trust Beneficiary Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Plan Trust Beneficiary Committee as evidenced by one or more written consents describing the action taken, signed by all members of the Plan Trust Beneficiary Committee and filed with the minutes or proceedings of the Plan Trust Beneficiary Committee.

3.6 Tenure, Removal, and Replacement of the Members of the Plan Trust Beneficiary Committee. The authority of the members of the Plan Trust Beneficiary Committee will be effective as of the date hereof and will remain and continue in full force and effect until the Plan Trust is terminated in accordance with Section 9.1 hereof. The service of the members of the Plan Trust Beneficiary Committee will be subject to the following:

(a) The members of the Plan Trust Beneficiary Committee will serve until death or until resignation pursuant to subsection (b) below, or removal pursuant to subsection (c) below, or upon the winding up of the Plan Trust.

(b) A member of the Plan Trust Beneficiary Committee may resign upon thirty (30) days written notice to the Plan Trustee and to the remaining members of the Plan Trust Beneficiary Committee.

(c) A member of the Plan Trust Beneficiary Committee may be removed by order of the Court obtained by any member of the Plan Trust Beneficiary Committee or by the unanimous resolution of the other members of the Plan Trust Beneficiary Committee, a copy of which shall be delivered to the removed Plan Trust Beneficiary Committee member; *provided, however,* that such removal may only be made for cause. For purposes of this Section 4.6(c), "Cause" shall be defined as: (i) such Plan Trust Beneficiary Committee member's theft or embezzlement or attempted theft or embezzlement of money or tangible or intangible assets or property; (ii) such Plan Trust Beneficiary Committee member's violation of any law (whether foreign or domestic), which results in a felony indictment or similar judicial proceeding; (iii) such Plan Trust Beneficiary Committee member's recklessness, gross negligence, willful misconduct, breach of fiduciary duty or knowing violation of law, in the performance of his or her duties; or (iv) such Plan Trust Beneficiary Committee member's failure to perform any of his or her other material duties under this Agreement; *provided, however,* that such Plan Trust Beneficiary Committee member shall have been given a reasonable period to cure any alleged Cause under clauses (iii) (other than willful misconduct or knowing violation of law) or (iv).

(d) In the event of a vacancy in the Plan Trust Beneficiary Committee (whether by removal, death or resignation), a new member may be appointed to fill such position by a majority of the remaining members of the Plan Trust Beneficiary Committee or the Court. If there are no remaining members of the Plan Trust Beneficiary Committee to fill such vacancies, appointments shall be made upon an order entered after an opportunity for a hearing by the Court, upon motion of the Plan Trustee. The appointment of a successor member of the Plan Trust Beneficiary Committee will be evidenced by the filing with the Court of a notice of appointment, which notice will include the name, address, and telephone number of the successor member of the Plan Trust Beneficiary Committee.

(e) Immediately upon the appointment of any successor member of the Plan Trust Beneficiary Committee, all rights, powers, duties, authority, and privileges of the

predecessor member of the Plan Trust Beneficiary Committee hereunder will be vested in and undertaken by the successor member of the Plan Trust Beneficiary Committee without any further act; and the successor member of the Plan Trust Beneficiary Committee will not be liable personally for any act or omission of the predecessor member of the Plan Trust Beneficiary Committee.

3.7 Compensation of the Plan Trust Beneficiary Committee. Except for the reimbursement of reasonable actual costs and expenses incurred in connection with their duties as members of the Plan Trust Beneficiary Committee, the members of the Plan Trust Beneficiary Committee shall serve without compensation. Reasonable expenses incurred by members may be paid by the Plan Trust without the need for Court approval.

3.8 Standard of Care; Exculpation. None of the Plan Trust Beneficiary Committee, its members, designees or professionals, or any of their duly designated agents or representatives, shall be liable for the act or omission of any other member, agent or representative of the Plan Trust Beneficiary Committee, nor shall the Plan Trust Beneficiary Committee or any of its members be liable for any act or omission taken or omitted to be taken by the Plan Trust Beneficiary Committee in good faith, other than acts or omissions resulting from the Plan Trust Beneficiary Committee's own gross negligence, recklessness, willful misconduct, breach of fiduciary duty or knowing violation of law. The Plan Trust Beneficiary Committee and each of its members may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, neither the Plan Trust Beneficiary Committee nor any of its members shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and its good faith determination not to do so shall not result in the imposition of liability on the Plan Trust Beneficiary Committee or, as applicable, its members or designees, unless such determination is based on gross negligence, recklessness, willful misconduct, breach of fiduciary duty or knowing violation of law.

## ARTICLE 4

## TAX MATTERS

4.1 Federal Income Tax Returns and Payments.

(a) General. The Plan Trustee will be responsible for filing all foreign, U.S. federal, state and local tax returns for the Plan Trust and the Estate, to the extent necessary, and for the timely preparation and distribution to the Plan Trust Beneficiaries of any necessary foreign, U.S. federal, state or local information returns. Notwithstanding anything to the contrary in this Trust Agreement, the Plan Trustee will not be obligated to deliver any such information returns to holders of Disputed Claims in their capacity as such.

(b) Grantor Trust Accounts. Except as otherwise provided in Section 5.1(c) or applicable law with respect to Trust Accounts that are not, and that portion of the Plan Trust that is not, a disputed ownership fund within the meaning of Treasury Regulations Section 1.468B-9(b)(1) (collectively, the "Grantor Trust Accounts"), the Plan Trustee will timely file tax returns for the Grantor Trust Accounts as a grantor trust and/or a liquidating trust under Treasury Regulations Section 1.671-4(a) and/or Treasury Regulations Section 301.7701-4(d) and related regulations. Pursuant to such provisions, for federal income tax purposes the Plan Trustee of such Plan Trust will allocate to holders of Plan Trust Interests entitled to receive payments from the Grantor Trust Accounts of such Plan Trust, their Pro Rata shares of any income or loss of such Grantor Trust Accounts, and such Plan Trust Interest holders will be subject to tax on the Grantor Trust Accounts' taxable income on a current basis.

