# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SHARITY MINISTRIES, INC.,[1] | Case No.: 21-11001 (JTD) |
| Debtor. | Ref. No. 315 |

## DECLARATION OF NEIL F. LURIA IN SUPPORT OF CONFIRMATION OF THE COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF SHARITY MINISTRIES INC.

I, Neil F. Luria, hereby submit this declaration (the "Declaration") and declare under the penalty of perjury that the following information is true and correct to the best of my knowledge, information and belief:

1.  I am a Senior Managing Director of SOLIC Capital Advisors LLC ("SOLIC") and the Co-Chief Restructuring Officer ("CRO") of the above-captioned debtor and debtor-in-possession (the "Debtor"). I am duly authorized to make this Declaration on behalf of the Debtor.

2.  I submit this Declaration in support of final approval and confirmation of the *Combined Disclosure Statement* ("Disclosure Statement") *and Chapter 11 Plan of Liquidation of Sharity Ministries Inc.* (the "Plan," and together with the Disclosure Statement, the "Combined Plan and Disclosure Statement"), dated November 29, 2021 [D.I. 315].[2] Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, information provided by professionals or consultants retained by the Debtor, or information I obtained by reviewing relevant documents.

---

[1] The last four digits of the Debtor's federal tax identification number is 0344. The Debtor's mailing address is 821 Atlanta Street, Suite 124, Roswell, GA 30075.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Declaration of Neil F. Luria in Support of Chapter 11 Petitions and First Day Motions* [D.I. 5] (the "First Day Declaration"), the Plan or the Disclosure Statement, as applicable.

{1325.002-W0066438.}

3. I am not being compensated specifically for this testimony other than through payments received as the CRO for the Debtor in this Chapter 11 Case. If called upon to testify, I could and would testify competently as to the facts set forth herein.

4. SOLIC's personnel, including myself, specialize in the business of providing restructuring, financial advisory and distressed asset management services. SOLIC's debtor-advisory services and its personnel's experiences have included a wide range of activities targeted at stabilizing and improving a company's financial position in both in-court and out-of-court engagements similar to the Debtor's in the State of Delaware and elsewhere. SOLIC's professionals have experience working on cases with similar fact scenarios in which they were presented with issues and performed analyses similar to the work at hand in this Chapter 11 Case.

5. I have served as the Debtor's CRO since July 2021, prior to which I, along with my colleagues at SOLIC, provided financial advisory services to the company since April 2021. During the course of my engagement with the Debtor, including in my capacity as CRO, I, along with additional SOLIC personnel, have assisted the Debtor with financial advisory and management services. During that time, I gained a comprehensive understanding of the Debtor's business and corporate governance structure, as well as the Debtor's business, day-to-day operations and financial affairs. I, or others under my supervision, have participated directly in discussions, due diligence and negotiations with the Debtor's outside counsel, other advisors and parties in interest and their representatives regarding the Plan.

6. In making the statements and arriving at the conclusions set forth herein, I have relied upon and/or considered, among other things, the following: (a) my knowledge of the Debtor's business, operations, Assets and liabilities; (b) my experience in chapter 11 cases generally, including the restructuring of businesses and liquidation of assets through chapter 11;

(c) the Plan; (d) the Disclosure Statement; (e) my discussions with the Debtor; and (f) my discussions with the Debtor's Creditors and other interested parties.

***The Plan Satisfies the Plan Confirmation Requirements Under Bankruptcy Code Section 1129***

7.  Based on the foregoing, I believe that the Plan satisfies all applicable provisions of the Bankruptcy Code and should be confirmed.

8.  **The Plan Complies with Bankruptcy Code Section 1129(a)(1).**  I understand that a plan may be confirmed only if "[t]he plan complies with the applicable provisions of [the Bankruptcy Code]."  I further understand that the primary focus of this requirement is to ensure that a plan complies with Bankruptcy Code sections 1122 and 1123, which govern classification of claims and interests and the contents of a plan, respectively.

9.  I understand that, under Bankruptcy Code section 1122, a plan may classify various claims and interests into different classes, so long as all the claims and interests in a particular class are substantially similar.  It is my understanding that valid business, factual, and legal reasons exist for classifying the Claims and Interests into separate classes under the Plan and that the Claims or Interests in each particular class are substantially similar.  Similar Claims and Interests have not been placed into different classes in order to affect the outcome of the vote on the Plan.  Accordingly, I believe that the Plan satisfies Bankruptcy Code section 1122.

