**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SHARITY MINISTRIES, INC.,[1] | Case No.: 21-11001 (JTD) |
| Debtor. | **Ref. Nos. 225, 263, 307 & 315** |

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF (A) FINAL APPROVAL OF**
**THE DISCLOSURE STATEMENT AND (B) CONFIRMATION OF THE PLAN**

**BAKER & HOSTETLER LLP**
Jorian L. Rose (admitted *pro hac vice*)
Jason I. Blanchard (admitted *pro hac vice*)
45 Rockefeller Plaza
New York, New York 10111

Andrew V. Layden (admitted *pro hac vice*)
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL  32801-3432

- and –

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Nicolas E. Jenner (No. 6554)
919 Market Street, Suite 1800
Wilmington, Delaware 19801

*Counsel for the Debtor and Debtor in Possession*

Dated:  November 30, 2021
        Wilmington, Delaware

---

[1] The last four digits of the Debtor's federal tax identification number is 0344. The Debtor's mailing address is 821 Atlanta Street, Suite 124, Roswell, GA 30075.

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ....................................................................................3

    I.      The Debtor's Business ...............................................................................3

    II.     Events Leading to the Bankruptcy Filing ................................................3

          A.     Unsustainable Third-Party Administrator Contracts and Operational Challenges ...................................................................3

          B.     Restructuring Efforts .....................................................................4

    III.    The Chapter 11 Case .................................................................................5

          A.     First Day Relief.............................................................................5

          B.     Schedules and Statements and the Bar Date Motion ...................5

          C.     Decision to Discontinue Operations .............................................6

          D.     The Plan and the Disclosure Statement ........................................6

    IV.    Responses to Confirmation of the Plan and Final Approval of the Disclosure Statement ...............................................................................8

THE DISCLOSURE STATEMENT SATISFIES THE  REQUIREMENTS OF BANKRUPTCY CODE SECTION 1125.................................................................8

THE PLAN MEETS ALL APPLICABLE CONFIRMATION REQUIREMENTS....................10

    I.      The Plan Complies with Bankruptcy Code section 1129(a).................11

          A.     Bankruptcy Code section 1129(a)(1) .........................................11

               1.     Bankruptcy Code section 1122 – Classification of Claims and Interests ................................................11

               2.     Compliance with Bankruptcy Code section 1123(a) – Mandatory Contents of the Plan .................................13

                3.     Bankruptcy Code section 1123(b) – Discretionary Contents of the Plan ......................................................15

           B.     Bankruptcy Code Section 1129(a)(2) .........................................16

C.  Bankruptcy Code section 1129(a)(3) ......................................................18

D.  Bankruptcy Code section 1129(a)(4) ......................................................20

E.  Bankruptcy Code section 1129(a)(5) ......................................................21

F.  Bankruptcy Code section 1129(a)(6) ......................................................21

G.  Bankruptcy Code section 1129(a)(7) ......................................................21

H.  Bankruptcy Code section 1129(a)(8) ......................................................24

I.  Bankruptcy Code section 1129(a)(9) ......................................................25

J.  Bankruptcy Code section 1129(a)(10) ....................................................27

K.  Bankruptcy Code section 1129(a)(11) ....................................................28

L.  Bankruptcy Code section 1129(a)(12) .....................................................29

M.  Bankruptcy Code section 1129(a)(13) ....................................................29

II.  Bankruptcy Code Section 1129(b)............................................................29

A.  The Plan Is Fair and Equitable with Respect to the Impaired
    Rejecting Class.................................................................................30

B.  The Plan Does Not Discriminate Unfairly with Respect to the
    Impaired Rejecting Class ..................................................................30

III.  Section 1129(c) – No Other Plan Has Been Proposed or Confirmed ..................32

IV.  Section 1129(d) – The Plan's Purpose Is Consistent with the Bankruptcy
     Code ..............................................................................................32

OTHER PLAN PROVISIONS ARE NECESSARY AND APPROPRIATE ..............................32

I.  The Plan's Exculpation Provision Is Appropriate and Should Be Approved ........32

WAIVER OF STAY ...........................................................................................34

CONCLUSION.................................................................................................36

# TABLE OF AUTHORITIES

**Cases**

*Century Glove, Inc. v. First Am. Bank N.Y.*,
    860 F.2d 94 (3d Cir. 1988) ............................................................................ 9

*CoreStates Bank, N.A. v. United Chem. Techs.*,
    202 B.R. 33 (E.D. Pa. 1996) ......................................................................... 19

*Fin. Sec. Assur. Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*,
    116 F.3d 790 (5th Cir. 1997) ........................................................................ 19

*Hanson v. First Bank of S.D.*,
    828 F.2d 1310 (8th Cir. 1987) ...................................................................... 18

*In re 203 N. LaSalle*,
    190 B.R. 567 (Bankr. N.D. Ill. 1995) ........................................................... 30

*In re Aleris Int'l, Inc.*,
    2010 Bankr. LEXIS 2997 (Bankr. D. Del. May 3, 2010) .............................. 28

*In re AOV Indus.*,
    31 B.R. 1005 (D.D.C. 1983) ......................................................................... 21

*In re Apex Oil Co.*,
    118 B.R. 683, 708 (Bankr. E.D. Mo. 1990) .................................................. 28

*In re Armstrong World Indus., Inc.*,
    348 B.R. 111, 120 (D. Del. 2006) ................................................ 10, 12, 21, 31

*In re Aztec Co.*,
    107 B.R. 585 (Bankr. M.D. Tenn. 1989) ...................................................... 31

*In re Block Shim Dev. Co.*,
    939 F.2d 289 (5th Cir. 1991) ........................................................................ 19

*In re Bowles*,
    48 B.R. 502 (Bankr. E.D. Va. 1985) ............................................................ 30

*In re Cellular Info. Sys., Inc.*,
    171 B.R. 926 (Bankr. S.D.N.Y. 1994); ........................................................ 28

*In re Century Glove, Inc.*,
    1993 LEXIS 2286 (D. Del. Feb. 10, 1993) ................................................... 19

*In re Combustion Eng'g, Inc.*,
    391 F.3d 190 (3d Cir. 2004) .................................................................... 18, 19

*In re Coram Healthcare Corp.*,
   271 B.R. 228 (Bankr. D. Del. 2001) ..................................................................... 18

*In re Coram Healthcare Corp.*,
   315 B.R. 321 (Bankr. D. Del. 2004) ............................................................... 12, 31

*In re Crdentia Corp.*,
   2010 Bankr. LEXIS 2838 (Bankr. D. Del. May 26, 2010) ................................... 20

*In re Crowthers McCall Pattern, Inc.*,
   120 B.R. 279 (Bankr. S.D.N.Y. 1990) .................................................................. 22

*In re Eagle-Picher Indus., Inc.*,
   203 B.R. 256 (S.D. Ohio 1996) ......................................................... 11, 12, 20, 22

*In re Econ. Lodging Sys., Inc.*,
   205 B.R. 862 (Bankr. N.D. Ohio 1997) ................................................................ 22

*In re Elm Creek Joint Venture*,
   93 B.R. 105 (Bankr. W.D. Tex. 1988) .................................................................. 28

*In re Freymiller Trucking, Inc.*,
   190 B.R. 913 (Bankr. W.D. Okla. 1996) .............................................................. 31

*In re HSH Del. GP LLC*,
   Case No. 10-10187 (MFW) (Bankr. D. Del. Jan. 18, 2011) ................................. 33

*In re Jartran, Inc.*,
   44 B.R. 331 (Bankr. N.D. Ill. 1984) ..................................................................... 22

*In re Jersey City Med. Ctr.*,
   817 F.2d 1055 (3d Cir 1987) ................................................................................ 12

*In re Johns-Manville Corp.*,
   68 B.R. 618 (Bankr. S.D.N.Y. 1986) ........................................................ 20, 28, 31

*In re Koelbl*,
   751 F.2d 137 (2d Cir. 1984) ................................................................................. 19

*In re Lernout & Hauspie Speech Prods., N.V.*,
   301 B.R. 651 (Bankr. D. Del. 2003) ..................................................................... 31

*In re Martin*,
   66 B.R. 921 (Bankr. D. Mont. 1986) .................................................................... 27

*In re Phoenix Petroleum Co.*,
   278 B.R. 385 (Bankr. E.D. Pa. 2001) ..................................................................... 9

*In re PWS Holding Corp.*,
  228 F.3d 224 (3d Cir. 2000) ........................................................................ 16, 34

*In re Revco*,
  131 B.R. 615 (Bankr. N.D. Ohio 1990) ......................................................... 29