(c) Disputed Ownership Funds. With respect to the Trust Accounts that are, and any portion of the Plan Trust that constitutes, a disputed ownership fund within the meaning of Treasury Regulations Section 1.468B-9(b)(1), the Plan Trustee will timely (i) file such income tax and other returns and statements as are required to comply with (x) the applicable provisions of the Internal Revenue Code and the Treasury Regulations promulgated thereunder, including the requirements set forth in Treasury Regulations Section 1.468B-9(c), and (y) any applicable state and local law and the regulations promulgated thereunder, and (ii) pay from the applicable Trust Account any taxes reported as owing on such returns and statements.

(d) As soon as possible after the date hereof, but in no event later than one-hundred twenty (120) days thereafter, (i) the Plan Trustee shall determine the value of any assets in the Plan Trust, based on the good-faith determination of the Plan Trustee with advice of any qualified professional who may be retained to do so if necessary and (ii) with the advice and consent of the Plan Trust Beneficiary Committee, the Plan Trustee shall apprise the Plan Trust Beneficiaries in writing of such valuation. The valuation shall be used consistently by all parties (including the Grantor, the Plan Trustee and the holders of Plan Trust Interests) for all federal income tax purposes, including, for the avoidance of doubt, all applicable federal income tax reporting requirements. The Plan Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Plan Trust that are required by any governmental unit and pay taxes, if any, properly payable by the Plan Trust.

(e) The Plan Trustee may request an expedited determination of taxes of the Plan Trust under Section 505(b) of the Code for all returns filed for, or on behalf of, the Plan Trust for all taxable periods through the dissolution of the Plan Trust.

4.2 Withholding; Apportionment.

(a) To the extent applicable, the Plan Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all allocations of income or gain and distributions pursuant to the Plan and/or this Trust Agreement will be subject to such withholding and reporting requirements. The Plan Trustee will be authorized to take any actions that it determines to be necessary, appropriate or desirable to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan or this Trust Agreement, each entity receiving an allocation of income or gain or a distribution of cash pursuant to the Plan or this Trust Agreement will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such allocations and distributions, including income, withholding and other tax obligations.

(b) The Plan Trustee shall be entitled to deduct any foreign, federal, state and local taxes from any payments to be made to Plan Trust Beneficiaries, as appropriate, and shall otherwise comply with section 346 of the Code.

(c) With regard to Permitted Transfers of Plan Trust Interests in accordance with Section 2.3 herein, the Plan Trustee shall promptly establish a standard convention for allocating and apportioning taxable income and loss between a transferor and its transferee and shall not be required to so allocate and apportion based on the actual Plan Trust activities prior and subsequent to the date of any Permitted Transfer. The Plan Trustee shall notify the holders of Plan Trust Interest of the convention adopted promptly after such adoption. The Plan Trustee shall use its discretion to establish a fair and equitable convention to apply and may, but is not required to, adopt a monthly, quarterly or similar record date convention.

## ARTICLE 5

## DISTRIBUTIONS

5.1 Annual Distribution; Withholding. The Plan Trustee shall distribute *pro rata* as required by law any minimum threshold as may be or become applicable for annual distributions to the holders of Plan Trust Interests, and to the holders of any other Allowed Claims, the net income of the Plan Trust (net of any payment of or provisions for taxes), plus all net proceeds from the sale or liquidation of Trust Assets; *provided, however,* that the Plan Trustee may cause the Plan Trust to retain such amounts (i) as are reasonably necessary to meet contingent liabilities (including Disputed Claims) and to maintain the value of the assets of the Plan Trust during liquidation, (ii) to pay reasonable administrative expenses (including the costs and expenses of the Plan Trustee and the Plan Trust Beneficiary Committee and the fees, costs and expenses of all professionals retained by any of them or their members, as the case may be, and any taxes imposed on the Plan Trust or in respect of the Trust Assets), (iii) to satisfy other liabilities incurred or assumed by the Plan Trust (or to which the Trust Assets are otherwise subject) in accordance with the Plan or this Trust Agreement, and (iv) to establish any necessary reserve or Funding Amount. All distributions to the holders of Plan Trust Interests and to holders of Allowed Claims which were Disputed Claims on the Effective Date shall be Pro Rata. Pursuant to Section 5.2, the Plan Trustee may withhold from amounts distributable to any Person any and all amounts determined in the Plan Trustee's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement. As provided in the Plan, Plan Trust Beneficiaries shall, as a condition to receiving distributions, provide such information and take such steps as the Plan Trustee may reasonably require to ensure compliance

with withholding and reporting requirements and to enable the Plan Trustee to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

5.2 Manner of Payment or Distribution. All distributions made by the Plan Trustee to Plan Trust Beneficiaries shall be payable to the holders of Plan Trust Interests of record, or the holders of Disputed Claims of record which have become allowed, as of the 20th day prior to the date scheduled for the distribution, unless such day is not a Business Day; then such day shall be the next Business Day. If the distribution shall be in Cash, the Plan Trustee shall distribute such Cash by wire, check, or such other method as the Plan Trustee deems appropriate under the circumstances.

5.3 Delivery of Plan Trust Distributions. All distributions under this Trust Agreement to any Plan Trust Beneficiary shall be made at the address of such holder as set forth in the Register or at such other address as such holder of a Plan Trust Interest or an Allowed Claim shall have specified in writing to the Plan Trustee at least fifteen (15) days prior to such distribution date. In the event that any distribution to any holder is returned as undeliverable, the Plan Trustee shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Plan Trustee has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however,* that such undeliverable or unclaimed distributions shall be deemed Unclaimed Property at the expiration of 180 days from the date of distribution. The Plan Trustee shall reallocate any undeliverable or unclaimed distributions for the benefit of holders of all other Allowed Claims and reserve for Disputed Claims.

5.4 Cash Distributions. No Cash distributions shall be made if in an amount less than $25.00. Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent distributions. Notwithstanding the foregoing, all cash shall be distributed in the final distribution of the Plan Trust.