10.  Furthermore, I understand that Bankruptcy Code section 1123(a) requires that a chapter 11 plan: (a) designate classes of claims and interests; (b) specify unimpaired classes of claims and interests; (c) specify treatment of impaired classes of claims and interests; (d) provide for equality of treatment within each class; (e) provide adequate means for the plan's implementation; (f) provide for the prohibition of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and (g) contain only

provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors. I understand that the Plan satisfies each of these requirements, to the extent applicable. Article VI of the Plan designates six (6) separate Classes of Claims and Interests, as required by Bankruptcy Code section 1123(a)(1). Article VI and Article VII of the Plan specify that the Claims in Classes 1 and 2 are unimpaired under the Plan, as required by Bankruptcy Code section 1123(a)(2). Article VI and Article VII further specify that the Claims or Interests in Classes 3 through 6 are impaired and describes the treatment of each such Class in accordance with Bankruptcy Code section 1123(a)(3). Further, as required by Bankruptcy Code section 1123(a)(4), the treatment of each Claim or Interest within a Class is either (i) the same as the treatment of each other Claim or Interest in such class or (ii) otherwise consistent with the legal rights of such claimant. In accordance with the requirements of Bankruptcy Code section 1123(a)(5), the Plan provides adequate means for its implementation through Article X and various other provisions. Specifically, the Plan provides for, among other things: (a) the dissolution of the existing board of directors or managers, as applicable, of the Debtor; (b) the establishment of the Liquidating Trust and appointment of the Liquidating Trustee; and (c) the exemption from certain transfer taxes. Finally, the Plan complies with Bankruptcy Code section 1123(a)(7) in that it appoints a Liquidating Trustee who will serve as the sole officer, director, and manager, as applicable, following the Effective Date. This appointment is consistent with the interests of Creditors as the Debtor is liquidating and the remaining matters for the Liquidating Trust will involve implementing the Plan transactions and winding down the Debtor's affairs and closing the Chapter 11 Case.

11. I believe that the discretionary contents of the Plan are appropriate under Bankruptcy Code section 1123(b). The Plan includes various provisions that fall under the broad spectrum of Bankruptcy Code section 1123(b). For instance, the Plan impairs Classes 3 through 6, leaving Classes 1 and 2 unimpaired. *See* Plan Art. VI. The Plan further provides for the treatment of executory contracts and unexpired leases to which the Debtor is a party. *See* Plan Art. XII. I understand that the Plan includes other provisions designed to ensure its implementation that are consistent with the Bankruptcy Code, including the provisions of: (a) Article XI, regarding distributions from the Debtor's estate and (b) Article XV, regarding retention of jurisdiction by the Court over certain matters after the Effective Date. I understand that each of these provisions is appropriate under applicable law, including sections 1123(b)(1), (3) and (6).

12. **The Plan Complies with Bankruptcy Code Section 1129(a)(2).** I believe that the Debtor has complied with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, as modified by the Court's *Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* [D.I. 263] (the "Interim Approval and Procedures Order") governing notice, disclosure and solicitation in connection with the Plan and the Disclosure Statement. The certificates of service filed reflecting compliance with the notice and solicitation requirements of the Interim Approval and Procedures Order shows that the Debtor has complied with such solicitation and disclosure requirements. *See Certificate of Service* [D.I. 284] and *Supplemental Certificate of Service* [D.I. 309]. I also understand that the Debtor caused to be mailed the Confirmation Hearing Notice in accordance with the Interim Approval and Procedures Order. Accordingly, to the best of my

knowledge, the Debtor has complied with all applicable disclosure and solicitation requirements set forth in the Bankruptcy Code and the Bankruptcy Rules, as modified by the Interim Approval and Procedures Order.

13. **The Plan is Proposed in Good Faith Pursuant to Bankruptcy Code Section 1129(a)(3)**. I understand that, under Bankruptcy Code section 1129(a)(3), a plan must be "proposed in good faith and not by any means forbidden by law." The Debtor structured and proposed the Plan in a manner that effectuates the objectives and purposes of the Bankruptcy Code. I believe that the Plan contains no provisions that are contrary to state or other laws nor is there any indication the Debtor lacks the ability to consummate the Plan. I understand that Classes 3, 4 and 5 (which are the sole Voting Classes) voted to accept the Plan, which provides independent evidence of good faith. For these reasons, I believe the Plan was filed in good faith to further the purposes of the Bankruptcy Code, and I therefore believe that it satisfies the requirements of Bankruptcy Code section 1129(a)(3).

14. **The Plan Complies with Bankruptcy Code Section 1129(a)(4)**. I understand that Bankruptcy Code section 1129(a)(4) requires: "Any payment made . . . by the debtor . . . for services or for costs and expenses in or in connection with the case . . . has been approved by, or is subject to the approval of, the court as reasonable." Pursuant to the Plan, Interim Compensation Order and other orders of the Court, all Professional Fee Claims are subject to Court approval. Accordingly, I believe that the Plan complies with the requirements of Bankruptcy Code section 1129(a)(4).