*In re Rivers End Apartments, Ltd.*,
  167 B.R. 470 (Bankr. S.D. Ohio 1994); ......................................................... 28

*In re Texaco, Inc.*,
  84 B.R. 893 (Bankr. S.D.N.Y. 1988) ......................................................... 16, 28

*In re Toy & Sports Warehouse, Inc.*,
  37 B.R. 141 (Bankr. S.D.N.Y. 1984) ............................................................. 11

*In re Tranel*,
  940 F.2d 1168 (8th Cir. 1991 ........................................................................ 21

*In re Tribune Co.*,
  476 B.R. 843 (Bankr. D. Del 2012) ............................................................... 12

*In re Victory Constr. Co.*,
  42 B.R. 145 (Bankr. C.D. Cal. 1984) ............................................................ 22

*In re Zenith Elecs. Corp.*,
  241 B.R. 92 (Bankr. D. Del. 1999) ................................................................ 18

*In the Matter of Sound Radio, Inc.*,
  93 B.R. 849 (Bankr. D.N.J. 1988) ................................................................. 19

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
  987 F.2d 154, 158 (3d Cir. 1993) .................................................................. 12

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
  843 F.2d 636 (2d Cir. 1988) ..................................................................... 11, 28

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
  337 F.3d 314 (3d Cir. 2003) ............................................................................ 9

*Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*,
  115 F.3d 650 (9th Cir. 1997) ......................................................................... 31

*Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*,
  329 B.R. 491 (D.N.J. 2005), *aff'd*, 241 Fed. App'x. 1 (3d Cir. Aug. 2, 2007) .......................... 9

*McCormick v. Banc One Leasing Corp. (In re McCormick)*,
  49 F.3d 1524 (11th Cir. 1995) ....................................................................... 19

*Nordhoff Invs., Inc. v. Zenith Elecs. Corp.,*
    258 F.3d 180 (3d Cir. 2001) ................................................................................ 35

*Official Comm. of Unsecured Creditors v. Michelson (In re Michelson),*
    141 B.R. 715 (Bankr. E.D. Cal. 1992) ................................................................ 16

*Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.),*
    200 F.3d 154 (3d Cir. 1999) ................................................................................ 18

*Oneida Motor Freight, Inc. v. United Jersey Bank,*
    848 F.2d 414 (3d Cir. 1988) .................................................................................. 9

*Prudential Ins. Co. of Am. v. Monnier (In re Monnier Bros.),*
    755 F.2d 1336 (8th Cir. 1985) ............................................................................ 28

**Statutes**

11 U.S.C. § 1122 ...................................................................................................... 11

11 U.S.C. § 1123(a) ............................................................................................. 13, 14

11 U.S.C. § 1123(b) ............................................................................................. 15, 16

11 U.S.C. § 1125 ........................................................................................ 8, 9, 17, 33

11 U.S.C. § 1126 ................................................................................................. 24, 25

11 U.S.C. § 1129(a) ......................................................................................... passim

11 U.S.C. § 1129(b) .................................................................................................. 30

**Other Authorities**

COLLIER ON BANKRUPTCY .................................................................................. 15, 28

H.R. Rep. No. 95-595 (1977) ............................................................................... 11, 16

S. Rep. No. 95-989 (1978) .................................................................................... 11, 16

**Rules**

Fed. R. Bankr. P 3020(e) ........................................................................................ 34

## INTRODUCTION

The above-captioned debtor and debtor-in-possession (collectively, the "Debtor") submits this memorandum of law (the "Memorandum of Law") in support of the *Combined Disclosure Statement* ("Disclosure Statement") *and Chapter 11 Plan of Liquidation of Sharity Ministries Inc.* (the "Plan," and together with the Disclosure Statement, the "Combined Plan and Disclosure Statement") [1] and (i) final approval of the Disclosure Statement, pursuant to section 1125 of title 11 of the United States Code (as amended or modified, the "Bankruptcy Code") and (ii) confirmation of the Plan, pursuant to section 1129 of the Bankruptcy Code.  In addition, as set forth herein, the Debtor requests a waiver of the 14-day stay of the order confirming the Plan imposed by rule 3020(e) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PRELIMINARY STATEMENT

On July 8, 2021 (the "Petition Date"), the Debtor commenced this bankruptcy case (the "Chapter 11 Case") by filing a voluntary petition under chapter 11 of the Bankruptcy Code. After exploring out-of-court strategic alternatives, the Debtor concluded that its best option for survival was to reorganize through a court supervised restructuring process.  However, shortly after filing, the Debtor recognized that its business was not sustainable and the prospect of reorganizing was no longer possible and that the best way to maximize value for the benefit of all stakeholders was through a winddown and court-approved liquidation (the "Winddown"). Just over four (4) months after commencing the Chapter 11 Case, the Debtor now seeks confirmation of the Plan.  If confirmed, the Plan will fairly and appropriately distribute the value of the Debtor's Estate to its Members and Creditors and provide for the orderly wind down of the Debtor's Estate.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Declaration of Neil F. Luria in Support of Chapter 11 Petition and First Day Motions* [D.I. 5] (the "First Day Declaration"), Plan or Disclosure Statement, as applicable.

The Plan is the culmination of the Debtor's substantial efforts over the past four months to bring this Chapter 11 Case to a value maximizing close following the winddown of the Debtor's operations.  The Plan provides for the liquidation and conversion of all of the Debtor's remaining Assets, including Causes of Action, to cash and the distribution of the net proceeds realized therefrom, along with existing cash, to Creditors holding Allowed Claims in accordance with the relative priorities established in the Bankruptcy Code.

The Plan is supported by the Debtor's key stakeholders, including the Official Committee of Unsecured Creditors (the "Committee").[2]  In addition, the holders of Claims in Classes 3 (Member Claims for Post-July 8, 2021 Payments), 4 (Member Claims and General Unsecured Claims) and 5 (Governmental Fines and Penalty Claims), the only classes entitled to vote, overwhelmingly voted to accept the Plan.

The only formal objection to the Plan filed by any party in interest was *Joint Objection by the People of the State of California and the State of Texas to the Debtor's Chapter 11 Plan of Liquidation* [D.I. 307] (the "State Objection").  The State Objection, which was resolved before it was filed (*See* Confirmation Order, ¶27), should be overruled.

As set forth herein, in the *Declaration of Neil F. Luria in Support of Confirmation of the Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Sharity Ministries Inc.* [D.I. 316] and as the testimony at the confirmation hearing will establish, the Disclosure Statement and the Plan meet all of the requirements under the Bankruptcy Code to be approved and confirmed.  Accordingly, the Debtor requests that the Disclosure Statement be approved on a final basis and the Plan be confirmed.

---

[2] Pursuant to the *Stipulation to (I) Withdraw Subchapter V Election, and (II) Grant Related Relief* (the "Stipulation"), as approved by the Court's October 4, 2021, *Order Approving Stipulation to (I) Withdraw Subchapter V Election, and (II) Grant Related Relief* [D.I. 229] (the "Subchapter V Stipulation Order") the Official Committee of Members was then deemed to be the Official Committee of Unsecured Creditors.

**STATEMENT OF FACTS**

I.      **The Debtor's Business**

1.      Prior to the Petition Date, the Debtor operated as a 501(c)(3) faith-based nonprofit corporation that operated a health care sharing ministry to provide its Members an affordable health care option through a medical cost-sharing arrangement among people of similarly and sincerely held religious beliefs.  Headquartered in Roswell, Georgia, the Debtor served over 10,000 Members as of the Petition Date.

2.      To fulfill its charitable mission, the Debtor offered various health care sharing programs to its Members.  The Debtor's Members consisted of individuals who shared a common set of Christian religious beliefs and who agreed to share medical expenses in accordance with those beliefs.  The Debtor's health care sharing programs were designed to facilitate member-to-member sharing by matching Members' sharing requests for eligible medical expenses with other Members' voluntary contributions to the programs.  It was the Debtor's goal to facilitate as much sharing of Members' medical expenses as possible while ensuring that only eligible medical expenses were shared between Members.

II.     **Events Leading to the Bankruptcy Filing**

        A.      **Unsustainable Third-Party Administrator Contracts and Operational Challenges**

3.      A confluence of factors contributed to the Debtor's need to commence the Chapter 11 Case.  From its inception, the Debtor was party to agreements with Aliera Healthcare, Inc. and subsidiaries of the Aliera Companies (collectively, the "Aliera Companies") to serve as the third-party administrator of its programs.  Under the agreements, the Debtor retained certain of the Aliera Companies to, among other things, provide (i) administrative services, (ii) information technology related services, (iii) marketing and brand development

services, (iv) sales services, and (v) ancillary services such as customer, accounting, regulatory, and compliance services (collectively, the "Aliera Contracts").