## ARTICLE 6

## CLAIMS RESOLUTION PROCESS

The Plan Trustee shall object to any claims by the Claims Objection Deadline. The Trustee may obtain an extension of the Claims Objection Deadline from the Bankruptcy Court. By not later than thirty (30) days after receipt of the Trustee's Claims Objection, Holders of Disputed Claims may dispute the decision of the Plan Trustee. The following steps may be taken to dispute the decision of the Plan Trustee as to the Allowed Amount of a Claim or whether a Claim is Allowed. At the option of the Holder of Disputed Claims, the Holder may pursue either:

(a) **Request for Reconsideration to the Plan Trustee**. The Holder may request in writing, by no later than thirty (30) days after service with the Plan Trustee's objection, that the Trustee reconsider the objection. The Holder must submit any additional evidence, documentation, or other materials to the Plan Trustee to support the request for reconsideration. The Plan Trustee shall issue a written decision documenting the outcome of the request for reconsideration.

(b) **Appeal to the Plan Trust Beneficiary Committee**. If the request for reconsideration is denied, the Holder may appeal the denial to the Plan Trust Beneficiary Committee, in writing by no later than thirty (30) days after service with the Plan Trustee's denial of reconsideration. The Holder must submit any additional evidence, documentation, or other materials to the counsel for the Plan Trust Beneficiary Committee to support the appeal. The Plan Trustee will provide the Plan Trust Beneficiary Committee with a written response to the appeal, and the evidence and materials in support of their determination. The appeal will be decided based upon the papers submitted. The Plan Trust Beneficiary Committee shall issue a written decision to the Holder and the Trustee.

(c) **Non-binding Arbitration**. If the Appeal to the Plan Trust Beneficiary Committee is denied, the Holder may seek ~~voluntary~~non-binding arbitration at the expense of the Liquidating Trust. Voluntary arbitration shall be before (ret.) Judge George Finkle of Judicial Dispute Resolution in Seattle, Washington. The Holder must request arbitration, in writing by no later than thirty (30) days after service with the Plan Trust Beneficiary Committee's written decision.

If Judge Finkle is unavailable, the Holder and the Trustee shall identify another mutually agreeable arbitrator. If the Holder and the Trustee cannot reach agreement on a another mutually agreeable arbitrator, the Bankruptcy Court may select another arbitrator from the Judicial Dispute Resolution roster. The type, manner and timing of the arbitration (in-person, by phone or video conference, or on the parties' written submissions), shall be determined by the arbitrator. The arbitrator shall issue a written decision on the arbitration to the Holder and the Trustee.

(d) **Judicial review by the Bankruptcy Court.** If the Holder's appeal is denied by the arbitrator, they may seek binding judicial review by the Bankruptcy Court. An appeal to the Bankruptcy Court must be filed within thirty (30) days of service of the arbitration decision on the Holder. A Holder may only appeal to the Bankruptcy Court after participating in non-binding arbitration.

(e) **Class 5 Claims Exempt from Claims Resolution Process**. Notwithstanding the foregoing, review of objections to Class 5 claims shall be only by the Bankruptcy Court.

(f) **Materiality.** Not withstanding any other provision of this Trust Agreement, at any time during the Claims Resolution Process, the Plan Trustee has the discretion resolve or settle disputes involving objections up to $500,000.00. Any proposed resolution or settlement of an objection to a claim of over $500,000.00 must be reviewed by the Plan Trust Beneficiary Committee.

## ARTICLE 7

## INDEMNIFICATION

7.1 Indemnification of the Plan Trustee and the Plan Trust Beneficiary Committee.

(a) To the fullest extent permitted by law, the Plan Trust, to the extent of its assets legally available for that purpose, shall indemnify and hold harmless the Plan Trustee and each of the members of the Plan Trust Beneficiary Committee and each of their respective directors, members, shareholders, partners, officers, agents, employees, attorneys and other professionals (collectively, the "Indemnified Persons") from and against any and all losses, costs, damages, reasonable and documented out-of-pocket expenses (including, without limitation, fees

and expenses of attorneys and other advisors and any court costs incurred by any Indemnified Person) or liability by reason of anything any Indemnified Person did, does or refrains from doing for the business or affairs of the Plan Trust, except to the extent that the loss, cost, damage, expense or liability resulted primarily from the Indemnified Person's recklessness, gross negligence, willful misconduct, breach of fiduciary duty or knowing violation of law. To the extent reasonable, the Plan Trust will pay in advance or reimburse reasonable and documented out-of-pocket expenses (including advancing reasonable costs of defense) incurred by the Indemnified Person who is or is threatened to be named or made a defendant or a respondent in a proceeding concerning the business and affairs of the Plan Trust.

(b) Any Indemnified Person may waive the benefits of indemnification under this Section 7.1, but only by an instrument in writing executed by such Indemnified Person.

(c) The rights to indemnification under this Section 7.1 are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including, without limitation, common law rights to indemnification or contribution. Nothing in this Section 7.1 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party.

## ARTICLE 8

## REPORTS TO PLAN TRUST BENEFICIARIES

8.1 Quarterly Reports.

(a) The Plan Trustee shall cause to be prepared as soon as practicable after the end of each quarter, financial statements of the Plan Trust as of the end of and for such periods, prepared in accordance with generally accepted accounting principles, including (i) a balance sheet of the Plan Trust, (ii) a statement of receipts, disbursements and distributions, (iii) a statement of profit and loss, (iv) a schedule summarizing by type investments and assets, indicating acquisitions and dispositions, and (v) a summary listing of the status of the resolution of Disputed Claims. In addition, such financial statements shall contain the following supplementary information: (vi) a statement of per unit Plan Trust Interest data consisting of net investment income, income distributed, net realized gains or losses and increases or decreases in

unrealized appreciation, net increases or decreases in net asset values, net asset values and the Plan Trust Interests outstanding as of the beginning and end of the period, (vii) a statement of changes in the number of Plan Trust Interests outstanding, including distributions and cancellations from whatever source, and (viii) a schedule of expenses, including accrued and paid expenses relating to the administration of the Plan Trust.

(b) Within 45 Business Days after the end of the relevant report preparation period in which the Trust is in existence, the Plan Trustee shall cause any information listed in Section 9.1(a) to be sent by electronic means to such holders, to the extent the Plan Trustee possesses the electronic addresses for each holder, posted on the Plan Trust's website and filed with the Court.