15. **The Plan is in the Best Interests of Creditors and Interest Holders Under Bankruptcy Code Section 1129(a)(7)**. I understand that, to satisfy Bankruptcy Code section 1129(a)(7), the Debtor must demonstrate that with respect to each impaired class of claims or

interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain property having a present value, as of the effective date of the plan, of not less than what such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code at that time.

16. I also understand that the "best interests" test applies to individual dissenting creditors or interest holders, rather than classes of claims and interests, and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical liquidation of that debtor's estate under chapter 7 of the Bankruptcy Code against the estimated recoveries under that debtor's chapter 11 plan.

17. To satisfy the best interests test, I first projected the Debtor's unrestricted cash as of effectiveness, which was originally anticipated to occur on or about December 5, 2021. That amount would have to be reduced by the amount of any claims secured by the Debtor's Assets, the costs and expenses of the liquidation, and any additional administrative expenses and priority claims that may result from the termination of the Debtor's business and the use of chapter 7 of the Bankruptcy Code. Any remaining net cash would be allocated to Creditors in strict priority in accordance with Bankruptcy Code section 726.

18. For the reasons that follow, and based on the hypothetical liquidation analysis attached to the Plan as Exhibit B (the "Liquidation Analysis"), I believe that liquidation under chapter 7 of the Bankruptcy Code would result in smaller distributions to holders of Claims and Interests than those provided for in the Plan because of (a) additional administrative expenses required to be satisfied in chapter 7 prior to the payment of any chapter 11 administrative expenses or claims (including, without limitation, the fees and expenses of a Chapter 7 Trustee and his or

her professionals); and (b) the inability of a chapter 7 trustee to maximize the return to the Debtor's estate to the same degree, or as efficiently, as provided by the Plan.

19. The Liquidation Analysis was prepared by individuals at SOLIC working directly under my supervision. I am familiar with the Liquidation Analysis and the underlying financial data and assumptions upon which the Liquidation Analysis is based, which are accurately described in the Liquidation Analysis and notes thereto. I believe that the estimated liquidation values set forth in the Liquidation Analysis are fair and reasonable estimates of the value of the Debtor's Assets based on the assumptions set forth therein. I believe that the estimates as to the ultimate amount of allowed claims against, and expenses of, the hypothetical chapter 7 estate are fair and reasonable and, based on those estimates, combined with the estimated liquidation values of Assets, that each Class of Claims under the Plan will receive at least as much as that Class would receive in a hypothetical chapter 7 liquidation.

20. In addition, I have recently reviewed the Liquidation Analysis in light of all current information since its filing and continue to believe that the conclusions set forth therein remain unchanged as of the date hereof.[3] In light of all the information I have reviewed, I continue to believe that recoveries under the Plan for each Class of Claims under the Plan are more favorable to Creditors than under a hypothetical chapter 7 liquidation.

21. With respect to the Liquidation Analysis, we assumed that any liquidation of the Debtor's remaining Assets would be accomplished through conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code on or about December 5, 2021. We also assumed that the Bankruptcy Court would appoint a chapter 7 trustee on that hypothetical conversion date

---

[3] It is expected that the cash in the Estate that will be available on the Effective Date will be at least that amount as projected in the Liquidation Analysis, if not higher.

to oversee the liquidation of the Debtor's estate, during which time any of the Debtor's remaining Assets would be sold and the Cash proceeds, net of liquidation related costs, would then be distributed to Creditors in accordance with relevant law. There can be no assurance that the liquidation would be completed in a limited or expeditious time frame owing to, for example, the need for a chapter 7 trustee to become familiar with the Debtor's Assets, liabilities, books and records.

22. Additionally, we assumed that the costs of liquidation under chapter 7 of the Bankruptcy Code would include the fees payable to a chapter 7 trustee, as well as those fees that might be payable to attorneys and other professionals that such trustee would engage. The foregoing types of claims and other claims that might arise in a chapter 7 liquidation case (including claims from potentially redundant activities that could be engaged in by a chapter 7 trustee) or result from the pending Chapter 11 Case, including any unpaid expenses incurred by the Debtor during the Chapter 11 Case such as compensation for attorneys, brokers and financial advisors, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available for distributions to other Creditors.