4.        As operations proceeded, various Governmental Units and private parties brought investigations, claims or lawsuits against the Aliera Companies, and in some cases, the Debtor itself.   Because of its contractual involvement with the Aliera Companies, the Debtor's reputational, financial position, and membership levels were severely and negatively impacted.[3]

B.        **Restructuring Efforts**

5.        Prior to the bankruptcy case, the Debtor commenced a strategic process by which it (a) solicited third-party interest to enter into agreements to provide administrative, technological, and other services to the Debtor similar to those provided under the Aliera Contracts, and (b) analyzed its operational footprint to determine the locations in which it could operate most effectively for its members (the "Strategic Process"). The goal of the Strategic Process was to maximize the efficiency of the Debtor's operations, such that a greater percentage of each dollar shared by Members would ultimately be used to pay other Members' medical expenses.

6.        As a result of the Strategic Process, the Debtor identified certain third-party service providers (the "TPA and Related Vendors") it believed would provide a high-quality level of service for its members at more competitive prices.  The Debtor also decided to reduce the number of states in which it would operate.

7.        Despite reaching agreements with the TPA and Related Vendors, the Debtor was still saddled by the onerous Aliera Contracts.  Thus, the Debtor determined that filing the Chapter 11 Case to facilitate the transition to the TPA and Related Vendors, away from the

---

[3] On November 24, 2021 the Official Committee of Members of Sharity Ministries, Inc. filed the *Adversary Complaint* [D.I. 313] against the Aliera Companies.

Aliera Companies, and right-size its operations was the best option for itself and its Members. The Debtor intended to maintain its operations and continue serving its Members throughout the Chapter 11 Case, while rejecting many of the Aliera Contracts and assuming contracts with the TPA and Related Vendors under a plan of reorganization. Alternatively, the Debtor contemplated liquidating its operations if the reorganization proved infeasible and liquidation was deemed to be in the best interest of the Members.

**III.    The Chapter 11 Case**

  **A.    First Day Relief**

8.    On the Petition Date, along with the voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition"), the Debtor filed several motions (the "First Day Motions") designed to facilitate the administration of the Chapter 11 Case and minimize disruption to the Debtor's operations, by, among other things, permitting the Debtor to meet certain obligations to its Members, employees and other parties-in-interest following the commencement of the Chapter 11 Case. A brief description of each of the First Day Motions and the evidence in support thereof is set forth in the First Day Declaration, filed on the Petition Date. Significantly, pursuant to the First Day Motions, the Debtor sought the authority to continue reviewing and granting Members' share requests as part of its originally intended reorganization.

  **B.    Schedules and Statements and the Bar Date Motion**

9.    On the Petition Date, along with the Petition, the Debtor filed its *Schedules of Assets and Liabilities for Sharity Ministries, Inc.* [D.I. 2] and *Statements of Financial Affairs for Sharity Ministries, Inc.* [D.I. 3] (as amended or modified and together as, the "Schedules and Statements"). On August 4, 2021, the meeting of creditors was held and continued until and concluded on September 28, 2021, pursuant to section 341(a) of the Bankruptcy Code.

10.     On July 14, 2021, the Debtor filed the *Notice of Chapter 11 Bankruptcy Case* [D.I. 49] ("Notice of Commencement") providing notice of the general bar date of September 7, 2021 (the "General Bar Date"), for filing proofs of claim and a governmental bar date of January 4, 2022, as established by this Court's General Order dated September 14, 2020.[4]  On September 23, 2021, the Court entered the *Order (I) Extending the General Bar Date for Filing Proofs of Claim, and (II) Approving the Manner of Notice Thereof* [D.I. 209] (the "Bar Date Order").  Pursuant to the Bar Date Order, the Court extended the General Bar Date to January 4, 2022.

**C.     Decision to Discontinue Operations**

11.     On or about July 19, 2021, the Debtor decided to cease operations and conduct an orderly wind-down.  The Debtor's board made this decision based on the Debtor's business judgment that ceasing operations and winding down would be in the best interests of the Members.

**D.     The Plan and the Disclosure Statement**

12.     The Combined Plan and Disclosure Statement was filed on October 1, 2021 [D.I. 223].  Revised versions of the Combined Plan and Disclosure Statement were filed on October 12 and 14, 2021, as well as November 29, 2021 [D.I. 254, 264 and 315].  On November 8, 2020, the Debtor filed the Plan Supplement [D.I. 293] (as amended, revised, updated or supplemented, the "Plan Supplement").  On November 18, 2021, the Debtor filed an amended Plan Supplement [D.I. 299].  On November 24, 2021, the Debtor filed a *Notice of Filing Revised Liquidating Trust Agreement* [D.I. 310].

---

[4] By Standing Order of the Court, in all chapter 11 cases filed in this district where the debtor elects to proceed under subchapter V, the general bar date is sixty (60) days after the order for relief and the governmental bar date is one-hundred eighty (180) days after the order for relief. *See General Order – Order Setting Proof of Claim Bar Dates in All Cased Under Subchapter V of Chapter 11*, dated September 14, 2020

13.     The Disclosure Statement is the product of the Debtor's extensive review and analysis of its business, Assets and liabilities, and circumstances leading to the Chapter 11 Case. The Disclosure Statement provides information regarding: (a) the terms of the Plan, including a summary of the classifications and treatment of all Classes of Claims and Interests; (b) the Distributions to holders of Allowed Claims; (c) the effect of the Plan on holders of Claims and Interests and other parties-in-interest thereunder; (d) the estimated amount of Claims that will ultimately be Allowed; (e) certain risk factors to consider that may affect the Plan; (f) certain tax issues related to the Plan and Distributions; and (g) the means for implementation of the Plan.

14.     The Plan classifies holders of Claims and Interests into certain Classes for all purposes, including with respect to voting rights, if any, as follows:

| **Class** | **Claim/Interest** | **Status** | **Voting Rights** |
|---|---|---|---|
| 1 | Miscellaneous Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 3 | Member Claims for Post-July 8, 2021 Payments | Impaired | Entitled to Vote |
| 4 | Member Claims and General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Governmental Fines and Penalty Claims | Impaired | Entitled to Vote |
| 6 | Section 510(c) Claims | Impaired | Deemed to Reject |

15.     As set forth in the chart above, Class 3 (Member Claims for Post-July 8, 2021 Payments), Class 4 (Member Claims and General Unsecured Claims) and Class 5 (Governmental Fines and Penalty Claims) were the only classes of Claims or Interests that were entitled to vote on the Plan (the "Voting Classes"). All other holders of Claims or Interests were not entitled to vote on the Plan because each such holder holds a Claim or Interest presumed to accept or deemed to reject under the Plan. As such, the Debtor did not solicit votes from holders of Claims or Interests in Classes 1, 2, and 6.

16.     The deadline for the Voting Classes to cast their ballots was November 22, 2021 at 5:00 p.m. (prevailing Eastern Time). As set forth in the *Declaration of Tinamarie Feil Regarding Voting and Tabulation of Ballots for the Combined Disclosure Statement and*

*Chapter 11 Plan of Liquidation of Sharity Ministries Inc.* [D.I. 312] (the "Voting Declaration"), over ninety-two percent (92.75%) in number and over ninety-five percent (95.47%) in dollar amount of the votes submitted by Class 3, over ninety-eight percent (98.16%) in number and over ninety-six percent (96.10%) in dollar amount of the votes submitted by Class 4 and over eighty-five percent (85.71%) in number and over eighty-five percent (85.71%) in dollar amount of the votes submitted by Class 5 voted to accept the Plan.

IV.    **Responses to Confirmation of the Plan and Final Approval of the Disclosure Statement**

17.    The deadline to object to confirmation of the Plan and final approval of the adequacy of the Disclosure Statement was November 22, 2021 at 4:00 p.m. (prevailing Eastern Time).  Other than the State Objection, no other objections were filed.

**THE DISCLOSURE STATEMENT SATISFIES THE REQUIREMENTS OF BANKRUPTCY CODE SECTION 1125**

18.    The Debtor requests that the Court approve the Disclosure Statement as containing "adequate information" in accordance with Bankruptcy Code section 1125 on a final basis.  Bankruptcy Code section 1125(b) states that "[a]n acceptance or rejection of a plan may not be solicited . . . unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."  11 U.S.C. § 1125(b).  In turn, Bankruptcy Code section 1125(a) defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about

> any other possible or proposed plan and in determining whether a
> disclosure statement provides adequate information, the court shall
> consider the complexity of the case, the benefit of additional
> information to creditors and other parties in interest, and the cost of
> providing additional information.