(c) The Plan Trustee may post any report required to be provided under this Section 9.1 on a website maintained by the Plan Trustee in lieu of actual notice to the Plan Trust Beneficiaries (unless otherwise required by law) subject to providing notice to the Persons listed in Section 2.1 herein.

## ARTICLE 9

## TERMINATION OF THE LIQUIDATION TRUST

9.1 Winding Up/Termination of the Plan Trust.

(a) After (i) the Plan Trust has been fully administered, (ii) all Disputed Claims have been resolved, (iii) all Causes of Action have been resolved, and (iv) all Trust Assets have been reduced to Cash or abandoned, the Plan Trustee shall make a final distribution of all Cash remaining in the Plan Trust to the Plan Trust Beneficiaries as set forth in Section 7.3 of the Plan, after reserving sufficient Cash to pay all unpaid expenses of the Plan Trust and all expenses reasonably expected to be incurred in connection with the final distribution.

(b) The Plan Trustee shall not unduly prolong the existence of the Plan Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Trust Assets, to make the distribution of Trust Assets to Plan Trust Beneficiaries in accordance with the terms hereof and to terminate the Plan Trust as soon as practicable. Without limiting the generality of the preceding sentence, the Plan Trust shall terminate at such time as (i) all of the

Trust Assets have been reduced to Cash and all of such Cash has been distributed to Plan Trust Beneficiaries in accordance with the terms of the Plan, and (ii) all distributions required to be made by the Plan Trustee under the Plan, the Confirmation Order and this Trust Agreement have been made, but in no event shall this Plan Trust be dissolved later than five (5) years from the Effective Date. Notwithstanding the foregoing, the Court upon motion by a party in interest on notice with an opportunity for a hearing at least six (6) months prior to the fifth anniversary of the Effective Date (or the end of any extended term approved by the Court) may extend, for a fixed period (not to exceed three (3) years, inclusive of any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Plan Trust as a liquidating trust for federal income tax purposes) the duration of the Plan Trust if the Court determines that such extension is necessary to facilitate the liquidation of the assets of the Plan Trust.

9.2 Continuance of Trust for Winding Up. After the termination of the Plan Trust and for the purpose of liquidating and winding up the affairs of the Plan Trust, the Plan Trustee shall continue to act as such until its duties have been fully performed. Prior to the final distribution of all of the remaining assets of the Plan Trust and upon approval of the Plan Trust Beneficiary Committee, the Plan Trustee shall be entitled to reserve from such assets any and all amounts required to provide for its own and the Plan Trust Beneficiary Committee's costs and expenses, in accordance with Sections 3.16 and 9.1(a) herein, until such time as the winding up of the Plan Trust is completed. Upon termination of the Plan Trust, the Plan Trustee shall retain for a period of two years the books, records, Plan Trust Beneficiary lists, Register, and certificates and other documents and files that have been delivered to or created by the Plan Trustee. At the Plan Trustee's discretion, all of such records and documents may, but need not, be destroyed two years after the completion and winding up of the affairs of the Plan Trust. Except as otherwise specifically provided herein, upon the termination of the Plan Trust, the Plan Trustee shall have no further duties or obligations hereunder.

# ARTICLE 10

# AMENDMENT AND WAIVER

10.1 Amendment and Waiver.

(a) The Plan Trustee may amend, supplement, or waive any provision of this Trust Agreement without notice to or the consent of any holder of Plan Trust Interests or an Allowed Claim or the approval of the Court for these purposes: (i) to cure any ambiguity, omission, defect or inconsistency in this Trust Agreement, provided that such amendments, supplements or waivers shall not adversely affect the distributions to be made under this Trust Agreement to any Plan Trust Beneficiary, adversely affect the U.S. federal income tax status of the Plan Trust as a "liquidating trust," or adversely affect the rights of the Committee under the Plan or this Trust Agreement; (ii) to comply with any requirements in connection with the U.S. federal income tax status of the Plan Trust as a "liquidating trust"; (iii) to comply with any requirements in connection with maintaining that the Plan Trust is not subject to registration or reporting requirements of the Exchange Act, or the Investment Company Act; and (iv) to evidence and provide for the acceptance of appointment hereunder by a successor trustee in accordance with the terms of this Trust Agreement and the Plan.

(b) Substantive amendments to this Trust Agreement – *i.e.*, those falling outside the scope of Section 10.1(a) above – may be made (or such provisions waived) by the Plan Trustee with the prior approval of the Plan Trust Beneficiary Committee or with the approval of the Court upon notice and an opportunity for a hearing; *provided, however,* that no change may be made to this Trust Agreement that would adversely affect the distributions to be made under this Trust Agreement to any holder of a Plan Trust Interest or an Allowed Claim, adversely affect the U.S. federal income tax status of the Plan Trust as a "liquidating trust" or adversely affect the rights of the Committee under the Plan or this Trust Agreement. Notwithstanding this Section 11.1, any amendments to this Trust Agreement shall not be inconsistent with the purpose and intention of the Plan Trust to liquidate in an expeditious but orderly manner the Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d).

## ARTICLE 11

## MISCELLANEOUS PROVISIONS

11.1 Intention of Parties to Establish the Plan Trust. This Trust Agreement is intended to create a liquidating trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Trust Agreement may be amended in accordance with Section 10.1 to comply with such federal income tax laws, which amendments may apply retroactively.

11.2 Prevailing Party. If the Plan Trustee, the Plan Trust Beneficiary Committee or the Plan Trust, as the case may be, is the prevailing party in a dispute with any Plan Trust Beneficiary or holder of a Plan Trust Interest regarding the provisions of this Trust Agreement or the enforcement thereof, such person shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action. To the extent that the Plan Trust has advanced such amounts, the Plan Trust may recover such amounts from the non-prevailing party.

11.3 Laws as to Construction. Except as otherwise provided hereby, this Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without reference to conflict of laws principles.