23. After considering the effects that a liquidation under chapter 7 of the Bankruptcy Code would have on the ultimate proceeds available for distribution to the holders of Claims and Interests in this Chapter 11 Case, including the increased costs and expenses of a liquidation under chapter 7 of the Bankruptcy Code arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, it is my conclusion that confirmation of the Plan will provide each holder of a Claim with a recovery that is not less than what such holder would receive pursuant to a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

24.     **The Plan Complies with Bankruptcy Code Sections 1129(a)(8) and 1129(b).**

I understand that Bankruptcy Code section 1129(a)(8) requires that "with respect to each class of claims or interests — (A) such class has accepted the plan or (B) such class is not impaired under the Plan." As set forth in the *Declaration of Tinamarie Feil Regarding Voting and Tabulation of Ballots for the Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Sharity Ministries Inc.* [D.I. 312] (the "Voting Declaration"), the holders of Claims in Class 1 (Miscellaneous Secured Claims) and Class 2 (Priority Non-Tax Claims) are unimpaired under the Plan and, pursuant to Bankruptcy Code section 1126(f), are conclusively presumed to have voted to accept the Plan. Thus, the requirements of section 1129(a)(8) have been satisfied as to each of Classes 1 and 2. As set forth in the Voting Declaration, the holders of Claims in Classes 3 (Member Claims for Post-July 8, 2021 Payments), 4 (Member Claims and General Unsecured Claims) and 5 (Governmental Fines and Penalty Claims) voted to accept the Plan. Thus, as to the impaired and accepting Classes 3, 4 and 5, I believe that the requirements of section 1129(a)(8) likewise have been satisfied. Holders of Claims in Class 6 (Section 510(c)) are not entitled to receive or retain any property from the Debtor's estate under the Plan on account of their Claims and Interests and, therefore, are deemed to reject the Plan pursuant to Bankruptcy Code section 1126(g). I understand that the Plan nonetheless may be confirmed under the "cram down" provisions of section 1129(b) of the Bankruptcy Code. I understand that a plan may be confirmed notwithstanding the rejection by a class of claims or interests if the plan does not discriminate unfairly and is fair and equitable. It is my further understanding that (a) the "fair and equitable" requirement is satisfied if the holders of claims and equity interests in classes junior to the rejecting classes are not receiving any property under the plan, and (b) a plan does not discriminate unfairly if the legal rights of a dissenting class

are treated in a manner that is consistent with the treatment of other classes whose legal rights are substantially similar to those of that class. I believe that the Plan satisfies these requirements.

25. **The Plan Complies with Bankruptcy Code Section 1129(a)(9).** I understand that all administrative and priority claims against the Debtor will be satisfied in the manner required by section 1129(a)(9) of the Bankruptcy Code, unless such holder of a particular claim has agreed to different treatment of such claim.

26. **The Plan Complies with Bankruptcy Code Section 1129(a)(10).** The Voting Declaration shows that at least one Class of Claims that is impaired under the Plan voted to accept the Plan. Specifically, all of the Voting Classes – Classes 3 (Member Claims for Post-July 8, 2021 Payments), 4 (Member Claims and General Unsecured Claims) and 5 (Governmental Fines and Penalty Claims) voted to accept the Plan. Accordingly, I believe that the Plan complies with section 1129(a)(10) of the Bankruptcy Code.

27. **The Plan Complies with Bankruptcy Code Section 1129(a)(11).** Based on my knowledge of the Debtor and the terms of the Plan, I believe that the Plan is feasible. I understand that Bankruptcy Code section 1129(a)(11) provides that a court may confirm a plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." Because the Plan expressly provides for the liquidation of the Debtor's Assets and the proposed distribution of those Assets to Creditors holding Allowed Claims, I believe that the Plan satisfies Bankruptcy Code section 1129(a)(11).

28. **The Plan Complies with Bankruptcy Code Section 1129(a)(12).** The Plan provides that all fees required under 28 U.S.C. § 1930 will be paid on or prior to the Effective

Date. Based on my review of the Debtor's books and records, the Debtor has adequate means to make such payments, and therefore the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

29. **The Plan Complies with Bankruptcy Code Section 1129(c).** The Plan is the sole plan that has been proposed, and thus I believe that the requirement of section 1129(c) has been met.

30. **The Plan Complies with Bankruptcy Code Section 1129(d).** The Plan does not have, as one of its principal purposes, the avoidance of taxes or avoidance of requirements of section 5 of the Securities Act of 1933, and I am not aware of any filing by any governmental agency or other party in interest asserting such avoidance. Thus, I believe that the requirements of Bankruptcy Code section 1129(d) have been met.

*Other Plan Provisions Are Necessary and Appropriate*

31. **The Plan's Exculpation Provision Should Be Approved.** Article XIV of the Plan provides for a customary exculpation and limitation of liability provision (the "Exculpation Provision").

32. I believe that the proposed Exculpation Provision is appropriate based on the limitation of liability provided in Bankruptcy Code section 1125(e). The Exculpation Provision expressly and narrowly applies to the Exculpated Parties and only relates to Exculpated Claims in connection with the Chapter 11 Case. Accordingly, I believe that the Exculpation Provision should be approved as appropriate under Bankruptcy Code section 1125(e).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 29, 2021        */s/ Neil F. Luria*
                                Neil F. Luria, Chief Restructuring Officer
                                Sharity Ministries, Inc.