11 U.S.C. § 1125(a).

19.     The primary purpose of a disclosure statement is to provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders entitled to vote on the plan. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003); *see also Century Glove, Inc. v. First Am. Bank N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote.").

20.     Bankruptcy courts have broad discretion in determining whether a disclosure statement contains adequate information based on the unique facts and circumstances of each case. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*, 329 B.R. 491, 507 (D.N.J. 2005), *aff'd*, 241 Fed. App'x. 1 (3d Cir. Aug. 2, 2007) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement."); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("The general language of the statute and its surrounding legislative history make clear that the determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court.") (internal quotations omitted).

21.     In accordance with Bankruptcy Code section 1125, the Disclosure Statement

provides "adequate information" to allow holders of Claims entitled to vote to make an informed decision on the Plan.  The Disclosure Statement is the product of the Debtor's extensive review and analysis of its business, Assets and liabilities, and circumstances leading to the Chapter 11 Case.  The Disclosure Statement provides information regarding: (a) the terms of the Plan, including a summary of the classifications and treatment of all Classes of Claims and Interests; (b) the Distributions to holders of Allowed Claims; (c) the effect of the Plan on holders of Claims and Interests and other parties-in-interest thereunder; (d) the Claims asserted against the Debtor and the estimated amount of Claims that will ultimately be Allowed; (e) certain risk factors to consider that may affect the Plan; (f) certain tax issues related to the Plan and Distributions; and (g) the means for implementation of the Plan.  Accordingly, the Debtor believes that the Disclosure Statement complies with all aspects of Bankruptcy Code section 1125 and contains more than sufficient information for a hypothetical reasonable investor to make an informed judgment about the Plan.

22.    Accordingly, for the foregoing reasons the Debtor submits that the Disclosure Statement contains more than adequate information within the meaning of Bankruptcy Code section 1125(a) and should be approved on a final basis.

### THE PLAN MEETS ALL APPLICABLE CONFIRMATION REQUIREMENTS

23.    To obtain confirmation of the Plan, the Debtor must demonstrate that the Plan satisfies the applicable provisions of Bankruptcy Code section 1129 by a preponderance of the evidence.  *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120 (D. Del. 2006).  As set forth below and based on the record and filings in this Chapter 11 Case and as will be demonstrated at the Confirmation Hearing, the Plan meets all applicable requirements of Bankruptcy Code section 1129 and should be confirmed.

I.      **The Plan Complies with Bankruptcy Code section 1129(a)**

    A.      **Bankruptcy Code section 1129(a)(1)**

24.      The Plan complies with Bankruptcy Code section 1129(a)(1), which provides that a plan may be confirmed only if "[t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1); *see also In re Eagle-Picher Indus., Inc.*, 203 B.R. 256, 270-73 (S.D. Ohio 1996) (examining each requirement of chapter 11 to demonstrate that Bankruptcy Code section 1129(a)(1) was satisfied); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984) (stating that "[i]n order for a plan of reorganization to pass muster . . . it must comply with all the requirements of Chapter 11").

25.      The legislative history of Bankruptcy Code section 1129(a)(1) indicates that the primary focus of this requirement is to ensure that a plan complies with Bankruptcy Code sections 1122 and 1123, which govern classification of claims and interests and the contents of a plan, respectively. *See* S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912 (1978); H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368 (1977); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 843 F.2d 636, 648-49 (2d Cir. 1988) (holding that legislative history indicates that Section 1129(a)(1) was intended to require compliance with Sections 1122 and 1123).

    **1.      Bankruptcy Code section 1122 – Classification of Claims and Interests**

26.      Bankruptcy Code section 1122 provides that the claims or interests within a given class must be "substantially similar" to the other claims or interests in that class:

> (a) Except as provided in subsection (b) of this Section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122(a).  Courts consistently have held that Bankruptcy Code section 1122(a) is

satisfied so long as similar claims are classified together.  *See Armstrong*, 348 B.R. at 160 (holding that Bankruptcy Code section 1122(a) was satisfied where similar claims were classified together); *Eagle-Picher Indus.*, 203 B.R. at 270 (same).

27.     Accordingly, the sole mandatory obligation of section 1122(a) is that substantially similar claims may be classified together.  *In re Tribune Co.*, 476 B.R. 843, 854 (Bankr. D. Del 2012).  Section 1122(a) is, in fact, permissive inasmuch as "it does *not* provide that *all* similar claims must be placed in the same class."  *Id.* at 855 (emphasis in original); *see also John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.,* 987 F.2d 154, 158 (3d Cir. 1993); *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) ("[W]e agree with the general view which permits the grouping of similar claims in different classes"); *In re Coram Healthcare Corp.*, 315 B.R. 321, 348 (Bankr. D. Del. 2004) (explaining the Bankruptcy Code "does not expressly prohibit placing 'substantially similar' claims in separate classes.").

28.     The Plan classifies Claims and Interests in accordance with Bankruptcy Code section 1122(a), as each of the Plan's Classes contains Claims or Interests that share the same priority status, contractual rights and enforcement rights against the Debtor's estate.  In particular, Article VI of the Plan segregates into separate classes:[5] Class 1 (Miscellaneous Secured Claims), Class 2 (Priority Non-Tax Claims), Class 3 (Member Claims for Post-July 8, 2021 Payments), Class 4 (Member Claims and General Unsecured Claims), Class 5 (Governmental Fines and Penalty Claims), and Class 6 (Section 510(c) Claims).  The number of classes in the Plan reflects the diverse characteristics of the Claims and Interests classified in the various Classes, and the legal rights under the Bankruptcy Code of each of the holders of Claims or Interests within a particular Class that are substantially similar to other holders of Claims or Interests within the

---

[5] In accordance with Bankruptcy Code section 1123(a)(1), Administrative Expense Claims and Priority Tax Claims have not been classified.  *See* Plan, Art. VI.

same Class.

29.     In addition, valid business, factual and legal reasons exist for the separate classification of Claims and Interests.  For example, the Plan separates secured claims from priority claims (Miscellaneous Secured Claims from Priority Non-Tax Claims) and Member Claims from the claims of Governmental Units (Member Claims and General Unsecured Claims from Governmental Fines and Penalty Claims).

30.     Accordingly, the classification of Claims and Interests under the Plan is appropriate and should be approved.

### 2.     Compliance with Bankruptcy Code section 1123(a) – Mandatory Contents of the Plan

31.     Bankruptcy Code section 1123(a) requires that a chapter 11 plan: (a) designate classes of claims and interests; (b) specify unimpaired classes of claims and interests; (c) specify treatment of impaired classes of claims and interests; (d) provide for equality of treatment within each class; (e) provide adequate means for the plan's implementation; (f) provide for the prohibition of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and (g) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors.  *See* 11 U.S.C. § 1123(a).

32.     The Plan fully complies with each requirement of Section 1123(a).  As previously noted with respect to the Plan's compliance with Bankruptcy Code section 1122, Article VI of the Plan designates six (6) separate Classes of Claims and Interests, as required by Bankruptcy Code section 1123(a)(1).  Article VI and Article VII of the Plan specify that the Claims in Classes 1-2 are unimpaired under the Plan, as required by Bankruptcy Code section 1123(a)(2)

of the Bankruptcy Code.  Article VI and Article VII further specify that the Claims or Interests in Classes 3-6 are impaired and describes the treatment of each such Class in accordance with Bankruptcy Code section 1123(a)(3).   Further, as required by Bankruptcy Code section 1123(a)(4), the treatment of each Claim or Interest within a Class is either (i) the same as the treatment of each other Claim or Interest in such Class or (ii) otherwise consistent with the legal rights of such claimant.

33.     In accordance with the requirements of Bankruptcy Code section 1123(a)(5), the Plan provides adequate means for its implementation through Article X and various other provisions.  Specifically, the Plan provides for, among other things:

>     (a)  the dissolution of the existing board of directors or managers, as applicable, of the Debtor;
>
>     (b)  the appointment of the Liquidating Trustee as the Debtor's sole officer, director, and manager, as applicable; and
>
>     (c)  the exemption from certain transfer taxes.

34.     Bankruptcy Code section 1123(a)(6) requires that a debtor's corporate organizational documents prohibit the issuance of nonvoting equity securities.  The Plan does not contemplate reorganization or amended organizational documents.  Thus, this provision is not applicable to the Plan.

35.     Finally, Bankruptcy Code section 1123(a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, directors, or trustee under the plan . . . ."  11 U.S.C. § 1123(a)(7).  This provision is supplemented by Bankruptcy Code section 1129(a)(5), which directs the scrutiny of the court to the methods by which the management of the reorganized corporation is to be chosen to provide adequate representation of those whose investments are involved in the reorganization — *i.e.*, creditors and equity holders.  *See* 7 Alan N.