11.4 Jurisdiction. Without limiting any Person's right to appeal any order of the Court or to seek withdrawal of the reference with regard to any matter, the parties, including the members of the Plan Trust Beneficiary Committee and all Plan Trust Beneficiaries and holders of Plan Trust Interests, hereby consent to and submit to the exclusive jurisdiction and venue of the Court.

11.5 Severability. If any provision of this Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is

held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

11.6 Notices. Except as set forth in Section 3.8 or otherwise required by law, rule or regulation all notices, requests or other communications to the parties hereto shall be in writing and shall be sufficiently if sent by electronic communication to the email addresses or telefacsimile numbers below unless and until a change is communicated by conforming means:

If to the Plan Trustee, to:

Neil F. Luria
Liquidating Trustee
425 West New England Avenue, Suite 300
Winter Park, Florida 32789
Fax: 801-751-9537
E-mail: nluria@soliccapital.com

If to the Plan Trust Beneficiary Committee, to:

c/o Eleanor Hamburger
Counsel for the Plan Trust Beneficiary Committee
Sirianni Youtz Spoonemore Hamburger
3101 Western Avenue Suite 350
Seattle, WA 98122
Fax: 206-223-0246
E-mail: sharitymemberscommittee@sylaw.com

With a copy to:

[Debtor's designee]
Fax:
E-mail:

Any party from time to time may change its email address, facsimile number or other information for the purpose of notice by giving notice specifying such change to the other parties hereto.

11.7 Headings. The section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

11.8 Counterparts. This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

11.9 Confidentiality. The Plan Trustee and each successor trustee and each member of the Plan Trust Beneficiary Committee and each successor member of the Plan Trust Beneficiary Committee (each a "Covered Person") shall, during the period that they serve in such capacity under this Trust Agreement and following either the termination of this Trust Agreement or such individual's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the assets of the Plan Trust relates or of which it has become aware in its capacity (the "Information"), including but not limited to protected health information as defined in the Health Insurance Portability and Accountability Act, except to the extent disclosure is required by applicable law, order, regulation or legal process. In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand or similar legal process) to disclose any Information, such Covered Person shall notify the Plan Trust Beneficiary Committee reasonably promptly (unless prohibited by law) so that the Plan Trust Beneficiary Committee may seek an appropriate protective order or other appropriate remedy or, in its discretion, waive compliance with the terms of this Section (and if the Plan Trust Beneficiary Committee seeks such an order, the relevant Covered Person will provide cooperation as the Plan Trust Beneficiary Committee shall reasonably request). If no such protective order or other remedy is obtained, or the Plan Trust Beneficiary Committee waives compliance with the terms of this Section and any Covered Person is nonetheless legally compelled to disclose the Information, the Covered Person will furnish only that portion of the Information which the Covered Person, advised by counsel, is legally required to furnish and will give the Plan Trust Beneficiary Committee written notice (unless prohibited by law) of the Information to be disclosed as far in advance as practicable and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information.

11.10 Entire Agreement. This Trust Agreement (including the Premises), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties hereto and

there are no representations, warranties, covenants or obligations except as set forth herein or therein. This Trust Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise specifically provided herein, in the Plan or in the Confirmation Order, nothing in this Trust Agreement is intended or shall be construed to confer upon or to give any person other than the parties thereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Trust Agreement.

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Trust Agreement or caused it to be executed and acknowledged on their behalf by their duly-authorized officers all as of the date first above written.

**Sharity Ministries, Inc.**

By:____________________________________
Name:
Title:

**[Neil F. Luria, as Liquidating Trustee]**

~~By:~~
~~Name:~~
~~Title:~~

**OFFICIAL COMMITTEE OF MEMBERS**

By:____________________________________
Name: Cynthia Powers
Title: Committee ~~Co-chair~~Chair

Document comparison by Workshare 9.5 on Thursday, November 18, 2021 5:15:11 PM

| Input: | |
|---|---|
| Document 1 ID | file://S:\wdox\LRCDocs\1325\002\MISC\~VER\2\W0066269.DOCX |
| Description | W0066269 |
| Document 2 ID | file://S:\wdox\LRCDocs\1325\002\MISC\W0066269.DOCX |
| Description | W0066269 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 20 |
| Deletions | 9 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 29 |

# **EXHIBIT C**

# IDENTITY OF LIQUIDATING TRUSTEE

Liquidating Trustee

1. Neil F. Luria

# **EXHIBIT C-1**

SOLIC Capital Advisors, LLC
425 West New England Avenue
Suite 300
Winter Park, Florida 32789

***Draft of November 17, 2021***

**December __, 2021**

**PERSONAL AND CONFIDENTIAL**

Sharity Ministries Liquidating Trust
[Insert Address]
Attn: Liquidating Trustee

Re: Engagement of SOLIC Capital Advisors, LLC ("SCA")

Neil:

This letter outlines the understanding between SCA and the Sharity Ministries, Inc. Liquidating Trust (the "Liquidating Trust") for the engagement of SCA (this "Engagement") to perform certain services for the Liquidating Trust in connection with its ongoing liquidation efforts.

Sharity Ministries, Inc. (the "Debtor") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Chapter 11 Case") on July 8, 2021 in the U.S. Bankruptcy Court for District of Delaware, in Wilmington, Delaware (the "Bankruptcy Court"). During the Chapter 11 Case, the Debtor was authorized to retain SCA to provide certain support services to assist the Debtors in their restructuring efforts. By Order dated December __, 2021, the Debtors' Plan of Liquidation pursuant to Chapter 11 of the Bankruptcy Code [ECF No. __] (the "Plan")[1] was confirmed by the Bankruptcy Court, and the Plan became effective on the date hereof. The parties hereto desire to enter into this engagement letter (this "Engagement Letter") effective as of the date hereof to provide the terms under which SCA will provide the services of the Liquidating Trustee and the services of additional SCA support staff to assist the Liquidating Trustee in the execution of his duties. SCA shall act under the authority of the Liquidating Trustee and the Liquidating Trust Agreement (as defined in the Plan) to, among other things, coordinate, oversee, and direct the resources necessary to execute the mission of the Liquidating Trust.