Resnick et al., COLLIER ON BANKRUPTCY ¶ 1123.01[7] (16th ed. rev. 2010).

36.     The Plan appoints the Liquidating Trustee as the Debtor's sole officer, director, and manager, as applicable following the Effective Date.  This appointment is consistent with the interests of Creditors as the Debtor is liquidating and the remaining matters for the post-Effective Date Debtor will involve implementing the Plan transactions and winding down the Debtor's affairs and closing the Chapter 11 Case.

### 3. Bankruptcy Code section 1123(b) – Discretionary Contents of the Plan

37.     Bankruptcy Code section 1123(b) identifies various discretionary provisions that may be included in a plan but are not required.  For example, a plan may impair or leave unimpaired any class of claims or interests and provide for the assumption or rejection of executory contracts and unexpired leases.  11 U.S.C. §§ 1123(b)(1)-(2).  A plan also may provide for (a) "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate;" (b) "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest;" (c) "the sale of all or substantially all of the property of the estate;" and (d) "the distribution of the proceeds of such sale among holders of claims or interests."  11 U.S.C. §§ 1123(b) (1-4), (6)

38.     The Plan includes various provisions that fall under the broad spectrum of Bankruptcy Code section 1123(b).  For instance, the Plan impairs Classes 3 through 6, leaving Classes 1 and 2 unimpaired.  *See* Plan Art. VI.  The Plan further provides for approval of the treatment of executory contracts and unexpired leases to which the Debtor is a party.  *See* Plan Art. XII.

39.     In accordance with Bankruptcy Code section 1123(b)(6), the Plan includes other provisions designed to ensure its implementation that are consistent with the Bankruptcy Code,

including the provisions of Article XV, regarding retention of jurisdiction by the Court over certain matters after the Effective Date. The Debtor believes each of these provisions is appropriate under applicable law, including Bankruptcy Code sections 1123(b)(1), (3) and (6). A further analysis of these provisions is set forth below.

### B.      Bankruptcy Code Section 1129(a)(2)

40.      The Plan complies with Bankruptcy Code section 1129(a)(2), which requires that a plan proponent comply with applicable provisions of the Bankruptcy Code. The legislative history accompanying section 1129(a)(2) indicates that the principal purpose of this section is to ensure compliance with the disclosure and solicitation requirements set forth in Bankruptcy Code section 1125. *See In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000) ("[Section] 1129(a)(2) [of the Bankruptcy Code] requires that the plan proponent comply with the adequate disclosure requirements of § 1125"); *Official Comm. of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992) ("Compliance with the disclosure and solicitation requirements is the paradigmatic example of what Congress had in mind when it enacted Section 1129(a)(2)."); *In re Texaco, Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988) ("[The] principal purpose of Section 1129(a)(2) is to assure that the proponents have complied with the requirements of Section 1125 in the solicitation of acceptances to the plan"); *see also* S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912 (1978) ("Paragraph (2) [of Section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as Section 1125 regarding disclosure."); H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368 (1977).

41.      The Debtor has complied with the applicable provisions of the Bankruptcy Code, including the provisions of section 1125 regarding disclosure and plan solicitation. Bankruptcy Code section 1125 prohibits the solicitation of acceptances or rejections of a plan from holders of

claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information." 11 U.S.C. § 1125(b). In the instant case, the Debtor solicited votes to accept the Plan from Class 3 (Member Claims for Post-July 8, 2021 Payments), Class 4 (Member Claims and General Unsecured Claims) and Class 5 (Governmental Fines and Penalty Claims) as such Classes are impaired. The Debtor did not solicit votes from Classes 1, 2 or 6 as such Classes are either presumed to accept or deemed to reject the Plan.

42.     Pursuant to the *Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* [D.I. 263] (the "Interim Approval and Procedures Order"), the Court determined on an interim basis that the Disclosure Statement contained adequate information within the meaning of Bankruptcy Code section 1125. *See Interim Approval and Procedures Order* ¶ 2. The Court further approved the form of notices of (i) the hearing on final approval of the Disclosure Statement and confirmation of the Plan (the "Confirmation Hearing Notice") and (ii) the rights of holders of Claims and Interests not entitled to vote on the Plan (the "Non-Voting Status – Deemed to Reject Notice"). The Court also required that the Debtor serve Creditors the Confirmation Hearing Notice and/or the Non-Voting Status – Deemed to Reject Notice, as applicable, pursuant to the Interim Approval and Procedures Order.

43.     The Debtor has complied with the Interim Approval and Procedures Order and caused the mailing of the Confirmation Hearing Notice and the Non-Voting Status – Deemed to Reject Notice to occur in accordance with the requirements of the Interim Approval and

Procedures Order.  *See Certificate of Service* [D.I. 284] and *Supplemental Certificate of Service* [D.I. 309].  The Debtor further complied with all applicable provisions of the Bankruptcy Code, including Bankruptcy Code section 1125 and Bankruptcy Rules 3017 and 3018.  As a result, the Plan meets the requirements of Bankruptcy Code section 1129(a)(2).

### C.    Bankruptcy Code section 1129(a)(3)

44.    The Plan satisfies Bankruptcy Code section 1129(a)(3), which requires that a plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3). Courts consider a plan as proposed in good faith "if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code." *Hanson v. First Bank of S.D.*, 828 F.2d 1310, 1315 (8th Cir. 1987); *see also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 247 (3d Cir. 2004) ("for purposes of determining good faith under Section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code") (quotations and citation omitted); *Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 165 (3d Cir. 1999) (explaining the good faith standard in Section 1129(a)(3) requires that there be "'some relation'" between the chapter 11 plan and the "reorganization-related purposes" that chapter 11 was designed to serve) (citations omitted); *In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001) ("The good faith standard requires that the plan be proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.") (quoting *In re Zenith Elecs. Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999)) (internal quotations omitted).

45.    One must view the requirement of good faith in the context of the totality of the circumstances surrounding the formulation of a chapter 11 plan.  *See McCormick v. Banc One*

*Leasing Corp. (In re McCormick)*, 49 F.3d 1524, 1526 (11th Cir. 1995) ("The focus of a court's inquiry is the plan itself, and courts must look to the totality of the circumstances surrounding the plan."); *In re Block Shim Dev. Co.*, 939 F.2d 289, 292 (5th Cir. 1991) (finding that good faith requirement "is viewed in the context of the circumstances surrounding the plan"); *CoreStates Bank, N.A. v. United Chem. Techs.*, 202 B.R. 33, 57 (E.D. Pa. 1996) (concluding that courts must view good faith by looking at the totality of circumstances).

46.     In determining whether a plan will succeed and accomplish goals consistent with the Bankruptcy Code, courts look to the terms of the plan itself and not the proponent of the plan. *See In the Matter of Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988) (concluding that the good faith test provides the court with significant flexibility and is focused on an examination of the plan itself, rather than other, external factors), *aff'd in part, remanded in part on other grounds*, 103 B.R. 521 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir. 1990); s*ee also Combustion Eng'g*, 391 F.3d at 246.

47.     The Debtor must show, therefore, that the Plan has not been proposed by any means forbidden by law and that the plan has a reasonable likelihood of success.  *See In re Century Glove, Inc.*, 1993 LEXIS 2286, at *15 (D. Del. Feb. 10, 1993) ("A court may only confirm a plan for reorganization if . . . the 'plan has been proposed in good faith and not by any means forbidden by law.' . . . Moreover, '[w]here the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of Section 1129(a)(3) is satisfied.'") (citations omitted); *see also Fin. Sec. Assur. Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 802 (5th Cir. 1997) (same); *In re Koelbl*, 751 F.2d 137, 139 (2d Cir. 1984) (noting that plan provisions may not contravene any law, including state law, and a plan must have been proposed with "a basis for

expecting that a reorganization can be effected") (citations omitted).

48.     The Debtor structured and proposed the Plan in a manner that effectuates the objectives and purposes of the Bankruptcy Code.  The Plan is a product of consensus among the Debtor and the Committee, after extensive arm's length negotiations, which in itself demonstrates that the Debtor proposed the Plan in good faith.  *See Eagle-Picher Indus.*, 203 B.R. at 274 (finding that a plan of reorganization was proposed in good faith when, among other things, it was based on extensive arms-length negotiations among plan proponents and other parties-in-interest).  The Plan contains no provisions that are contrary to state or other laws nor is there any indication the Debtor lacks the ability to consummate the Plan.  Accordingly, the Debtor submits that it has met the requirements of Bankruptcy Code section 1129(a)(3).