1. <u>Scope of Services</u>

Pursuant to the Engagement, SCA's role will specifically include providing the services of the Liquidating Trustee and working with the Liquidating Trustee with respect to the following (the "Liquidating Trust Administrative Services"):

- Providing the services of Neil F. Luria as the Liquidating Trustee;
- Administration of cash management services, including check writing and wire transfers for outstanding professional fee or vendor invoices and any creditor distributions;

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

- Maintenance of financial books and records and preparation of applicable financial analyses as deemed necessary;

- Preparation and submission of post confirmation operating reports to the United States Liquidating Trustee and the Bankruptcy Court;

- Providing information to the Liquidating Trust's third-party tax preparer necessary to produce any necessary tax filings;

- Research and reconciliation of filed claims (subject to materiality standards to be agreed upon with the Plan Trust Beneficiary Committee (as defined in the Liquidating Trust Agreement)) and responses to inquiries from counsel on member specific claim amounts;

- Maintenance of the Debtor's databases containing member contribution and share requests/

- Development of creditor recovery scenario analyses of anticipated proceeds available to various creditor classes (i.e., administrative claims, priority claims, and unsecured creditor claims);

- Assistance to counsel to review potential litigation strategies for maximization of recoveries for the Plan Trust Beneficiaries (as defined in the Liquidating Trust Agreement);

- Review of avoidance actions and prosecutions thereof; and

- Discussions and provision of information to State Attorney Generals and the US Department of Justice to the extent requested by the Liquidating Trustee or the Plan Trust Beneficiary Committee (or their attorneys).

- Provide other logistical and administrative support to the Liquidating Trust Committee, including but not limited to scheduling Committee meetings, educating Committee members along with Trust Counsel about key administrative issues, responding to questions and other inquiries from Plan Trust Beneficiary Committee members.

SCA will provide the Liquidating Trust Administrative Services of the Liquidating Trustee in accordance with the terms of the Liquidating Trust Agreement and the Plan. In accordance with and subject to the terms of the Liquidating Trust Agreement, SCA and the Liquidating Trustee shall be authorized to make decisions with respect to all aspects of the management and operation of the Liquidating Trust as they deem necessary or appropriate in a manner consistent with the business judgment rule and the provisions of local law and the United States Bankruptcy Code applicable to the obligations of persons acting on behalf of corporations or similar entities.

SCA's ability to perform this Engagement will depend upon the extent of cooperation that it receives from the Liquidating Trust, and the Liquidating Trust's advisors and representatives, including its legal counsel and accountants. In this regard, the Liquidating Trust agrees to provide SCA full cooperation and access to financial, business and other information concerning the Liquidating Trust which SCA reasonably deems appropriate. In addition to open access to all such information (including documents and financial records (or projections)), SCA will have full use and access to all work performed

by prior financial advisors and management consultants, as well as any outside accounting and analyst reports and work papers, all valuation analyses, due diligence materials and other related materials which are (or could be) available to the Liquidating Trust, to the extent it is within the Liquidating Trust's control or possession (all such information and materials, documents and records being referred to as "Liquidating Trust Information"). SCA agrees that, except as may otherwise be required by law, SCA will keep confidential and not disclose to third parties (other than representatives or independent contractors retained by SCA or as may be required by court order or law) Liquidating Information that is confidential or proprietary to the Liquidating Trust and that SCA will use the same only in the performance of its duties under this Engagement.

SCA will begin this Engagement immediately upon (i) receipt of this executed engagement letter and the attached Indemnity Agreement, (ii) receipt by SCA of the first Monthly Fee (as defined below), (ii) receipt by SCA of the Retainer (as defined below), and (iii) the receipt from the Liquidating Trust of insurance policies described below (which policies must be satisfactory to SCA).

2. Hourly Fees and Expenses

As compensation for SCA's Liquidating Trust Administrative Services, SOLIC will be paid a monthly fee (the "Monthly Fee") of $30,000 per month for the first three months of services hereunder and $7,000 per month for such services provided thereafter. In each case, each such payment will be in advance in immediately available funds (via the wire instructions set forth on Exhibit A attached hereto) with the first Monthly Fee payable upon execution hereof, with subsequent Monthly Fees payable on the monthly anniversary of the execution hereof. SCA professionals will maintain time entries related to their provision of Liquidating Trust Administrative Services. SOLIC and the Liquidating Trust agree that they will from time-to-time review and compare the amount of effort from SCA professionals to the amount of the Monthly Fee and prospectively adjust the amount of the Monthly Fee (up or down) based upon mutual agreement with the Plan Trust Beneficiary Committee of the Liquidating Trust.

The Monthly Fee is not intended to compensate SOLIC for services outside of the Liquidating Trust Administrative Services, with such outside service including litigation related services and significant updating of the members database, as necessary. The amount of the Monthly Fee is predicated on the following:

a. The Liquidating Trust will continue to retain BMC Group as claims agent who will continue to handle the claims register and interactions with former members on member-specific claims issues and associated duties in accordance with their engagement letter previously approved by the Bankruptcy Court;
b. The Liquidating Trust will continue to retain Stevens & Lee, P.C. or other experienced Delaware bankruptcy counsel selected by the Plan Trust Beneficiary Committee who will work with SCA on Plan administrative matters; and
c. The Liquidating Trust will retain a third-party tax preparation firm to prepare any necessary tax filings

To the extent that the Liquidating Trust desires additional support (beyond the Liquidating Trust Administrative Services) or litigation related services (which will include, without limitation, services related to discovery, forensic accounting, document review, mediations, arbitrations, hearings, depositions, trials, etc.) from SCA, then SCA and the Liquidating Trust will enter into an amendment to this Engagement Letter which will memorialize mutually agreeable terms for SCA's compensation for such services.

The Liquidating Trust will pay to SCA upon execution of this Agreement an advance fee retainer in the amount of $30,000 (per the instructions set forth in "Exhibit A" attached hereto) (the "Retainer"). SCA will apply the Retainer to each invoice rendered by SCA. The Liquidating Trust will pay SCA any balance due upon receipt of SCA's invoice each month and will replenish the Retainer with SCA each month in the amount of all payments made to SCA from the Retainer. Notwithstanding the foregoing, following the payment of the initial three (3) monthly payments, the Retainer will be reduced to $7,000 and SCA will apply its Monthly Fee against the Retainer until the Retainer is reduced to $7,000.