### D.     Bankruptcy Code section 1129(a)(4)

49.     The Plan also complies with Bankruptcy Code section 1129(a)(4), which states the following:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. § 1129 (a)(4).  In essence, Bankruptcy Code section 1129(a)(4) requires that any and all fees promised or received in connection with or in contemplation of a chapter 11 case must be disclosed and subject to the court's review.  *See In re Crdentia Corp.*, 2010 Bankr. LEXIS 2838, at *8 (Bankr. D. Del. May 26, 2010) (holding that plan complied with Section 1129(a)(4) where all final fees and expenses payable to professionals remained subject to final review by bankruptcy court); *In re Johns-Manville Corp.*, 68 B.R. 618, 632 (Bankr. S.D.N.Y. 1986) (explaining that all payments contemplated by a plan must "have been or will be" made subject

to the court's approval), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987).  Pursuant to the Plan, Interim Compensation Order and other orders of the Court, all Professional Fee Claims are subject to Court approval.  Accordingly, the Plan complies with the requirements of Bankruptcy Code section 1129(a)(4).

### E.    Bankruptcy Code section 1129(a)(5)

50.    The Debtor is not reorganizing under the Plan and accordingly, the appointment of the Liquidating Trustee as the Debtor's sole officer, director, and manager, as applicable, is not inconsistent with Bankruptcy Code section 1129(a)(5).

### F.    Bankruptcy Code section 1129(a)(6)

51.    Bankruptcy Code section 1129(a)(6) is inapplicable to the Debtor, as it requires that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval."  11 U.S.C. § 1129 (a)(6). The Debtor's business has no involvement with the establishment of rates over which any regulatory commission has jurisdiction or will have jurisdiction after the Plan's confirmation.  Accordingly, Bankruptcy Code section 1129(a)(6) is inapplicable to the Debtor.

### G.    Bankruptcy Code section 1129(a)(7)

52.    The Plan satisfies the "best interests of creditors" test set forth in Bankruptcy Code section 1129(a)(7).  This test requires that, with respect to each impaired class of claims or interests, each holder of such claims or interests (a) has accepted the plan or (b) will receive or retain property of a value not less than what such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.  *See Armstrong*, 348 B.R. at 165-66; *see also In re Tranel*, 940 F.2d 1168, 1172 (8th Cir. 1991) (considering evidence supporting best interests of creditors test outcome); *In re AOV Indus.*, 31 B.R. 1005, 1008-13 (D.D.C. 1983) (if

no impaired creditor receives less than liquidation value, plan of reorganization is in best interests of creditors), *aff'd in part, rev'd in part*, 792 F.2d 1140, 1144 (D.C. Cir. 1986), *vacated in light of new evidence*, 797 F.2d 1004 (D.C. Cir. 1986); *In re Econ. Lodging Sys., Inc.*, 205 B.R. 862, 864-65 (Bankr. N.D. Ohio 1997) (analyzing evidence relating to best interests of creditors test); *Eagle-Picher Indus.*, 203 B.R. at 266 (best interest of creditors test must be met even in cramdown situation).  A court, in considering whether a plan is in the "best interests" of creditors, is not required to consider any alternative to the plan other than the dividend projected in a liquidation of all of the debtor's assets under chapter 7 of the Bankruptcy Code.  *See, e.g., In re Victory Constr. Co.*, 42 B.R. 145, 151 (Bankr. C.D. Cal. 1984); *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990); *In re Jartran, Inc.*, 44 B.R. 331, 389-93 (Bankr. N.D. Ill. 1984) (best interests test is satisfied by showing that, upon liquidation, cash received would be insufficient to pay priority claims and secured creditors so that unsecured creditors and equity holders would receive no recovery).

53.     The first step in meeting the best interests test is to determine the proceeds that the hypothetical liquidation of a debtor's assets and properties would generate in the context of a liquidation under chapter 7 of the Bankruptcy Code. The gross amount available would be the sum of the proceeds from liquidating the debtor's assets plus the cash held by the debtor at the time of commencement of the hypothetical case under chapter 7 of the Bankruptcy Code. The amount of any claims secured by these assets, the costs and expenses of the liquidation, and any additional administrative expenses and priority claims that may result from the termination of the debtor's business and the use of chapter 7 of the Bankruptcy Code for the purposes of a hypothetical liquidation would reduce the amount of these proceeds. Any remaining net cash would be allocated to creditors and equity interest holders in strict priority in accordance with

Bankruptcy Code section 726.

54.     The Debtor submits that liquidation under chapter 7 of the Bankruptcy Code would result in significantly smaller Distributions to holders of Claims and Interests than those provided for in the Plan because of (a) the likelihood that the Debtor's assets would have to be sold or otherwise disposed of in a less orderly fashion, with a lesser recovery from the Causes of Action, (b) additional administrative expenses involved in the appointment of a chapter 7 trustee, and (c) the inability of a chapter 7 trustee to maximize the return to the Debtor's estate to the same degree as provided by the Plan.

55.     Specifically, as described in the hypothetical Liquidation Analysis attached to the Disclosure Statement as Exhibit B, the Debtor assumes that any liquidation of its assets would be accomplished through conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code on or about December 5, 2021.  On the hypothetical conversion date, it is assumed that the Bankruptcy Court would appoint a chapter 7 trustee to oversee the liquidation of the Debtor's Estate, during which time all of the Debtor's Assets would be sold, distributed, or surrendered to the respective lien holders, Causes of Action prosecuted, and the cash proceeds, net of liquidation-related costs, would then be distributed to creditors in accordance with relevant law.  There could be no assurance that the liquidation would be completed in a limited time frame, nor is there any assurance that the recoveries assigned to the Assets would in fact be realized.

56.     Additionally, the costs of liquidation under chapter 7 of the Bankruptcy Code would include the fees payable to a chapter 7 trustee, as well as those fees that may be payable to attorneys and other professionals that such trustee would engage.  Moreover, the foregoing types of claims and other claims that might arise in a chapter 7 liquidation case (including claims from

potentially redundant activities that could be engaged in by a chapter 7 trustee) or result from the pending Chapter 11 Case, including any unpaid expenses incurred by the Debtor during the Chapter 11 Case such as compensation for attorneys and financial advisors, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available for distribution to other Creditors.

57.     After considering the effects that a liquidation under chapter 7 of the Bankruptcy Code would have on the ultimate proceeds available for distribution to the holders of Claims and Interests in the Chapter 11 Case, including (a) the decrease in value caused by a chapter 7 liquidation of the Debtor's Assets, (b) the increased costs and expenses of a liquidation under chapter 7 of the Bankruptcy Code arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, and (c) the costs of a corporate wind-down of operations, the Debtor asserts that confirmation of the Plan will provide each holder of a Claim with a recovery that is not less than what such holder would receive pursuant to a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.  Indeed, no party has objected to confirmation under the "best interests" test.  Thus, the Debtor submits that it has satisfied the requirements of Bankruptcy Code section 1129(a)(7).

**H.     Bankruptcy Code section 1129(a)(8)**

58.     Bankruptcy Code Section 1129(a)(8) requires that "with respect to each class of claims or interests — (A) such class has accepted the plan or (B) such class is not impaired under the Plan."  11 U.S.C. § 1129(a)(8).  Pursuant to Bankruptcy Code section 1126(c), a class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in that class vote to accept the plan.  11 U.S.C. § 1126(c). Pursuant to Bankruptcy Code section 1126(d), a class of interests accepts a plan if at least two-thirds in amount of allowed interests in that class vote to accept the plan.  11 U.S.C. § 1126(d).

59.     As set forth above, the holders of Claims in Classes 1 and 2 are unimpaired under the Plan and, pursuant to Bankruptcy Code section 1126(f), are conclusively presumed to have voted to accept the Plan.  Thus, the requirements of section 1129(a)(8) have been satisfied as to each of Classes 1 and 2.

60.     As set forth above and in the Voting Declaration, the holders of Claims in Class 3 (Member Claims for Post-July 8, 2021 Payments), Class 4 (Member Claims and General Unsecured Claims) and Class 5 (Governmental Fines and Penalty Claims) voted to accept the Plan.  Thus, as to the impaired and accepting Classes 3, 4 and 5, the requirements of section 1129(a)(8) likewise have been satisfied.

61.     Holders of Claims in Class 6 (Section 510(c) Claims) are not entitled to receive or retain any property from the Debtor's Estate under the Plan on account of their Claims and Interests and, therefore, are deemed to reject the Plan pursuant to Bankruptcy Code section 1126(g).  The Plan nonetheless may be confirmed under the "cram down" provisions of section 1129(b) of the Bankruptcy Code, as discussed below.