The Liquidating Trust further agrees that the amount of the Retainer held by SCA will be $30,000 during the first three months and may be lowered to not less than $7,000, at all times thereafter and that the Liquidating Trust will, from time to time, remit to SCA such additional amounts as may be necessary to maintain the total amount of the Retainer currently held by SCA at or above the current advance fee retainer amount.

SCA's additional expenses, apart from the Monthly Fee, will be billed separately as incurred. Generally, these expenses include any travel related expenses, document production, fax transmissions, teleconferencing charges and other expenses of this type which are associated with this Engagement. All reasonable expenses will be paid and reimbursed via wire transfer (per instructions set forth on Exhibit A attached hereto) within seven (7) business days of receipt of the applicable SCA invoices by the Liquidating Trust.

In all cases, any payments of the Liquidating Trustee's Compensation hereunder will be subject to and pursuant to the terms of the Liquidating Trust Agreement and the Plan.

3. Miscellaneous

SCA will act under this engagement letter as an independent contractor with duties solely to the Liquidating Trust. Because we will be acting on your behalf in this capacity, it is our practice to receive indemnification. A copy of our standard indemnity form is attached hereto as Exhibit B ("Indemnity Agreement") and must be executed concurrently with this engagement letter. The terms of the Indemnity Agreement are incorporated by reference into this engagement letter. The total liability of SCA, its parent, subsidiaries, officers, members, employees, and agents for all claims of any kind arising out of the Engagement, whether in contract, tort or otherwise, shall be limited to the total fees paid to SCA under this Agreement except to the extent that such liability is finally judicially determined to have resulted solely from SCA's fraud, gross negligence or willful misconduct.

Any advice or opinions provided by SCA in its capacity as financial advisor (i.e., not as Liquidating Trustee) may not be disclosed or referred to publicly or to any third party except in accordance with SCA's prior written consent. It is further understood that any advice rendered by SCA pursuant to this Engagement in its capacity as financial advisor (i.e., not as Liquidating Trustee), including any advice rendered during the course of participating in negotiations and meetings with management, the Plan Trust

Beneficiary Committee, as well as any written materials provided by SCA, are intended solely for the benefit and confidential use of the Liquidating Trust (and their professionals or agents, including professionals and agents of Advisory Board members) and will not be reproduced, summarized, described or referred to or given to any other person for any purpose without the Plan Trust Beneficiary Committee's and SCA's prior written consent. Notwithstanding the foregoing, to the extent that any materials are intended to be protected by the attorney/client privilege, the parties hereto will work with counsel to develop appropriate mechanisms to protect such information.

The Liquidating Trust acknowledges and agrees that (i) SCA is not being retained to advise the Liquidating Trust on, or to express any opinion as to, the wisdom, desirability or prudence of consummating a recapitalization, re-structuring, reorganization or other transaction and (ii) SCA is not and will not be construed as a fiduciary of the Liquidating Trust or any affiliate thereof and, other than as provided by this agreement, will have no duties or liabilities to the Beneficiaries or creditors of the Liquidating Trust, any affiliates of the Liquidating Trust or any other person by virtue of this Engagement and the retention of SCA hereunder, all of which duties and liabilities are hereby expressly waived. Holders of beneficial interests in the Winddown Entities are not intended beneficiaries hereunder. Notwithstanding the foregoing, SCA acknowledges that Neil F. Luria is serving in a fiduciary capacity as Liquidating Trustee and other SCA professionals may serve, at the discretion of the Liquidating Trustee, as administrators of the Liquidating Trust or officers of the Liquidating Trust in connection with the Liquidating Trustee's efforts hereunder. The Liquidating Trust confirms that it will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other similar advice.

SCA and its officers, employees, representatives and agents will be entitled to the benefit of the most favorable indemnities the Liquidating Trust is legally able to provide. The Liquidating Trust agrees that it will use its best efforts to specifically include and cover the Plan Trust Beneficiary Committee members, the Liquidating Trustee and any other SCA employees serving in a fiduciary capacity under the Liquidating Trust's liability policy for directors' and officers' insurance.

The terms of this Engagement Letter shall be construed, interpreted and applied in accordance with the laws of the State of Delaware and the United States Bankruptcy Code. SCA and the Liquidating Trust irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court for the purpose of any suit, action or other proceeding arising out of the Engagement which is brought by or against SCA or the Liquidating Trust. The Liquidating Trust (and, to the extent permitted by law, on behalf of the Liquidating Trust's beneficiaries and creditors) and SCA hereby knowingly, voluntarily and irrevocably waive any right they may have to a trial by jury in respect of any claim based upon, arising out of or in connection with this engagement letter.

This Engagement Letter, and any modification or amendment thereto, may be executed in counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument.

Either the Liquidating Trust or SCA may terminate this Engagement Letter upon three (3) days' written notice; *provided, however*, that (i) all fees and expense reimbursement due through the effective date of termination will be paid within three (3) business days after the effective date of termination and the Retainer will be deemed earned, and (ii) no termination of this Engagement Letter will affect SCA's right to payment of fees or expense reimbursement pursuant to Section 2 or the indemnification contemplated by the Indemnity Agreement.

All notices required or permitted to be delivered under this Engagement letter shall be sent, if to us, to the address of SCA's Winter Park, Florida office as set forth at the head of this letter, to the attention of Mr. Neil F. Luria, and if to the Liquidating Trust, to the address for you set forth above, to the attention of the Liquidating Trustee, with copies to Liquidating Trust bankruptcy counsel, or to such other name or address as may be given in writing to the other party. All notices under this Engagement Letter shall be in written or printed form and be sufficient if delivered by email, facsimile or overnight express carrier. Any notice shall be deemed to be given only upon actual receipt.

This Engagement Letter may only be assigned by SCA so long as the assignee agrees to be bound by the terms hereof and may only be modified, amended or waived by a writing signed by the parties hereto.