## I.     Bankruptcy Code section 1129(a)(9)

62.     The Plan satisfies Bankruptcy Code section 1129(a)(9), which requires that a chapter 11 plan provide for the payment of certain priority claims in full on the effective date in the allowed amount of such claims.   In particular, pursuant to Bankruptcy Code section 1129(a)(9)(A), unless otherwise agreed by the holder, holders of claims of a specific kind specified in Bankruptcy Code section 507(a)(2) — administrative claims allowed under Bankruptcy Code section 503(b) — must receive cash equal to the allowed amount of such claims on the effective date of a plan.  11 U.S.C. § 1129(a)(9)(A).  Bankruptcy Code section 1129(a)(9)(B) further requires that the holders of claims of a kind specified in Bankruptcy Code sections 507(a)(1) and 507(a)(4) through 507(a)(7) (generally, wage and employee benefit claims

and consumer deposits that are entitled to priority) must receive, if the class in which such claimants are members has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of these claims or, if the class in which such claimants are members has not accepted the plan, cash on the effective date of a plan equal to the allowed amount of these claims. *See id.* at § 1129(a)(9)(B). Finally, Bankruptcy Code sections 1129(a)(9)(C) and (D) provide for the payment of priority tax claims, including secured claims that would otherwise meet the requirements of Bankruptcy Code section 507(a)(8) absent the secured status of such claims, in cash in regular installments. *See id.* at § 1129(a)(9)(C) and (D).

63.     In accordance with Bankruptcy Code section 1129(a)(9)(A), Article V.A of the Plan provides that, unless otherwise agreed by the holder of an Administrative Expense Claim or an order of the Court provides otherwise, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount in cash (a) if Allowed, on the Effective Date or as soon as practicable thereafter, but in no event later than 30 days after the Effective Date (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as practicable thereafter); (b) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter, but in no event later than 30 days after such Claim is Allowed; (c) at such time and upon such terms as may be agreed upon by such holder and the Debtor or Liquidating Trust, as applicable; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court. Similarly, Article V.B of the Plan provides that unless otherwise agreed by the holder of an Allowed Professional Fee Claim, or an order of the Court provides otherwise, each holder of an Allowed Professional Fee Claim shall be entitled to payment equal to the amount of such Allowed Claim from the Professional Fee Claim Reserve in

full satisfaction of its Allowed Professional Fee Claim upon entry of a Final Order approving any such application for a Professional Fee Claim.

64.    In accordance with Bankruptcy Code section 1129(a)(9)(C) and 1129(a)(9)(D), Article V.C of the Plan provides that each holder of an Allowed Priority Tax Claim shall receive payment of the Allowed amount of such Claim.  Payment will be made either on the later of the Effective Date or the date on which such Priority Tax claim (secured or unsecured) becomes an Allowed Priority Tax Claim, or in each such case, as soon as practicable thereafter, but in no event later than 30 days after such event, with Cash equal to the due and unpaid portion of such Allowed Priority Tax Claim plus, to the extent applicable, any amount required to comply with Bankruptcy Code sections 1129(a)(9)(C) or 1129(a)(9)(D) from the Debtor or Liquidating Trust.

65.    Accordingly, the Plan satisfies the requirements set forth in Bankruptcy Code section 1129(a)(9).

**J.    Bankruptcy Code section 1129(a)(10)**

66.    Bankruptcy Code section 1129(a)(10) provides the following:

> If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

11 U.S.C. § 1129(a)(10); *see also In re Martin*, 66 B.R. 921, 924 (Bankr. D. Mont. 1986) (holding that acceptance by three classes of impaired creditors, exclusive of insiders, satisfied the requirement of Section 1129(a)(10)).  As set forth in the Voting Declaration, Class 3 (Member Claims for Post-July 8, 2021 Payments), Class 4 (Member Claims and General Unsecured Claims) and Class 5 (Governmental Fines and Penalty Claims) (without including any acceptance of the plan by any insider) voted to accept the Plan.  Accordingly, the Debtor submits that the requirements of Bankruptcy Code section 1129(a)(10) are satisfied.

### K.   Bankruptcy Code section 1129(a)(11)

67.     The Plan satisfies Bankruptcy Code section 1129(a)(11), which provides that a court may confirm a plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan . . . ."  11 U.S.C. § 1129(a)(11).  One leading commentator has stated that this section "requires courts to scrutinize carefully the plan to determine whether it offers a reasonable prospect of success and is workable."  COLLIER ON BANKRUPTCY at ¶ 1129.03[11]; *accord In re Aleris Int'l, Inc.*, 2010 Bankr. LEXIS 2997, at *27 (Bankr. D. Del. May 3, 2010) ; *In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994); *In re Rivers End Apartments, Ltd.*, 167 B.R. 470, 476 (Bankr. S.D. Ohio 1994); *Johns-Manville*, 68 B.R. at 635.

68.     Section 1129(a)(11), however, does not require a guarantee of the plan's success; rather, the proper standard is whether the plan offers a "reasonable assurance" of success.  *See, e.g. Johns-Manville Corp.*, 843 F.2d at 649 (noting plan may be feasible although its success is not guaranteed); *Prudential Ins. Co. of Am. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 1341 (8th Cir. 1985) (same); *Rivers End Apartments*, 167 B.R. at 476 (to establish feasibility, "a [plan] proponent must demonstrate that its plan offers 'a reasonable prospect of success' and is workable"); *In re Apex Oil Co.*, 118 B.R. 683, 708 (Bankr. E.D. Mo. 1990)  (guarantee of success is not required to meet feasibility standard of section 1129(a)([11])); *In re Elm Creek Joint Venture*, 93 B.R. 105, 110 (Bankr. W.D. Tex. 1988) (a guarantee of success is not required under Section 1129(a)(11), only reasonable expectation that payments will be made); *Texaco*, 84 B.R. at 910 ("All that is required is that there be reasonable assurance of commercial viability.").

69.     Since the Plan expressly provides for the liquidation of the Debtor's Assets, Bankruptcy Code section 1129(a)(11) is satisfied.  *See In re Revco*, 131 B.R. 615, 622 (Bankr.

N.D. Ohio 1990) (holding that "[s]ection 1129(a)(11) is satisfied as the plan provides that the property of [the] Debtors shall be liquidated"). As a result, confirmation of the Plan is not likely to be followed by a further financial reorganization of the Debtor. Accordingly, the Plan satisfies Bankruptcy Code section 1129(a)(11).

###### L.      Bankruptcy Code section 1129(a)(12)

70.      The Plan complies with Bankruptcy Code section 1129(a)(12), which requires that, as a condition precedent to the confirmation of a plan, "[a]ll fees payable under Section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." 11 U.S.C. § 1129(a)(12). The Plan specifically provides that all fees payable pursuant to Section 1930 of Title 28 of the United States Code will be paid on or prior to the Effective Date. *See* Plan, Art. X.J. As such, the Plan complies with Bankruptcy Code section 1129(a)(12).

###### M.      Bankruptcy Code section 1129(a)(13)

71.      Bankruptcy Code section 1129(a)(13) is inapplicable to the Plan, as it requires that a plan of reorganization provide for the continuation of all retiree benefits at the level established by agreement or by court order pursuant to Bankruptcy Code section 1114 at any time prior to confirmation of the plan, for the duration of the period that the debtor has obligated itself to provide such benefits. The Debtor has no retiree benefits plans. Accordingly, Bankruptcy Code section 1129(b)(13) is inapplicable to the Plan.

### II.      <u>Bankruptcy Code Section 1129(b)</u>

72.      Bankruptcy Code section 1129(b)(1) allows for confirmation of a plan in cases where all requirements of Bankruptcy Code section 1129(a) are met other than section 1129(a)(8) (*i.e.*, the plan has not been accepted by all impaired classes of claims or interests), by allowing a court to "cram down" the plan notwithstanding objections or deemed rejections as long as the

court determines that the plan is "fair and equitable" and does not "discriminate unfairly" with respect to the rejecting classes.  11 U.S.C. § 1129(b)(1).

73.     The Debtor meets the "cram down" requirements of Bankruptcy Code section 1129(b) to confirm the Plan over the deemed rejection by Class 6, because the Plan is fair and equitable and does not discriminate unfairly with respect to holders of Claims or Interests in the rejecting Class.

### A.     The Plan Is Fair and Equitable with Respect to the Impaired Rejecting Class

74.     Bankruptcy Code section 1129(b)(2) provides that a plan is fair and equitable with respect to a class of unsecured claims or interests if the plan provides that the holder of any claim or interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or interest.  11 U.S.C. § 1129(b)(2).