If the terms of our engagement as set forth in this letter are satisfactory, kindly sign the enclosed copy of this letter along with the attached Indemnity Agreement and return executed copies to me by electronic mail or fax with originals by overnight mail.

Very truly yours,

SOLIC CAPITAL ADVISORS, LLC

By:______________________________

Neil F. Luria
Senior Managing Director

Accepted, acknowledged and agreed to:

SHARITY MINISTRIES LIQUIDATING TRUST

By:______________________________

Name:
Title:

**Exhibit B**

**May 21, 2021**

SOLIC Capital Advisors, LLC
425 West New England Avenue
Suite 300
Winter Park, Florida 32789

Ladies and Gentlemen:

This letter will confirm that in connection with the engagement (the "Engagement") of SOLIC Capital Advisors, LLC ("SCA") by the Sharity Ministries Liquidating Trust (the "Liquidating Trust") as reflected in the engagement letter dated the date hereof (all capitalized terms used but not otherwise defined herein having meanings described in such engagement letter), the Liquidating Trust agrees to indemnify and hold harmless SCA and its affiliates and their respective members, officers, directors, employees and agents and each other person, if any, controlling SCA or any of its affiliates (each referred to herein as an "Indemnified Person") to the fullest extent permitted by law from and against any losses, claims, damages, obligations, penalties, judgments, awards, costs, disbursements or liabilities, including amounts paid in settlement (collectively, "Losses"), based upon, related to, arising out of or in connection with the Engagement, and will reimburse each Indemnified Person for all expenses (including fees and expenses of counsel) ("Expenses") as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation, or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party. Furthermore, to the extent permitted by law, the Liquidating Trust will pay SCA at its standard hourly rates for any SCA professional time incurred in connection with any action, claim, suit, investigation or proceeding described in the foregoing sentence. Notwithstanding the foregoing, in no event shall the Liquidating Trust be responsible for any Losses or Expenses that arise out of or in connection with the Engagement which are finally judicially determined to have resulted primarily and directly from the fraud, willful misconduct or gross negligence of any Indemnified Person.

If any litigation, investigation or proceeding is commenced as to which SCA proposes to demand indemnification, SCA will notify the Liquidating Trust with reasonable promptness; *provided, however*, that any failure by SCA to notify the Liquidating Trust will relieve the Liquidating Trust from its obligations hereunder only to the extent the Liquidating Trust have been materially prejudiced by such failure or delay. SCA will have the right to retain counsel (and local counsel, if appropriate) of its own choice to represent it, and the Liquidating Trust will pay the fees, expenses and disbursements of such counsel, subject to the limitations set forth above. The Liquidating Trust retain the right to participate in the defense of such litigation, investigation or proceeding as to which SCA seeks indemnification through counsel of the Liquidating Trust's choice (the cost of which will be paid by the Liquidating Trust) and SCA will reasonably cooperate with such counsel and the Liquidating Trust (including, to the extent possible and consistent with its own interests, keeping the Liquidating Trust reasonably informed of such defense). The Liquidating Trust will be liable for any settlement of any claim against SCA arising out of the Engagement made with the Liquidating Trust's written consent, which consent will not be unreasonably withheld.

If, for any reason, the foregoing indemnification is unavailable to any of the Indemnified Parties or is insufficient to hold them harmless in respect of any Losses or Expenses, then the Liquidating Trust will contribute to the amount paid or payable by any of the Indemnified Parties as a result of such Losses and Expenses in such proportion as is appropriate to reflect the relative benefits (or anticipated benefits) to the Winddown Entities on the one hand and the Indemnified Parties on the other hand from the matter giving rise to the need for indemnification, or if such allocation is not permitted by applicable law, then in such proportion as is appropriate to reflect not only the relative benefits received by the Liquidating Trust and beneficiaries on the one hand and the Indemnified Parties on the other hand, but also the relative fault of the Liquidating Trust and their advisors (other than SCA) on the one hand and the Indemnified Parties on the other hand, as well as any other relevant equitable considerations. The relative benefits received (or anticipated to be received) by the Liquidating Trust and their beneficiaries on the one hand and by the Indemnified Parties on the other hand will be deemed to be in the same proportion as such benefit bears to the total fees paid to SCA pursuant to the Engagement related to the matter giving rise to the need for indemnification. The relative fault of any party or other person will be determined by reference to such party's or person's knowledge, access to information and opportunity to prevent or correct any misstatement, omission, misconduct or breach of duty. In no event will the amount required to be contributed by the Indemnified Parties hereunder exceed the total amount of fees paid to SCA pursuant to the Engagement. You and we agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

The reimbursement, indemnity and contribution obligations of the Liquidating Trust hereunder will (i) be in addition to any liability which the Liquidating Trust may otherwise have, (ii) survive the completion or termination of SCA's engagement under the Engagement and (iii) shall be binding upon any successors and assigns of the Liquidating Trust. The Liquidating Trust agree that without the prior written consent of SCA, they will not consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claims, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless (i) such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Person from any and all claims and liabilities arising out of such action, claim, suit or proceeding and (ii) there is no statement in connection therewith as to an admission of fault, culpability or failure to act by or on behalf of any Indemnified Party.

The provisions of this agreement shall apply to the Engagement and any written modification thereof signed by the parties and shall remain in full force and effect regardless of any termination or the completion of SCA's services under the Engagement.

This agreement will be deemed made in Delaware. The validity and interpretation of this agreement will be governed by, and construed and enforced in accordance with, the laws of the State of Delaware (excluding the conflicts of laws rules) and the United States Bankruptcy Code. The parties irrevocably submit to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware for the purpose of any suit, action or other proceeding arising out of this agreement which is brought by or against the Liquidating Trust. Each of the Liquidating Trust and SCA and any Indemnified Person hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with this agreement.

Very truly yours,

SHARITY MINISTRIES LIQUIDATING TRUST

By:______________________________
Name:
Title:

Accepted, acknowledged and agreed to:

SOLIC CAPITAL ADVISORS, LLC

By:______________________________
Neil F. Luria
Senior Managing Director