75.     The Plan does not provide any recovery from the Debtor's Estate for any claims or interests junior to Class 5 (Governmental Fines and Penalty Claims).  Accordingly, the Plan is fair and equitable with respect to holders of Claims or Interests in Class 6 (Section 510(c) Claims).

### B.     The Plan Does Not Discriminate Unfairly with Respect to the Impaired Rejecting Class

76.     Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the particular case to determine whether unfair discrimination exists.  *See In re 203 N. LaSalle*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a chapter 11 plan" and that "the limits of fairness in this context have not been established"); *In re Bowles*, 48 B.R. 502, 507 (Bankr. E.D. Va. 1985) ("[W]hether or not a particular plan does so [unfairly] discriminate is to

be determined on a case-by-case basis."); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances"). *See also Armstrong World Indus.*, 348 B.R. at 121-22 (relying heavily on the facts of the case to determine whether the plan unfairly discriminated against certain classes).

77.     In general, courts have held that a plan unfairly discriminates in violation of Bankruptcy Code section 1129(b) only if it provides materially different treatment for creditors and interest holders with similar legal rights without compelling justifications for doing so. *See, e.g.*, *In re Coram Healthcare Corp.*, 315 B.R. 321, 349 (Bankr. D. Del. 2004) (citing cases and noting that separate classification and treatment of claims is acceptable if the separate classification is justified because such claims are essential to a reorganized debtor's ongoing business); *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661 (Bankr. D. Del. 2003) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination); *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d 650, 655-56 (9th Cir. 1997) (same); *In re Aztec Co.*, 107 B.R. 585, 589-91 (Bankr. M.D. Tenn. 1989) (stating that plan which preserved assets for insiders at the expense of other creditors unfairly discriminated); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) (stating that interests of objecting class were not similar or comparable to those of any other class and thus there was no unfair discrimination).     A threshold inquiry in assessing whether a proposed plan of reorganization unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to the class allegedly receiving more favorable treatment. *See Armstrong World Indus.*, 348 B.R. at 121.

78.     The Claims and Interests in Class 6 are all subordinate to the priority of the Claims in Classes 1 through 5.  The Plan provides for the same treatment by the Debtor of all holders of Claims and Interests within the rejecting Class.  Thus, the Plan does not discriminate unfairly with respect to holders of Claims or Interests in Class 6 (Section 510(c) Claims).  Accordingly, the Plan should be confirmed even if this Class is deemed to reject the Plan.

### III.     Section 1129(c) – No Other Plan Has Been Proposed or Confirmed

79.     The Plan satisfies Bankruptcy Code section 1129(c), which provides that, with a limited exception, a bankruptcy court may only confirm one plan.  The Plan is the only plan that has been filed in this Chapter 11 Case and is the only plan that satisfies the requirements of subsections (a) and (b) of Bankruptcy Code section 1129.  Accordingly, the requirements of Bankruptcy Code section 1129(c) are satisfied.

### IV.     Section 1129(d) – The Plan's Purpose Is Consistent with the Bankruptcy Code

80.     The Plan satisfies Bankruptcy Code section 1129(d), which provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of Section 5 of the Securities Act of 1933.  In the instant case, the Plan's principal purpose is not the avoidance of taxes or the avoidance of the requirements of Section 5 of the Securities Act of 1933, and there has been no filing by any governmental agency or other party in interest asserting the contrary.  Accordingly, the Plan complies with Bankruptcy Code section 1129(d).

### OTHER PLAN PROVISIONS ARE NECESSARY AND APPROPRIATE

### I.     The Plan's Exculpation Provision Is Appropriate and Should Be Approved

81.     Article XIV.A of the Plan provides a customary exculpation and limitation of liability provision (the "Exculpation Provision").  The proposed Exculpation Provision is appropriate based on the limitation of liability provided in Bankruptcy Code section 1125(e).  That section provides:

> A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

11 U.S.C. § 1125(e).  This statutory limitation of liability encompasses the matters listed in the proposed Exculpation Provision in Article XIV.A of the Plan.  *See In re HSH Del. GP LLC,* Case No. 10-10187 (MFW) (Bankr. D. Del. Jan. 18, 2011) (confirming plan that provided exculpation to, among others, debtors' lenders and stating that provision was "appropriate under [Bankruptcy Code Section] 1125(e)" because it was "limited to the activities so far in the Chapter 11" and only related to prospective acts in connection with execution and implementation of plan).  Accordingly, the Court has authority and should approve the Exculpation Provision as appropriate under Bankruptcy Code section 1125(e).

82.     The Plan's Exculpation Provision complies with the Bankruptcy Code and is of the type typically afforded to estate fiduciaries that participated in the plan process.  Article XIV.A of the Plan is narrowly tailored to limit the liability of (i) the Subchapter V Trustee and any professionals retained by the Subchapter V Trustee to the extent such retention(s) were approved by the Bankruptcy Court, (ii) the Member Committee in their official capacity and any professionals retained by the Member Committee to the extent such retention(s) were approved by the Bankruptcy Court, and only to the extent such professionals acted on behalf of the Member Committee,  (iii) the professionals retained by the Debtor under sections 327, 328, 363 of the Bankruptcy Code that were approved by the Bankruptcy Court, and (iv) the three independent directors of the Debtor in connection with, relating to, or arising out of this Chapter

11 Case, the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation, or consummation of the Plan and its related documents, or any other postpetition act taken or omitted to be taken in connection with this Chapter 11 Case. *See Plan*, Art. XIV.A. The proposed Exculpation Provision does not, consistent with Third Circuit precedent, affect any liability that is determined to have constituted gross negligence or willful misconduct. *Id.*; *PWS Holding.,* 228 F.3d at 245-46 (holding that exculpation provision must not eliminate liability arising from willful misconduct or gross negligence). The Court should approve the Exculpation Provision in Article XIV.A of the Plan because it is consistent with: (i) the limitation of liability contained in Bankruptcy Code section 1125(e) and (ii) similar provisions approved by this Court.

## **WAIVER OF STAY**

83.     The Debtor respectfully requests that the Court cause the Confirmation Order to become effective immediately upon its entry notwithstanding the 14-day stay imposed by operation of Bankruptcy Rule 3020(e), which states that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P 3020(e); *see also* Fed. R. Bankr. P. 3020(e), Adv. Comm. Notes, 1999 Amend. (stating that a "court may, in its discretion, order that Rule 3020(e) is not applicable so that the plan may be implemented and distributions may be made immediately") (emphasis added). According to the Advisory Committee notes to the 1999 amendments to the Bankruptcy Rules, the purpose of Bankruptcy Rule 3020(e) is to permit a party in interest to request a stay of the confirmation order pending appeal before the plan is implemented and an appeal becomes moot. Fed. R. Bankr. P. 3020(e), Adv. Comm. Notes, 1999 Amend. To the extent a party wishes to seek an appeal, it may seek to stay the effectiveness of the Confirmation Order in connection

with the appeal. [6]    As a result, the Debtor respectfully requests that the Court cause the Confirmation Order to become effective immediately upon its entry.

*[Remainder of Page Intentionally Left Blank]*

---

[6] If for some reason a party in interest appeals the Confirmation Order, such party is on notice that the Debtor is asking the Court for a waiver of the stay imposed by Bankruptcy Rule 3020(e).  Therefore, such party is on notice that it must request a stay pending appeal immediately after the entry of the Confirmation Order.  *See, e.g., Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 187 (3d Cir. 2001) (noting that all parties were on notice that plan called for "Immediate Effectiveness," allowing appellants the opportunity to seek stay immediately upon confirmation of plan).

## **CONCLUSION**

84.    For the reasons set forth in this Memorandum of Law, the Debtor respectfully submits that: (a) the Disclosure Statement and the Plan fully satisfy all applicable requirements of the Bankruptcy Code; (b) the Disclosure Statement should be approved on a final basis and the Plan should be confirmed by the Court; and (c) the 14-day stay of the Confirmation Order should be waived.

Dated: November 30, 2021
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Nicolas E. Jenner (No. 6554)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      mcguire@lrclaw.com
      jenner@lrclaw.com

-and-

**BAKER & HOSTETLER LLP**

Jorian L. Rose (Admitted *pro hac vice*)
Jason I. Blanchard (Admitted *pro hac vice*)
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Email: jrose@bakerlaw.com
      jblanchard@bakerlaw.com

Andrew V. Layden (Admitted *pro hac vice*)
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407) 649-4000
Facsimile: (407) 841-0168
Email: alayden@bakerlaw.com

*Counsel for the Debtor and*
*Debtor-in-Possession*